FILED26 JAN'15 15:16USDC-ORP

Denise Subramaniam
Self-represented
13865 SW Walker Rd
Beaverton OR 97005
503-764-5300

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **LNV CORPORATION**<br>**Plaintiff,**<br>**v.**<br>**DENISE SUBRAMANIAM**<br>**pro per**<br>**Defendant** | **Civil Case No. 3:14-cv-01836**<br><br>**DEFENDANT'S RESPONSE TO LNV'S AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S AMENDED COMPLAINT**

1. Here comes Defendant Denise Subramaniam, representing herself, and hereby responds to Plaintiff, LNV Corporation's ("LNV") amended complaint and disputes LNV's claims as follows:

**JURISDICTION AND VENUE**

2. This Court is in lack of of subject matter jurisdiction because the Plaintiff lacks standing to assert its claim; and Plaintiff knows it lacks standing.

**DOCTRINE OF UNCLEAN HANDS**

3. The Plaintiff's complaint is further barred by the doctrine of unclean hands.

**FACTS AND BACKGROUD**

4. People's Choice Home Loan, Inc. ("PCHL") was not an "original lender" nor they did they fund a $176,000.00 loan to me on or about February 11, 2004. I believed at the time that they were a

"lender" and they had funded the loan due to certain misrepresentations and omissions knowingly made with intent to deceive me specific to the parties and terms of the loan which caused me to enter into a transaction without accurately realizing the risks, duties, or obligations incurred. I relied on these misrepresentations as being true; and such reliance caused me to suffer financial and other loss. The intentional omissions prevented me from learning about these deceptions; and also caused me to suffer financial and other loss.

5. "Fraud in the Factum" is a type of fraud where misrepresentation causes one to enter a transaction without accurately realizing the risks, duties, or obligations incurred. This can be when the maker or drawer of a negotiable instrument, such as a promissory note, is induced to sign the instrument without a reasonable opportunity to learn of its fraudulent character or essential terms.

6. The Adjustable Rate Note ("Note"), attached to Plaintiff's amended complaint as Exhibit 1 is not a true and correct copy. It does not match the copy dated February 10, 2004 that I received at the closing of the loan.

7. Differences between the copies of the Note in Plaintiff's Exhibit 1 and the Note I signed and the copy of it I was given at closing include but are not limited to: 1) the copy of the Note I received at closing doesn't contain a final payoff date of March 1, 2034; 2) nor does it have the legal notices at the top of the first page; 3) the copy of the Note provided to this court in Plaintiff's Exhibit 1 to their complaint contains four pages whereas the copy of the Note I signed contains three pages.

8. The copy of the Deed of Trust ("DOT") filed in the county and attached to Plaintiff's Exhibit 2 appears to match the one I was given at closing and this does contain the March 1, 2034 payoff date, however the DOT has only 15 pages and Plaintiff's Exhibit 2 contains 19 pages.

9. Pages 16 through 19 of Plaintiff's Exhibit 2 to their complaint appear to be a copy of the Note I received at closed. (This copy of the Note I received had been included by me in exhibits attached to my pleadings in case # 3:12-cv-1681 which Plaintiff (one of the defendants in this prior case) has knowledge of since they included a copy of my amended complaint in that case as their Exhibit 4 to their present complaint.)

10. Two separate and distinctly different Notes raise questions about the enforceability of the Note and the Deed of Trust.

11. The Uniform Residential Loan Application I signed during closing on February 11, 2004 (and which was the top most document in the pile of documents I was asked to sign that day) contains the terms of the loan I had agreed to; namely: 6.99% Fixed Rate interest. The rate on the Note (both versions) is not a fixed rate, something I did not notice during closing due to the fact that the closing date had been continually moved back from its original schedule date on or around January 26, 2004 to February 11, 2004. This was most certainly done with intent because I had to leave for a six-month overseas business trip within hours of closing; not only did this put me into a state of duress, it prevented me from reviewing the mortgage documents for at least six months after signing them. Attached as **Exhibit A** is a true and accurate copy of my loan application.

12. In reviewing this application while preparing this response I noticed for the first time that the broker had incorrectly stated my employer as "Portland Corporate Management." I've never worked for a company with that name.

13. In addition to two versions of the Note, of which only one was signed by me at closing (the one included in Plaintiff's Exhibit 2 pages 16 through 19) two versions of the Truth in Lending Disclosure Statement designated as "final" were signed on February 11, 2004 by me, however I did not notice this at closing. These two disclosures appear the same except one is very clear and looks like an

original document/form while the other looks like a very poor copy, on the top of that one is a header that looks like it was faxed. (I remember the lady performing the closing – it was just the two of us present at her office – kept going back and forth to the fax machine and coming back with other documents for me to sign it was very confusing.) The copy that looks like the original is missing the section about pre-payment penalty. I signed and initialed it. I was not expecting there to be a prepayment penalty, because I insisted on no pre-payment penalty throughout the application process, so this may have been done intentionally with the second faxed copy slipped into the stack of documents I was still signing so I didn't notice that clause when I signed the faxed copy. Attached as **Exhibit B** are true and accurate copies of these two TILA disclosures.

14. The interest rate on these Truth in Lending Disclosure Statements is 7.270% variable, while the rate on the Note is 6.99% variable rate or ARM and the rate on the loan application is 6.99% fixed rate. Had I not been put under duress I might have noticed these discrepancies at closing, but I did not. Regardless, multiple conflicting terms raise questions about the enforceability of the Note and the DOT.

15. The fact that the Truth in Lending Disclosures do not match the terms reflected on the Note(s) evidences the fact that I did not receive TILA disclosure. This fact was discovered by me only during the time I've been preparing my response to the Plaintiff's present complaint.

16. The fact that the terms reflected on the loan application do not match the terms on the Note(s) evidences an attempt to intentionally deceive me in the origination of the loan and raises questions about the enforceability of the Note and the DOT.

17. The original lender did not negotiate the Note to Residential Funding Company, LLC ("RFC") by indorsing the Note to the order of RFC and delivering possession thereto as claimed by Plaintiff in its complaint; and Plaintiff knows or should know that this claim is untrue.

18. The documents LNV provided this court to evidence their claim of such, i.e. Exhibit 3 to their complaint, contain forgeries, false signatures and false claims.

19. Plaintiff intentionally fails to provide this court with the assignment of DOT from PCHL to RFC because it knows, or should know, that I challenged the authenticity of this assignment in my pleadings in case # 3:12-cv-1681. Exhibit C attached herein is a copy of this assignment and the substitution of trustee document filed in my county on the same date, March 18, 2006. These documents were previously attached as Exhibit F to my response, as plaintiff in case # 3:12-cv-1681, to defendant Northwest Trustee Service's ("NWTS") motion to dismiss [Document 32, filed on 2/28/13].

20. The Notice of Default filed in my county on 8/28/2006 by Cal-Western Reconveyance Corporation in behalf of Litton Loan Servicing LP ("Litton") that was, unknown to me and my attorney at the time, Elizabeth Lemoine, servicing the loan in behalf of GMAC-RFC (a true and accurate copy of this notice is attached herein as Exhibit D which had been previously attached as Exhibit A to my Objection to defendant MGC Mortgage Inc.'s ("MGC") motion to dismiss in case # 3:12-cv-1681) specially states:

> "Cal-Western Reconveyance Corporation as Trustee, hereby certifies that no assignment of the trust deed by the trustee or by the beneficiary and no appointment of successor-trustee have been made except as recorded in the mortgage records of the county or counties in which the above described real property is situated"

21. On or before May 1, 2004 PCHL transferred my loan into the BSABS 2004-HE4 Bear Stearns Asset Backed Securities Trust (the "BSABS 2004-HE4 Trust" or "Trust"). May 1, 2004 was the cut-off date for this Trust and my first communication with EMC Mortgage Corporation ("EMC") was around this time.

22. Unknown to me at the time EMC was the Seller into the BSABS 2004-HE4 Trust as well as the "master servicer" for the BSABS 2004-HE4 Trust. Bear Stearns Asset Backed Securities I LLC was the "depositor" and La Salle Bank, N.A was the Trustee for the Trust.

23. The above facts are testified to in the Declaration of William J. Paatalo filed in case # 3:12-cv-1681. Plaintiff has knowledge of these facts. A true and accurate copy of this declaration is attached as Exhibit E.

24. As per the Declaration of William J. Paatalo the Trust's Pooling and Servicing Agreement ("PSA") required that the conveyance of the Mortgage be "construed as, an absolute sale thereof to the Depositor or the Trustee, as applicable. It is, further, not the intention of the parties that such conveyance be deemed a pledge thereof by the Seller to the Depositor, or by the Depositor to the Trustee."

25. As evidenced by the default notice filed in my county on August 28, 2006 (Exhibit D herein) and as per the sworn declarative testimony of Mr. Paatalo (Exhibit E herein) and the exhibits attached to Mr. Paatalo's declaration in support of his testimony; the following is true:

    a. PCHL, as per the BSABS 2004-HE4 Trust's PSA, released all beneficial interest in the Note and DOT (collectively the Mortgage) when it was conveyed to EMC as the Trust's "Seller"

    b. EMC, as per the BSABS 2004-HE4 Trust's PSA, then released all beneficial interest in the Mortgage when it was conveyed to Bear Stearns Asset Backed Securities I LLC as the "depositor" or La Salle Bank, N.A. and the Trust's trustee.

    c. As evidenced by the default notice filed in my county on August 28, 2006 (Exhibit D herein) and by the declarative testimony of Mr. Paatalo (Exhibit E herein) specific to "BP

Investigative Agency Exhibit D – EMC letter" no assignment of deed of trust was ever filed in my county evidencing this "absolute sale" of my Mortgage from PCHL to EMC and then to either Bear Stearns Asset Backed Securities I LLC as the "depositor" or La Salle Bank, N.A. as trustee of the BSABS 2004-HE4 Trust.

d. Additionally as evidenced by to "BP Investigative Agency Exhibit E – MERS capture" some unknown conveyance of the Mortgage was apparently made in behalf of MERS, but no assignment of DOT filed in my county reflects this transaction either.

26. THEREFORE, it would have been impossible for PCHL to have "negotiated the Note to Residential Funding Company, LLC ("RFC") by indorsing the Note to the order of RFC and delivering possession thereto" as stated in Plaintiff's complaint page 2, paragraph 10.

27. In fact the mortgage documents filed in my county in 2006 and then in 2008 do not reflect Plaintiff's claim.

28. An assignment of DOT filed in my county on June 28, 2006 (pages 6 and 7 of Exhibit C herein) falsely states that PCHL "holder of a Deed of Trust (herein 'Asignor') …does hereby grant, sell, assign, transfer and covey, unto Homecomings Financial Network, Inc."

29. We know this is a false statement because PCHL conveyed as an absolute sale the Mortgage (Note and Deed of Trust) to EMC prior to May 1, 2004; and then EMC in turn conveyed as an absolute sale the Mortgage to either Bear Stearns Asset Backed Securities I LLC as the "depositor" or La Salle Bank, N.A. as the "trustee" of the BSABS 2004-HE4 Trust.

30. On August 27, 2008 an assignment of DOT was filed in my county falsely states: "For value received, Homecomings Financial Network, Inc., the undersigned, hereby grants, assigns and

transfers to Residential Funding Company, LLC… all beneficial interest under certain Deed of Trust dated 02/10/2004 executed by Denise Subramaniam to/for: People's Choice Home Loan…" This assignment is attached herein as Exhibit H and was attached to my response and objection to NWTS's motion to dismiss in case # 3:12-cv-1681 as Exhibit A.

31. We know this is another false statement because the prior assignment to Homecomings Financial Network, Inc. dated June 28, 2006 was a nullity (i.e. legally void.)

32. Hence it would follow that the next assignment of DOT which states: "RFC negotiated the Note to Lender", would of necessity also be a nullity. (This assignment is merely alluded to in Plaintiff's complaint page 3, paragraph 11 and one is left having to assume that "Lender" used here somehow refers to Plaintiff, but Plaintiff is not a "lender.")

33. Paragraph 12 of page 3 of the Plaintiff's complaint states: "Lender" is currently in possession of the Note." No matter what the Plaintiff claims it is in possession of, it is most certainly not a negotiable instrument.

34. It is also certain that the Note the Plaintiff claims it is in possession of is not the "original" Note.

35. Paragraph 13 of page 3 of the Plaintiff's complaint states:

> "Lender is the current beneficiary of the Trust Deed: (1) by virtue of being the current payee and holder of the Note (performance of which the Trust Deed secured) indorsed to the order of Lender, and (2) pursuant to a series of duly executed and publicly recorded assignments of the Trust Deed, concluding with an assignment from RFC to Lender, executed on or about March 10, 2008, and recorded in the official records of Washington County, Oregon on August 27, 2008, as Instrument Number 2008-073972 (a true and correct copy of which is attached hereto as Exhibit 3)."

36. Defendant had previously attached a true and correct copy of this assignment within her Exhibit A to her response and objection to NWTS's motion to dismiss in case # 3:12-cv-1681; and it is

attached herein as page 1 of her Exhibit H. Plaintiff also included a copy of this assignment in its Exhibit 3 to its complaint.

37. Defendant's Exhibit H contains signature comparisons and facts pertaining to the signers of this document and several other nearly identical assignments. The signatures on these documents are robosigned and/or forgeries or false signatures.

38. The false statements, forgeries and false signatures on all the mortgage documents contained in both Plaintiff's and Defendant's exhibits (where ever they both include the same documents) are consistent with the crimes of convicted felon Lorraine Brown. (See "Defendant's Motion for Judicial Notice of Information and Criminal Indictment and Plea Agreement of Lorraine Brown.")

39. Plaintiff is a corporation owned by D. Andrew Beal. Plaintiff LNV and MGC share an address of 7195 Dallas Parkway, Plano Texas; however this address is for an empty lot. This evidenced by a Google map on page 8 of Defendant's Exhibit H.

40. The Attorney General of Texas, Greg Abbott, wrote a letter to MGC dated October 4, 2010. As per Texas Attorney General Greg Abbott's letter if affidavits and other documents, such as deeds of trust and appointments of substitute trustees were prepared by employees referred to as "robosigners" who signed thousands of documents a month without reading them; who signed affidavits which falsely claim personal knowledge of facts and which falsely claim the affiant reviewed the attached documents; who notarized documents prior to the signer signing or when the signer was not present before the notary; and who filed affidavits with records attached that do not correctly reflect loan payments, charges and advances; and such documents:

"were utilized in establishing MGC Mortgage Inc.'s authority to conduct the sale or obtain a court order for a sale, such use would have been in violation of Section 17.46(a) of the Texas Deceptive Trade Practices Act; Section 392.304, Texas Debt Collection Practices Act; Section 37.02, Texas Penal Code; Section 12.001, Texas Property Code; Section 406.009, Texas Government Code; Texas Constitution Article 16, **Section 50; and/or Rule 736(1), Texas Rules of Civil Procedure**, and the document and **therefore the foreclosure sale would have been invalid.**" A true and correct copy of this letter from Texas Attorney General Greg Abbott mailed to Beal's MGC is attached herein as **Exhibit I**.

41. MGC is a corporation owned by D. Andrew Beal. MGC portrays itself as a mortgage servicer, primarily for Plaintiff (LNV Corporation also owned by D. Andrew Beal), but it is not licensed as such in Texas. D. Andrew Beal plays all kinds of games with his companies, most of which merely exist on paper. Nothing is what it seems with Andy Beal's empire of sham corporations. What is clear is that in my prior case # 3:12-cv-1681 in this court that was wrongly dismissed with prejudice both LNV and MGC were served summons, but only MGC made an appearance. (This is a pattern of judicial abuse repeated numerous times in other civil lawsuits involving Beal owned corporate entities.) In my earlier case Christopher Wright of Watt, Tieder, Hoffar & Fitzgerald, L.L.P made an appearance only for MGC. All his pleading in this case were in behalf of MGC. In fact, in response to my claims about MGC and LNV both being owned by D. Andrew Beal (who evaded service in this prior case) attorney Christopher Wright stated in a pleading filed with this court that MGC and LNV were merely "affiliates" associated through normal course of business. However in and email he sent to me on January 6, 2015 regarding an extension of time specific to case # 3:12-cv-1681 he stated:

"In response to to your email, and to follow up on my prior email that I could not agree to your proposed stipulate, LNV Corporation ("LNV") will only agree to an extension of your time to file a reply to LNV's opposition to your Rule 60 motion up through and including January 20, 2015. But, as previously indicated LNV will not oppose your motion for an extension of time to file a reply accordingly. LNV and I as counsel cannot permissibly e-file any document for you, however. Please note that LNV agrees to this extension without reference to, or review of, your medical records, which are unnecessary, and LNV is amenable to granting the extension regardless. Please kindly do not send LNV or I as counsel any unsolicited medical records in the future."

42. A screenshot of this email is attached as Defendant's **Exhibit M**. Attached herein as Defendant's **Exhibit N** is a compilation of information specific to D. Andrew Beal owned corporations from Secretary of State Corporation Divisions across the country. This exhibit shows that LNV and MGC are not merely affiliated in the normal course of business but owned by the same individual, D. Andrew Beal. Since Beal's MGC was warned by the Texas Attorney General (see Defendant's Exhibit I) that using robsigned mortgage documents in foreclosure actions was in violation of numerous Texas laws (including criminal penal codes) then it is certain LNV knows that using such falsely fabricated mortgage documents in foreclosures is in violation of consumer protection laws of all the States in this country, including Oregon.

43. In the 2nd paragraph of the 1st page of Texas Attorney General Greg Abbott's letter it states:

> "We are certain you must be aware of the issues raised when Ally Financial, Inc and later JP Morgan Chase and Bank of America, announced they were suspending foreclosures on certain properties in 23 states. It appears that they had discovered through testimony of their employees in private litigation that the employees, referred to as "robosigners" that engaged in practices …"

44. The practices described in the text that follows this quote above are consistent with those identified in the criminal conviction of Lorraine Brown.

45. Ally Financial, Inc. ("Ally") bought GMAC. The mortgage documents Plaintiff claims give it standing to foreclose are all produced by LPS/Fidelity owned entities (LPS and Fidelity were the corporate vehicles identified by the United States as those used by Lorraine Brown in the commission of her crimes. Almost all the signers of these mortgage documents are employees of GMAC and its subsidiaries aka Ally.

46. Attached to Plaintiff's Exhibit 1 (which is a copy of one of two different Notes) are two suddenly appearing allonges and a floating page with no designation as to what exactly it is supposed to endorse. (It is not part of the Note.) Neither of these documents have a date. The floating

signature page is on page 5 of Plaintiff's Exhibit 1 and is signed by Dana Lantry Asst. Vice President of PCHL. This endorsement appears to assign to:

> "LaSalle Bank National Association as Trustee for certificateholders of Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates Series 2004-HE4."

47. This document further states:

> "Payable to the order of [the line is blank with a canceled stamp at a 45% angle starting at the line where the name of the party should be entered] Without Recourse People's Choice Home Loan Inc."

48. The canceled stamp makes it clear this cannot be an enforceable instrument. And if this were somehow a valid transfer to LaSalle Bank National Association as Trustee for the BSABS 2004-HE4 Trust then Dana Lantry would have had to have signed it prior to May 1, 2004.

49. Dany Lantry also signed one of the two suddenly appearing allonges, page 6 of Plaintiff's Exhibit 1 and the other suddenly appearing allonge is on page 7 of Plaintiff's Exhibit 1 which is signed by Jason J. Vecchio as Post Funding Manager of Residential Funding Company LLC.

50. This first allonge on page 6 of Plaintiff's Exhibit 1 bearing the signature of Dany Lantry as Vice President of PCHL purports to transfer beneficial interest in the Note to Residential Funding Company LLC. This would be a legal impossibility if she had already endorsed a transfer to transfer to LaSalle Bank National Association as Trustee for the BSABS 2004-HE4 Trust prior to May 1, 2004.

51. Both of these allonges are forgeries and/or false documents intended to deceive. We already know that no assignments of DOT were ever filed in my county transferring the beneficial interest in the DOT to any of the parties to the BSABS 2004-HE4 Trust.

52. Even if the floating Dana Lantry endorsement to LaSalle Bank N.A. was legitimate, which it is not, if the Note and Deed of Trust are split, this causes a nullity. The security interest is lost and the debt becomes unsecured. The Note alone confers no power of sale on the property.

53. Furthermore the testimony and evidence to support the testimony of Mr. Paatalo in his declaration (Defendant's Exhibit E) shows my loan was current in November 2005 and in December 2005 and that it was then paid in full in December 2005.

54. The first assignment of deed of trust filed in my county on June 28, 2006 (pages 6 and 7 of Exhibit C herein) was also signed by Dana Lantry as Assistance Vice President of PCHL. The Dana Lantry signatures on these three mortgage documents differ enough to suggest that more than one individual was signing as Dana Lantry. Comparisons of more Dana Lantry signatures on other deed assignments across the country drive this point home even more. And Dana Lantry has signed as an employee for at least six or seven different corporations. This is consistent with the crimes of Lorraine Brown. Attached herein as Defendant's **Exhibit J** are numerous mortgage documents signed by Dana Lantry misrepresenting herself as an executive officer of Aames Capital Corporation, Ames Funding Funding Corporation, Quality Mortgage USA, People's Choice Home Loans, One Stop Mortgage. The documents in **Exhibit J** are only a sampling of such documents.

55. SEC filings show that Dana Lantry was an employee of Aames Financial Corporation/DE in 2005. Attached as Defendant's **Exhibit K** is this SEC filing. No evidence exists that I could find to show Dana Lantry as an actual employee of PCHL in 2004 or 2005.

56. If Dana Lantry personally signed the floating signature page purporting the transfer the Note to La Salle then she had to done it prior to May 1, 2004. If she personally signed the allonge Plaintiff LNV provided this court on pages 5 and 6 of their Exhibit 1 attached to their complaint

then she had to have signed it between May 1, 2004 and December 31, 2005. Either way both these transfer documents are invalid and neither are legal financial instruments.

57. The allonge on page 7 page 7 of Plaintiff's Exhibit 1 states: "Pay to the order of LNV Corporation without recourse Residential Funding Company, LLC" and is signed by Jason J. Vecchio as Post Funding Manager of Residential Funding Company, LLC.

58. This Jason J. Vecchio signature exactly matches identical allonges included with several purported "original Notes" produced by Plaintiff in several other foreclosure related cases across the country. A sampling of these cases includes:

  a. **Catherine Gebhardt**: *LNV Corporation v. Gebhardt, Case No. 3:12-CV-468-TAV-HBG, U.S. District Court Eastern District of Tennessee at Knoxville.*
  b. **Denise Subramaniam:** *Subramaniam v. Beal et al, Case No: 3:12-cv-01681-MO, and LNV v. Subramaniam, Case No. 3:14-cv-01836 both in the U.S. District Court District of Oregon, Portland Division*
  c. **Tuli Molina Wohl:** *LVN Corporation v. Tuli Molina Wohl, Case No. 1 CA-CV 11-0603, In the Court of Appeals, State of Arizona Division One*
  d. **Robynne A. Fauley:** *Fauley v. Washington Mutual et al (LNV), Case No. 3:13-cv-00581-AC, U.S. District Court District of Oregon, Portland Division*
  e. **Christopher and Marcia Swift**: *In the United States Bankruptcy Court for the Northern District of Illinios, Eastern Division; Case No. 12-35690*
  f. **Rhonda L. Hardwick**: *LNV as assignee of MERS Inc. as nominee for First Capital Finaicial Services Corp. DBA Full Compass Lending v. Hardwick, Case No. 51C01-1204-MF-00098; State of Indiana County of Martin in the Martin Circuit Court.*

59. The six individuals identified above are hereafter referred to collectively as the "Beal Victims." There are many more Beal Victims fighting foreclosures perpetrated by Beal's MGC and LNV with similarly forged and falsified mortgage documents.

60. An examination of four of these mortgage documents with seemingly identical Jason J. Vecchio signatures was done by OMNI Document Examinations ("OMNI"). On December 4, 2014 they

produced a preliminary report of their evaluation. This Jason J. Vecchio endorsed allonge in the present case and in the case of Robynne A. Fauley were only produced and copies provided to us (or photographed) after December 2, 2015. These two documents will be included in the ongoing examination of mortgage documents by OMNI and their final report will include examination of these two newly introduced Jason J. Vecchio endorsed allonges. Attached herein as Exhibit L is the OMNI preliminary report. Quoting from the opinion of the examiners:

> "The characteristic within the questioned signature on the Item Q-1, an Allonge to a Promissory Note for Chris Swift and Marcia Swift and the evidence within the comparison documents, A-1, A-2 and A-3, Allonges for Tuli M Wohl, Rhonda L. Hardwick and Catherine Gebhardt depicts that the signatures are duplicates of one another. In order to come to a definitive opinion of whether one signature was written in ink or all 4 signatures were created using a stamp or by means of photocopying, we require the original questioned document."

61. Photocopied or stamped signatures are not valid legal endorsements.

**PLAINTIFF'S CAUSE OF ACTION IS A FARSE PERPETRATED AS A MEANS OF SEEKING REVENGE AND RETALIATION**

62. The Beal Victims as a group have been actively reporting the activities of the many Beal business entities and specifically the activities of Beal's MGC and LNV and their agent Dovenmuehle Mortgage Inc. ("DMI") and the attorneys Beal hires who often appear to actively participate in the participation of Beal's fraud to government regulators, the media, the FBI and the U.S. Justice Department. We also are actively reporting the activities of these Beal corporations online. After an FBI agent walked into Beal Bank asking questions about his MGC his attorneys started to send us threatening letters demanding we take down certain online postings; all these posts were personal opinions based on our own experiences with the Beal entities; and everything we said online is protected speech under the First Amendment to the constitution.

63. I received my first such demand letter on or around November 18, 2014. The letter is dated November 14, 2014 and Plaintiff's present cause of action was filed on November 21, 2014. In

addition to me similar letters were sent to Beal Victims JoAnn Breitling, Catherine Gebhart and Stuart Hamm. A few of these letters are included in Defendant's **Exhibit N** attached herein. Since these initial letters threatening legal action if we don't comply to Beal's demands more continue to be sent to us. Whenever we do comply to one demand more demands follow about other online postings. This is harassment and an attempt to limit our constitutionally protected freedom of speech.

64. In the case of JoAnn Breitling where she is self-represented Beal has four different attorneys attacking her in different courts. This is abuse of process and abuse of the judicial system. Attached herein as Defendant's **Exhibit O** is the most recent response JoAnn filed specific to these activities.

65. Beal's employees communicated a few times with a third party, investigative reporter Brett Shipp of WFAA TV in Dallas Texas. Then his attorneys claim they made the Breitings various offers through their communications with Brett Shipp when no formal offer was ever communicated to the Breiltlings. (Brett Ship has been questioning numerous Beal Victims as well as employees of Beal's corporations in regard to Beal's foreclosure practices and other business activities. He has also been examining public records as part of an ongoing investigation.) Beal's attorneys have often referred to Brett Shipp in communications as "her reporter" which is demeaning to both JoAnn and to Brett Shipp who is highly recognized for his impartiality and honest in-depth reporting within the media world. The Beal Victims are confident that when he completes his investigation he will air another award winning story. From the WFAA Website:

> "His most notable work of late, the year-long inquiry into faulty natural gas couplings linked to fatal explosions and serious injuries dating back to the 1980's. Brett's investigation has led to a state order for removal of the fittings and the adoption of new natural gas safety standards statewide.
>
> His investigation resulted in his being awarded the two most coveted prizes in broadcast journalism, the 2008 duPont Gold Baton and the 2008 George Foster Peabody Award. The

> seldom awarded Gold Baton from Columbia University was the first ever given to a local television reporter.
>
> Brett has received three duPonts and three Peabodys since 2003 in recognition for stories such as the alleged inhumane treatment of women and children immigrants at a federal prison in Texas, the Fake Drug Scandal at the Dallas Police Department and the mistreatment of injured workers by the Texas Workers Comp Commission which was abolished as a result."

66. In the meantime those of us who have been most vocal about Beal's activities have had to endure an onslaught of invasions into our personal privacy, threatening letters and baseless lawsuits, such as the present one.

67. The Plaintiff (a Beal owned and operated) corporation does not have standing to foreclose on my property; and Plaintiff knows this.

## PLAINTIFF'S PRAYER FOR RELIEF SHOULD BE DENIED FOR LACK OF SUBJECT MATTER JURISDICTION

68. In addition to all the reasons already stated herein as to why the Plaintiff lacks standing to foreclose on my property, Plaintiff must show economic injury caused by Defendant's actions.

69. Plaintiff's Exhibit 3 page 1 states:

> **"TRUE and ACTUAL CONSIDERATION (if any), ORS 93.030 Ten and no/100 Dollars ($10)"**

70. As per ORS § 93.030 (2) states:

> "All instruments conveying or contracting to convey fee title to any real estate, and all memoranda of such instruments, shall state on the face of the instruments the true and actual consideration paid for the transfer, stated in terms of dollars. However, if the actual consideration consists of or includes other property or other value given or promised, neither the monetary value nor a description of the other property or value need be stated so long as it is noted on the face of the instrument that other property or value was either part or the whole consideration."

71. Nothing is noted on the face of the instrument that any other consideration was given, therefore the only consideration LNV can claim it gave for this purported conveyance is $10 (Ten and no/00 Dollars).

72. Standing, sometimes referred to as standing to sue, is the name of the federal law doctrine that focuses on whether a prospective plaintiff can show that some personal legal interest has been invaded by the defendant.

73. I have never acknowledged a debt to the Plaintiff of any kind. I have never paid a penny to the Plaintiff because they have never validated their claim of debt. The bottom line is Andy Beal purchased worthless paper for $10 from a party that had no beneficial interest in my property, nor did they hold any beneficial interest in any debt that may have at one time been secured by my property. Beal, through his LNV is now attempting to foreclose on my property with forged mortgage documents.

74. This court is lacking in subject matter jurisdiction to grant Plaintiff the relief they seek and the doctrine of unclean hands further bars Plaintiff from such relief.

**WHEREFORE** Defendant prays this court dismiss Plaintiff's action with prejudice.

Respectfully,

Denise Subramaniam

Denise Subramaniam
Self-represented
13865 SW Walker Rd
Beaverton OR 97005
503-764-5300

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **LNV CORPORATION**<br>**Plaintiff,**<br>**v.**<br>**DENISE SUBRAMANIAM**<br>**pro per**<br>**Defendant** | **Civil Case No. 3:14-cv-01836**<br><br>**MOTION FOR EXTENSION OF TIME TO FILE RESPONSE** |

**ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO PLAINTIFF'S COMPLAINT**

It is hereby ORDERED that Defendant be granted an extension of time until January 20, 2015 to file her response to Plaintiff's Amended Complaint.

______________________________
Honorable Judge Michael Mosman

______________________________
Date