# DEFENDANT'S EXHIBIT H

Case # 3:12 – CV – 1681 ST

Subramaniam vs Beal, Chase, GMAC et al                    Exhibit A Page 2 of 2



Washington County, Oregon
08/28/2006 03:24:13 PM      **2006-077544**
D-NDEB      Cnt=1  Stn=22  I REED
$20.00 $6.00 $11.00 - Total = $37.00

00974313200800775440040048

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard W. Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

AFTER RECORDING RETURN TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004
(619)590-9200

_____(Recorder's Use)_____

## NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXX9663
T.S. No.:  1077668-09

Reference is made to that certain trust deed made by
DENISE SUBRAMANIAM
as grantor,
to PAUL S. COSGROVE, LINDSAY HARTE, LAW OFF
as trustee,
in favor of PEOPLE'S CHOICE HOME LOAN, INC.
as beneficiary, dated February 10, 2004, recorded March 01, 2004, in the official records of WASHINGTON
County, Oregon, in book/reel/volume No. XX at page XX, fee/file/instrument/microfilm/reception No. 2004-
019937 (indicate which), covering the following described real property situated in said County and State, to-
wit:
LOT 4, BLOCK 2, DEVONSHIRE, IN THE COUNTY OF WASHINGTON AND STATE OF OREGON.

CAL-WESTERN RECONVEYANCE CORPORATION
as Trustee, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no
appointments of a successor-trustee have been made except as recorded in the mortgage records of the county
or counties in which the above described real property is situated;  further, that no action, suit or proceeding
has been instituted to recover the debt, or any part thereof, now remaining secured by the said trust deed, or, if
such action or proceeding has been instituted, such action or proceeding has been dismissed except an action
to appoint a receiver pursuant to ORS 86.010, or the foreclosure of another trust deed, mortgage, security
agreement or other consensual or nonconsensual security interest or lien securing repayment of this debt.

There is a default by the grantor or other person owing an obligation, or by their successor-in-interest, the
performance of which is secured by said trust deed with respect to provisions therein which authorize sale in
the event of default of such provision;  the default for which foreclosure is made is grantor's:

NODOR.DOC                         Rev. 4/07/06                         Page 1 of 3

Case # 3:12 – CV – 1681 ST

Subramaniam vs Beal, Chase, GMAC et al                    Exhibit A Page 1 of 2

# EXHIBIT A

**Attached to Plaintiff's Objection to MGC's Motion to Dismiss**

**2006 "Notice of Default and Election to Sell"**

Case # 3:12 – CV – 1681 ST

**Subramaniam vs Beal, Chase, GMAC et al**          **Exhibit A Page 2 of 2**

---

Washington County, Oregon   **2006-077544**
06/28/2006 03:24:13 PM
D-MDES        Cnt=1  Stn=22  I REED
$20.00 $6.00 $11.00 - Total = $37.00

0087431320060077544004004S

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard W. Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

AFTER RECORDING RETURN TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004
(619)590-9200

_____(Recorder's Use)_____

## NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXX9663
T.S. No.: 1077668-09

Reference is made to that certain trust deed made by
DENISE SUBRAMANIAM
as grantor,
to PAUL S. COSGROVE, LINDSAY HARTE, LAW OFF
as trustee,
in favor of PEOPLE'S CHOICE HOME LOAN, INC.
as beneficiary, dated February 10, 2004, recorded March 01, 2004, in the official records of WASHINGTON
County, Oregon, in book/reel/volume No. XX at page XX, fee/file/instrument/microfilm/reception No. 2004-
019937 (indicate which), covering the following described real property situated in said County and State, to-
wit:
LOT 4, BLOCK 2, DEVONSHIRE, IN THE COUNTY OF WASHINGTON AND STATE OF OREGON.

CAL-WESTERN RECONVEYANCE CORPORATION
as Trustee, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no
appointments of a successor-trustee have been made except as recorded in the mortgage records of the county
or counties in which the above described real property is situated;  further, that no action, suit or proceeding
has been instituted to recover the debt, or any part thereof, now remaining secured by the said trust deed, or, if
such action or proceeding has been instituted, such action or proceeding has been dismissed except an action
to appoint a receiver pursuant to ORS 86.010, or the foreclosure of another trust deed, mortgage, security
agreement or other consensual or nonconsensual security interest or lien securing repayment of this debt.

There is a default by the grantor or other person owing an obligation, or by their successor-in-interest, the
performance of which is secured by said trust deed with respect to provisions therein which authorize sale in
the event of default of such provision;  the default for which foreclosure is made is grantor's:

NODOR.DOC                          Rev. 4/07/06                          Page 1 of 3

# DEFENDANT'S EXHIBIT I



## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 4, 2010

MGC Mortgage, Inc.
7195 Dallas Parkway
Plano, TX 75024

      **RE:**   MGC Mortgage, Inc. Foreclosures in Texas

Gentlemen:

     Recent troubling developments about the veracity of claims made on documents used by Ally Financial, Inc., in its foreclosure filings have led to an inquiry by our office as to the full harm Texas homeowners have suffered.

     We are certain that you must be aware of the issues raised when Ally Financial, Inc., and later JP Morgan Chase and Bank of America, announced that they were suspending foreclosures on certain properties in 23 states. It appears that they had discovered, through testimony of their employees in private litigation, that the employees, referred to as "robosigners," had engaged in practices concerning the execution of affidavits which were used in foreclosure litigation, among which were these:

- Signing thousands of documents per month
- Signing documents without reading them
- Signing affidavits which falsely claim personal knowledge of facts
- Signing affidavits which falsely claim the affiant reviewed the attached documents
- Notarizing documents prior to signing by the signer
- Notarizing documents when the signer was not present before the notary
- Filing affidavits with records attached that do not correctly reflect loan payments, charges and advances

     We are aware that MGC Mortgage, Inc. services a significant number of mortgage loans in the State of Texas. It is likely that affidavits and other documents, such as assignments of deeds of trust and appointments of substitute trustees, with the issues described, above may have been used in connection with foreclosures in the State of Texas. Regardless of whether the foreclosure was a nonjudicial one or a judicial one in connection with a home equity loan, home equity line of credit or reverse mortgage, if any of the practices described above were utilized in establishing MGC Mortgage, Inc.'s authority to conduct the sale or obtain a court order for a sale, such use would have been a violation of Section 17.46(a) of the Texas Deceptive Trade Practices Act; Section 392.304, Texas Debt Collection Act; Section 37.02, Texas Penal Code; Section 12.001, Texas Property Code; Section 406.009, Texas Government Code; Texas Constitution Article 16, Section 50; and/or Rule 736(1), Texas Rules of Civil Procedure, and the document and therefore the foreclosure sale would have been invalid.

MGC Mortgage
October 4, 2010
Page 2

We are also aware that after the practices described above came to light, Ally Financial, Inc., JP Morgan Chase and Bank of American voluntarily suspended all foreclosures in twenty-three states in which foreclosures are conducted solely through a judicial process, in order to determine which foreclosures may have been tainted by illegitimate affidavits. The State of Texas hereby demands that in the State of Texas, MGC Mortgage, Inc. immediately suspend all foreclosures, all sales of properties previously foreclosed upon, and all evictions of persons residing in previously foreclosed upon properties, until MGC Mortgage, Inc. has done the following:

1.   Identify all MGC Mortgage, Inc. employees or agents who "robosigned," as described above, affidavits and other documents which were recorded in the State of Texas;

2.   Identify all foreclosures in the State of Texas in connection with which an affidavit or other document with the characteristics listed above was used as part of the foreclosure process;

3.   Describe the measures taken by MGC Mortgage, Inc. to ensure that affidavits and other documents are executed in compliance with Texas law;

4.   Describe the measures taken by MGC Mortgage, Inc. to comply with the Servicemembers Civil Relief Act in connection with foreclosures;

5.   Identify all other loan servicers and/or MERS for whom the above described employees or agents signed affidavits;

6.   Provide assurances that all MGC Mortgage, Inc. foreclosures of properties in the State of Texas which relied upon affidavits with the characteristics described above will be rectified and the procedures by which they will be rectified;

7.   Provide assurances that all future MGC Mortgage, Inc. foreclosures of properties in the State of Texas will be done with legally correct documentation; and

8.   Identify all MGC Mortgage, Inc. employees or agents who are or who signed as officers of other non-related entities.

Please provide your response on or before October 15, 2010.

Sincerely,

Paul D. Carmona
Chief, Consumer Protection and
Public Health Division

# DEFENDANT'S EXHIBIT J

**Dana Lantry Signed Mortgage Documents Consistent with the Crimes of Lorraine Brown**

Dana Lantry (or someone else forging her signature) signed a floating page, a copy is on page 5 of Plaintiff LNV's Exhibit 1 and on a suddenly appearing allonge with no date. A copy of this allonge is on page 6 of Plaintiff LNV's Exhibit 1 attached to their complaint. Close-ups of both signatures are below:



Dana Lantry signature as Assistant Vice President of People's Choice as a floating signature supposedly associated with my Note on page 5 of Plaintiff LNV's Exhibit 1.

Enough variation exists between these three signatures to suspect three different individuals made these signatures, and not one individual named Dana Lantry.

Dana Lantry signature as Assistant Vice President of People's Choice on a suddenly appearing Allonge supposedly associated with my Note on page 6 of Plaintiff LNV's Exhibit 1.



Dana Lantry signature as Assistant Vice President of People's Choice on an assignment of deed of trust filed in my county on June 28, 2006.



**Dana Lantry signature as Authorized agent for Aames Capital Corporation on an assignment of Deed of Trust filed in DeSoto County Mississppi in 2000.**



**Dana Lantry signature as Authorized agent for Aames Funding Corporation on an assignment of Deed of Trust filed in DeSoto County Mississippi in 2002.**



**Dana Lantry signature as Assistant Vice President of Quality Mortgage USA on an assignment of Deed of Trust filed in DeSoto County Mississippi in 1994.**



**Dana Lantry signature as Vice President of Aames Funding Corporation on an assignment of Deed of Trust filed in DeSoto County Mississippi in 2000.**



Who does Dana Lantry actually work for and what is her position?

These signatures are consistent with Robosigning and the crimes of Lorraine Brown.

The mortgage documents these close-up signatures came from are are included in this Exhibit.



**Dana Lantry signature as Vice President of One Stop Mortgage, inc. on an assignment of Deed of Trust filed in San Bernardino County CA in 1999.**



**Dana Lantry signature as Assistant Vice President of Quality Mortgage USA on a 1999 assignment of Deed of Trust filed in Forsnth County North Carolina.**

RECORDING REQUESTED BY:
QUALITY MORTGAGE USA, INC.

WHEN RECORDED, MAIL TO:

QUALITY MORTGAGE USA, INC.
16802 ASTON STREET
IRVINE, CALIFORNIA 92714

Order No.
Escrow No.
Application No. A.WIN0119Y
Loan No. 663911892

BOOK **728** PAGE **210**

STATE OF MS. DESOTO CO.

SEP 29  9 17 AM '94

BK 728 PG 210
W.E. DAVIS CH. CLK.
By P. Starkey D C

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
BANKERS TRUST COMPANY, AS TRUSTEE FOR HOLDERS OF DLJ MORTGAGE ACCEPTANCE
CORP., MORTGAGE PASS-THROUGH CERTIFICATES
all beneficial interest under that certain Deed of Trust dated   AUGUST  30, 1994
executed by LINDA K. WINKLER, AND RONALD L. WINKLER

                                                                    , Trustor,

to PHILLIP BUFFINGTON, JR., ESQUIRE

                                                                    , Trustee,

and recorded Concurrently Herewith in the Official Records in the County Recorder's office of
DESOTO                              County, MISSISSIPPI            , describing
land therein as:   in Book 728 Page 168
~~LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT~~
~~"A".~~

TOGETHER with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

DATE 8-30-94
STATE OF CALIFORNIA
COUNTY OF ORANGE
On 8-30-94                                    before me,
JASMIN ELENA MARTIN    Notary Public, personally appeared

DANA LANTRY
ASSISTANT VICE-PRESIDENT

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature: Jasmin Elena Martin
JASMIN ELENA MARTIN

JASMIN ELENA MARTIN
Comm. # 1041326
NOTARY PUBLIC - CALIFORNIA
Orange County
My Comm. Expires June 23, 1998

QUALITY MORTGAGE USA, INC., A
CALIFORNIA CORPORATION

DANA LANTRY
ASSISTANT VICE-PRESIDENT

Prepared by & return to:
FIRST TITLE CORPORATION
5384 POPLAR AVENUE, SUITE 441
MEMPHIS, TN 38119
901-761-0363

Form 259 4/9/93

RECORDING REQUESTED BY, AND
WHEN RECORDED, MAIL TO:

Aames Capital Corporation
c/o Collateral Control Department
350 S. Grand Avenue
42nd. Floor
Los Angeles, California 90071

Order #:   3812223-92
Escrow #:   22981-T

Application #:  CA013008

Recorded in Official Records, County of
San Bernardino, Larry Walker, Recorder

12.00

**Doc No. 19990133564**
**09:09am 03/31/99**

205 40174318 01 15

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 |
|---|---|---|---|---|---|---|---|---|---|
| PG | FEE | APF | CAM3 | PH CPY | CRT CPY | ADD ISM | PEN PR | | PCOR |
| | | | | | | | | | |
| 2 | 7 | 3 | | | | 2 | 6 | | |
| | | | 5 | | | | | | |
| NON ST | LN | SVY | CIT-CO | TRANS TAX | | DA | CHRG | | EXAM |

## Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to
AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION

all beneficial interest under that certain Deed of Trust dated       NOVEMBER 12, 1998                ,
executed by RICHARD A. SAMUELSON, JR. AND DONNA L. SAMUELSON, HUSBAND
AND WIFE, AS JOINT TENANTS                                                                  , Trustor,
to F.C.I., A CALIFORNIA CORPORATION

, Trustee,

and recorded as Official Records in the County Recorder's office of
                                        SAN BERNARDINO                                        County,
State of California, describing land therein as:
LOT 8, BLOCK 5 OF BIG BEAR PARK NO. 1, IN THE COUNTY OF SAN
BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 24,
PAGE(S) 59 AND 60, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

DOC. No.  19980499104
DATE:  11-20-98

**TOGETHER** with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

**CALIFORNIA - ALL PROGRAMS**
Laser Forms Inc. (800) 446-3555
LIFT #OSM101CA 10/95          **Page 1 of 2**     Borrower's Initials: _____  _____   _____  _____

CACORP.OS

ONE STOP MORTGAGE, INC., DBA ONE STOP FUNDING, A WYOMING CORPORATION

DANA LANTRY
Vice President

**STATE OF**    **CALIFORNIA**
**COUNTY OF**    **ORANGE**

On    **NOV 24 1998**      , before me,     *Pamela R. Mullins*

**DANA LANTRY**
**VICE PRESIDENT**

(Notary Public), personally appeared

personally known to me (proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

(Seal)



PAMELA R. MULLINS
COMM. #1165952
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Jan. 13, 2002

**CALIFORNIA - ALL PROGRAMS**

#OSM101CA 10/95      **Page 2 of 2**

CACORP.OS

Manuali

RECORDING REQUESTED BY:

QUALITY MORTGAGE USA, INC.

WHEN RECORDED, MAIL TO:

QUALITY MORTGAGE USA, INC.
16800 ASTON STREET
IRVINE, CALIFORNIA 92714

BK 1890 P 1288

PRESENTED FOR
REGISTRATION
AND RECORDED

164 94 JUL 12 P 3:38

L.E. SPEAS
REGISTER OF DEEDS
FORSYTH CO. N.C.

Order No. G94001436-M
Escrow No.
Application No. W.MCG0352X
Loan No. 373777384

Env: Henr: R Maziol
403 Blandwood Ave
Greensboro NC 27401
Corporation Assignment of Deed of Trust

SPACE ABOVE THIS LINE FOR RECORDER'S USE

FOR VALUE RECEIVED, the undersigned ("Assignor") hereby grants, assigns and transfers to BANKERS
TRUST COMPANY, AS TRUSTEE FOR HOLDERS OF DLJ MORTGAGE ACCEPTANCE CORP.,
MORTGAGE PASS-THROUGH CERTIFICATES
all beneficial interest under that certain Deed of Trust dated JULY 6, 1994
executed by NANCY MCGEE

, Trustor,

to QUALITY TRUSTEE SERVICES, INC., A MISSOURI CORPORATION

, Trustee,

and recorded concurrently herewith in the Official Records in the County Recorder's office of
FORSYTH                                        County,                                        , describing
land therein as: LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

TOGETHER with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be signed in its corporate name by
its duly authorized officers and its seal to be hereunto affixed by the authority of its Board, the _____
day of _____JULY_____ , 1994 .

QUALITY MORTGAGE USA, INC., A
CALIFORNIA CORPORATION

DATE 7/11/94
STATE OF CALIFORNIA
COUNTY OF ORANGE

I _KRISTEN S. FEERS_ , a Notary
Public of the County and State aforesaid, certify that _____

DANA LANTRY
ASSISTANT VICE-PRESIDENT

_LORRAINE BELLOVICH_
VICE-PRESIDENT

personally came before me this day and acknowledged that he/she is
_____ of Assignor, and that
by authority duly given and as the act of the corporation, the foregoing
instrument was signed in its name by its _____ president,
sealed with its corporate seal and attested by himself/herself as its

ATTEST:

WITNESS my hand and official seal.

DANA LANTRY
ASSISTANT VICE-PRESIDENT

Signature _____



My com

KRISTEN S. FEERS
COMM. #1022144
Notary Public - California
ORANGE COUNTY
My Comm. Exp. Apr. 22, 1996

(This area for official notarial seal)

Form 259/North Carolina (Rev. 10/6/93)

This instrument prepared by: B. LAMEROPOULOS AND V. PHAM
16800 ASTON STREET, IRVINE, CA 92714

Case 3:14-cv-01836-MO   Document 18-2   Filed 01/26/15   Page 15 of 97

BK1830 P1289

STATE OF NORTH CAROLINA—Forsyth County

The foregoing (or annexed) certificate____ of _Krista S. Fears, NP Orange Co. CA_
(here give name and official title of the officer signing the certificate____ passed upon)

is (are) certified to be correct. This the ___11___ day of ___July___ 19 _94_

L. E. Spear, Register of Deeds

By_____ Deputy-Assistant

Probate and Filing Fee $_____ paid.

**EXHIBIT A.**

BK1830  P1290

Lying and being in Middlefork township and beginning at an iron stake in the middle of McGee Road (a paved State road), said stake being at the southwest Corner of John C. Harrison (John Quesenberry); thence South 85 degrees East aling the South line of Harrisons lot 345.6 feet to an iron stake.  Harrison Southeast corner in old O.P. Morris lines; thence South 2 degrees 29 miles West with O. P. Morris line 125 feet to an iron stake.  Grover McGee corner; thence with Grover McGee line North 87 degrees 19 miles 311 feet to an iron stake in the center of said McGee road, Grover McGee and Elmer McGee corner; the.ce 13 degrees 30 minutes West along middle of the said road 125 feet to the place of beginning.

K 1298 PG 0730

STATE MS.-DESOTO CO.
FILED

MAR 12  10 31 AM '01

THIS INSTRUMENT PREPARED BY:
ONE STOP MORTGAGE, INC.

Indexing instructions:

Marginal Notation:

Book                   at Page 1298 PG 730
                       Bk 1298 PG 730
                       W.F                CLK.

RECORD AND RETURN TO :
DOCUMENT MANAGEMENT NETWORK, INC.
WALL STREET POST OFFICE BOX 980
NEW YORK, NY 10268-0980

90071
Order No.
Escrow No. CK-1-1164-6094
Loan No. TX013062

9540  9519688

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
CHASE MORTGAGE HOLDING, INC.
343 THORNALL STREET
EDISON, NJ 08837

all beneficial interest under that certain Deed of Trust dated  MAY 26, 1999
executed by AVIE ELIZABETH FLOYD AND WILLIAM D. FLOYD, JR.

, Grantor,

to CRAIG N. LANDRUM, ESQ.

, Trustee,

and recorded either
☐ concurrently herewith; or
☑ in Book 1118 , Page 449 on 6-8-99
in the office of the Chancery Clerk of DESOTO

County,

, describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust. AAMES CAPITAL CORPORATION, A
CALIFORNIA CORPORATION

STATE OF CALIFORNIA            SS.
COUNTY OF ORANGE
        JUN 0 8 1999    JUN 0 9 1999
On  D.A. Yablonsky              before me,

personally appeared
DANA LANTRY AUTHORIZED AGENT

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ D.A. Yablonsky

DANA LANTRY
AUTHORIZED AGENT

D. A. YABLONSKY
Commission # 1149510
Notary Public-California
Orange County
My Comm. Expires Aug 1, 2001

11570210711

MISSISSIPPI CORPORATION ASSIGNMENT OF DEED OF TRUST
Document Systems, Inc. (800) 649-1362

MSCAOD.0S

BK 1298 PG 0731

## Exhibit "A"

Lot No. 4 of Fulton Addition, Maywood Subdivision, as shown on plat recorded on the 16th day of April, 1946, in Book 32, Page 349, Records of DeSoto County, Mississippi, situated in Section 29, Township 1 South, Range 6 West.

This being the same property as conveyed Jimmy Neal Andrews and wife Barbara J. Andrews to Avie Elizabeth Andrews and William D. Floyd, Jr., in Warranty Deed Book 342 Page 267 dated 10-9-98 recorded 11-2-98 Chancery Clerk's Office of DeSoto County Mississippi.

Parcel ID Number is: 1069-2908.0-00004.00
Property Address is: 7978 North Crescent Circle, Olive Branch, MS 38654

BK 1208 PG 0669

STATE MS.-DESOTO CO.
FILED

MAY 1  11 20 AM '00

BK 1208 PG 669
W F                    CLK.

THIS INSTRUMENT PREPARED BY:
AAMES FUNDING CORPORATION

AND WHEN RECORDED MAIL TO:

**AAMES CAPITAL CORPORATION**
c/o Collateral Control Department
350 S. Grand Avenue - 42nd Floor
Los Angeles California 90071

Escrow No. :
Loan No. TX013255        9550720

Indexing instructions:

Marginal Notation:

Book                    at Page

———— SPACE ABOVE THIS LINE FOR RECORDER'S USE ————

## Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
**AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION**
360 S. Grand Ave., L.A. CA 90071
all beneficial interest under that certain Deed of Trust dated    AUGUST 26, 1999
executed by ROTONDIA L. POLK

, Grantor,

to        CRAIG N. LANDRUM, ESQUIRE

, Trustee,

and recorded either
☐ concurrently herewith; or
☒ in Book 1144 , Page 722 , Rec. Date 9/4/99, Mort. Aml. $69,548.00
in the office of the Chancery Clerk of DESOTO                    County,
, describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust. AAMES FUNDING CORPORATION, A

STATE OF CALIFORNIA        ss.
COUNTY OF ORANGE

On        SEP 0 8 1999    before me,
~~D. A. YABLONSKY~~        Pamela R. Mullins
personally appeared DANA LANTRY, VICE PRESIDENT

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Pamela R. Mullins_
~~D. A. YABLONSKY~~    Pamela R. Mullins

(This area for official notarial seal)

CALIFORNIA CORPORATION, DBA
AAMES HOME LOAN

3347 MICHELSON DR., STE. 300
IRVINE, CA 92612

DANA LANTRY, VICE PRESIDENT

PREPARED BY AAMES
350 S. GRAND AVE. 42nd FL
LOS ANGELES, CA 90071

PAMELA R. MULLINS
COMM. #1165952
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Jan. 13, 2002

BK 1208 PG 0670

Loan No.: TX013255

Property Address:
8854 HAILEY STREET
SOUTHHAVEN, MISSISSIPPI  38671

Exhibit "A"

Legal Description

Land situated in DeSoto County, Mississippi:

Lot 7, Alexander Subdivision, Section 20, Township 1 South, Range 7 West,
DeSoto County, Mississippi, as per plat thereof recorded in Plat Book 26,
Page 45 A, in the office of the Chancery Clerk of DeSoto County, Mississippi.

RECORDING REQUESTED BY, AND
WHEN RECORDED, MAIL TO:

Aames Capital Corporation
c/o Collateral Control Department
350 S. Grand Avenue
42nd. Floor
Los Angeles, California 90071
~~~~~~

Order #: 3812223-92
Escrow #: 22981-T

Application #: CA013008

Recorded in Official Records, County of
San Bernardino, Larry Walker, Recorder

12.00

**Doc No. 19990133564**
**09:09am 03/31/99**

285 40174318 01 15

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 |
|---|---|---|---|---|---|---|---|---|---|
| PG | FEE | APF | GMS | PN CPY | CRT CPY | ADO MM | PEN PR | | PCOR |
| 2 | 7 | 3 | | | | | 2 | | |
| NON ST | LN | SVY | 5. CIT-CO | TRANS TAX | | 6. DA | CHRG | | EXAM |

## Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to
AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION

all beneficial interest under that certain Deed of Trust dated      NOVEMBER 12, 1998       ,
executed by RICHARD A. SAMUELSON, JR. AND DONNA L. SAMUELSON, HUSBAND
AND WIFE, AS JOINT TENANTS                                      , Trustor,
to F.C.I., A CALIFORNIA CORPORATION
                                                               , Trustee,

and recorded as Official Records in the County Recorder's office of
                         SAN BERNARDINO                         County,
State of California, describing land therein as:
LOT 8, BLOCK 5 OF BIG BEAR PARK NO. 1, IN THE COUNTY OF SAN
BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 24,
PAGE(S) 59 AND 60, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

Doc.No. 19980499104
DATE: 11-20-98

**TOGETHER** with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust.

**CALIFORNIA - ALL PROGRAMS**
Laser Forms Inc. (800) 446-3555
LIFT #OSM101CA 10/95          **Page 1 of 2**          Borrower's Initials: _____ _____ _____ _____

CACORP.OS

ONE STOP MORTGAGE, INC., DBA ONE STOP FUNDING, A WYOMING CORPORATION

_____

DANA LANTRY
Vice President

_____


_____


**STATE OF**   CALIFORNIA
**COUNTY OF**   ORANGE

On   **NOV 2 4 1998**                    , before me,   *Pamela R. Mullins*

**DANA LANTRY**                                (Notary Public), personally appeared
**VICE PRESIDENT**

personally known to me (proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature   *Pamela R. Mullins*

(Seal)



PAMELA R. MULLINS
COMM. #1165952
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Jan. 13, 2002

**CALIFORNIA - ALL PROGRAMS**

#OSM101CA 10/95          **Page 2 of 2**

CACORP.OS

RECORDING REQUESTED BY, AND

When recorded mail to:
**InterLink Mortgage Services**
9121 Oakdale Ave., Ste. 100
Chatsworth, CA 91311

Order #:  3812223-92
Escrow #:  22981-T

Application #:  CA013008

Recorded in Official Records, County of
San Bernardino, Larry Walker, Recorder

# Doc No. 20000107689
## 1:36pm 03/30/00

C                                 # 701

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|----|
| PG | FEE | APF | GIMS | PN CPY | CRT CPY | ADD NM | PEN PR | | PCOR |
| 2 | 7 | 3 | | | | 2 | 6 | | |
| NON ST | LN | SVY | CIT-CO | TRANS TAX | | DA | CHRG | | EXAM |
| | | | 5 | | | | | | |

7002616147 **Corporation Assignment of Deed of Trust**

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to
NATION'S CREDIT HOME EQUITY SERVICES CORPORATION
405 WEST LOOP 820 SOUTH, STE. 110, FORT WORTH, TX, 76108
all beneficial interest under that certain Deed of Trust dated       NOVEMBER 12, 1998
executed by RICHARD A. SAMUELSON, JR. AND DONNA L. SAMUELSON, HUSBAND
AND WIFE, AS JOINT TENANTS                                                    , Trustor,
to F.C.I., A CALIFORNIA CORPORATION
                                                                              , Trustee,
and recorded as Official Records in the County Recorder's office of
                         SAN BERNARDINO                                  County,
State of California, describing land therein as:
LOT 8, BLOCK 5 OF BIG BEAR PARK NO. 1, IN THE COUNTY OF SAN
BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 24,
PAGE(S) 59 AND 60, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

Recording Date : 11·20·98
Inst # 19980499104

Property Address: 536 San Bernardino Avenue, Sugarloaf,
California 92386

**TOGETHER** with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust.

**CALIFORNIA - ALL PROGRAMS**
Laser Forms Inc. (800) 446-3555
LIFT #0SM101CA 10/95          **Page 1 of 2**     Borrower's Initials: _____ _____ _____ _____

CACORP.OS

AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION

DANA LANTRY

AUTHORIZED AGENT

STATE OF    CALIFORNIA
COUNTY OF   ORANGE

On    **NOV 2 4 1998**    , before me,    *Pamela R. Mullins*

**DANA LANTRY**    (Notary Public), personally appeared

personally known to me (proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

(Seal)



PAMELA R. MULLINS
COMM. #1165952
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Jan. 13, 2002

**CALIFORNIA - ALL PROGRAMS**

#OSM101CA 10/95        **Page 2 of 2**

CACORP.OS

4/17/08 11:14:40
BK 2,886 PG 145
DESOTO COUNTY, MS
W.E. DAVIS, CH CLERK

Prepared by:
PAM INGALLS
7515 IRVINE CENTER DR. IRVINE, CA
92618

Record & Return To:
Docx, LLC
1111 Alderman Dr., Ste. 350
Alpharetta, GA 30005

EMCA A015



589 0009712647EMC ASGN 1

0009712647  EMC Loan #

# ASSIGNMENT OF DEED OF TRUST

FOR VALUABLE CONSIDERATION, the receipt of which is acknowledged, the undersigned does hereby sell, transfer and assign unto ~~Mortgage Electronic Registration Systems, Inc.~~ EMC MORTGAGE CORP. ~~2780 Lake Vista Drive~~ 909 HIDDEN RIDGE SUITE 200 ~~Lewisville, Texas 75067~~ IRVING, TX 92059 (hereafter referred to as "Assignee"), that certain Deed of Trust, relating to the property legally described as SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT 'A' (A.P.N. #: 2059320100000800)
executed by MOSES STREET, JR. AND JEANETTE T. STREET, HUSBAND AND WIFE

to Craig N. Landrum

Trustee,
for the benefit of PEOPLE'S CHOICE HOME LOAN, INC.                                dated
02/18/2004                          , securing a note in the sum of $146,000.00      , recorded
in Book    1942              , Page    271             , of the Office of the Chancery
Clerk of ~~MARSHALL~~ DESOTO            , County, Mississippi, together with the indebtedness
secured thereby. Recorded March 10, 2004.

The UNDERSIGNED as Beneficiary warrants that it is the legal owner of the above described indebtedness and is capable of conveying title to same.

TO HAVE AND TO HOLD the same unto the said Assignee, their successors and assigns, together with all the interest in and to said real estate thereby conveyed and the balance due on the notes thereby secured to its own use and benefit forever.

IN WITNESS THEREOF the undersigned has executed this assignment through its
on this the          24th day of February, 2004.

Hema Patel
Ingrid Sampen

PEOPLE'S CHOICE HOME LOAN, INC., a
WYOMING CORPORATION

By: _____
Its: _____
Dana Lantry
Asst. Vice President

State of ~~Mississippi~~ California
County of Orange

Personally appeared before me, the undersigned authority in and for the said county and state, on this 24th day of February, 2004     , within my jurisdiction, the within named
who acknowledged that he/she is Dana Lantry
Asst Vice President                    People's Choice Home Loan, Inc.
of
a                                        Wyoming corporation, and that for and on behalf of the said corporation, and as its act and deed he/she executed the above and foregoing instrument, after first having been duly authorized by said corporation so to do.

Mississippi Assignment of Deed of Trust
with Acknowledgment
-895W(MS) (9711).02        11/97
VMP MORTGAGE FORMS - (800)521-7291

BOOK  96  PAGE 424

LAURA KABIR
Commission # 1459243
Notary Public - California
Orange County
My Comm. Expires Dec 30, 2007

BK 2,886 PG 146

Land situated in DeSoto County Mississippi to wit:

Lot 8,   Stonewall Farms Subdivision,  located in Section 32,   Township 2 South,
Range 5 West, DeSoto County, Mississippi, and more particularly described in plat
of said subdivision recorded in Plat Book 14,  Pages 1 & 2,  in the office of the
Chancery Clerk of DeSoto County Mississippi, containing 3.00 acres of land.

Being the same property conveyed to grantor,  Moses Street Jr., and wife Jeanette
T.  Street,  herein by Warranty Deed of record at Book Number 269, Page 529, dated
April 8,  1994,  filed April 19,  1994,  in the Chancery Clerk's Office of DeSoto
County Mississippi.

*Corrective: Rerecord with correct county.

BOOK _96_ PAGE _425_

STATE OF MS
COUNTY OF MARSHALL
FILED & RECORDED
2007 NOV -2 PM 1: 44
BOOK _96_ PAGE 424-425
C.W. "CHIP" THOMAS
CHANCERY CLERK

4/17/08 11:14:40
BK 2,886 PG 145
DESOTO COUNTY, MS
W.E. DAVIS, CH CLERK

Prepared by:
**PAM INGALLS**
**7515 IRVINE CENTER DR. IRVINE, CA**
**92618**

Record & Return To:
Docx, LLC
1111 Alderman Dr., Ste. 350
Alpharetta, GA 30005

**EMCA A015**

589 0009712647EMC ASGN 1
0009712647 EMC Loan #

# ASSIGNMENT OF DEED OF TRUST

FOR VALUABLE CONSIDERATION, the receipt of which is acknowledged, the undersigned does hereby sell, transfer and assign unto ~~Mortgage Electronic Registration Systems, Inc.~~ *EMC MORTGAGE CORP.*
~~2780 Lake Vista Drive~~ *909 HIDDEN RIDGE SUITE 200*
~~Lewisville, Texas 75067~~ *IRVING, TX 90039*
(hereafter referred to as "Assignee"), that certain Deed of Trust, relating to the property legally described as
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT 'A'**
**(A.P.N. #: 2059320100000800)**
executed by **MOSES STREET, JR. AND JEANETTE T. STREET, HUSBAND AND WIFE**

to **Craig N. Landrum**

Trustee,
for the benefit of **PEOPLE'S CHOICE HOME LOAN, INC.**, dated
**02/18/2004**, securing a note in the sum of **$146,000.00**, recorded
in Book **1942**, Page **271**, of the Office of the Chancery
Clerk of ~~MARSHALL~~ DeSoto, County, Mississippi, together with the indebtedness
secured thereby. Recorded March 10, 2004.

The UNDERSIGNED as Beneficiary warrants that it is the legal owner of the above described indebtedness and is capable of conveying title to same.

TO HAVE AND TO HOLD the same unto the said Assignee, their successors and assigns, together with all the interest in and to said real estate thereby conveyed and the balance due on the notes thereby secured to its own use and benefit forever.

IN WITNESS THEREOF the undersigned has executed this assignment through its
on this the **24th** day of **February**, **2004**.

Hema Patel

Ingrid Sampen By:

**PEOPLE'S CHOICE HOME LOAN, INC., a**
**WYOMING CORPORATION**

Its: _____

**Dana Lantry**
**Asst. Vice President**

State of ~~Mississippi~~ California
County of Orange

Personally appeared before me, the undersigned authority in and for the said county and state, on this
**24th** day of **February**, **2004**, within my jurisdiction, the within named

who acknowledged that he/she is **Dana Lantry**
**Asst Vice President**

People's Choice Home Loan, Inc.

of
a Wyoming corporation, and that for and on behalf of the
said corporation, and as its act and deed he/she executed the above and foregoing instrument, after first having been duly authorized by said corporation so to do.

Mississippi Assignment of Deed of Trust
with Acknowledgment
-895W(MS) (9711).02     11/97
VMP MORTGAGE FORMS - (800)521-7291



LAURA KABIR
Commission # 1459243
Notary Public - California
Orange County
My Comm. Expires Dec 30, 2007

**BOOK 96 PAGE 424**

BK 2,886 PG 146

Land situated in DeSoto County Mississippi to wit:

Lot 8,   Stonewall Farms Subdivision,   located in Section 32,   Township 2 South,
Range 5 West, DeSoto County, Mississippi, and more particularly described in plat
of said subdivision recorded in Plat Book 14,   Pages 1 & 2,   in the office of the
Chancery Clerk of DeSoto County Mississippi, containing 3.00 acres of land.

Being the same property conveyed to grantor,   Moses Street Jr., and wife Jeanette
T.   Street, herein by Warranty Deed of record at Book Number 269, Page 529, dated
April 8,   1994,   filed April 19,   1994,   in the Chancery Clerk's Office of DeSoto
County Mississippi.

*Corrective: Re-recorded with correct county.

STATE OF MS
COUNTY OF MARSHALL
FILED & RECORDED

2007 NOV -2  PM 1:44

BOOK 96 PAGE 424-425
C.W. "CHUCK" THOMAS
CHANCERY CLERK

 **UBS**

**UBS AG New York Branch**
7515 Irvine Center Drive
Irvine, CA 92618

UBS Special Servicing Group

www.ubs.com

Loan Number:
Property Address:


Dear

It is our understanding that your financial circumstances since entering
into the above referenced loan with UBS AG, New York Branch dba UBS
Special Servicing Group (UBS SSG) has changed substantially and you are
no longer able to maintain the loan payments.

It is also our understanding that you have a strong desire to settle this
debt with UBS SSG, however the real property that secures your loan, may
not sell for an adequate amount to payoff your loan in full. For this
reason you have asked if we would consider accepting an amount less than
the total debt due through the sale of the property or in the alternative
would we consider accepting a Deed-in-Lieu of Foreclosure.

Before we can make a final decision with respect to your request, you
must provide us with the following information. After we review this
information we will provide you and/or your authorized agent with a
prompt response.

* A complete financial statement on all parties obligated on the loan.
* Last three (3) months of bank statement on all accounts.
* A copy of each person's monthly pay-stubs who is obligated on the
  loan for the past 3 months.
* If you are self employed, a copy of your business and personal
  bank account statements for the past 6 months.
* A copy of your federal tax returns for the most recent calendar
  year.
* A hardship letter that thoroughly explains what has caused your
  inability to maintain current and future payments on your loan.
* If your property is currently listed for sale, a copy of the
  listing agreement, any price reductions that have taken place
  and any expired listings on the home.
* If the property has already been sold, we will need a copy of the
  contract of sale and any addendums to it, which have been signed
  by you and the buyer.
* Written authorization from you to discuss the offer and/or to
  negotiate the offer with a 3rd party such as your real estate
  agent.

 **UBS**

**UBS AG New York Branch**
7515 Irvine Center Drive
Irvine, CA 92618

UBS Special Servicing Group

www.ubs.com

* A copy of an estimated HUD1/Settlement Statement from your real
  estate agent or closing agent that discloses all costs that you
  will be required to pay and any liens that must be paid exclusive
  of UBS SSG.
* A copy of any Termite Report or Contractor's estimate for repairs
  that must be completed to conclude the sale of the property.
* We will require a Full Interior Appraisal of the property at our
  expense. This can be arranged with you directly or an authorized
  3rd party such as your real estate agent.

We recommend that you seek the advice of a tax professional should you
have any questions relating to the sale and/or transfer of real property.
We are not tax professionals and are unable to assist you with these
types of questions.

Since time is of the essence in this matter, we ask that you provide
us with all the requested information and/or documentation within 10
days of the date of this letter.

If you have any questions regarding the contents of this request please
contact our offices toll free at 1-888-877-9737 Monday through Friday
from 8:00 AM to 5:00 PM PST.


Sincerely,

Dana Lantry
Loss Mitigation


This is an attempt to collect a debt and any information obtained will be
used for that purpose. This notice is required by the Federal Fair Debt
Collection Practices Act and doesn't imply that we're attempting to
collect money from anyone who has discharged the debt under the
Bankruptcy Laws of the United States.

 **UBS**

**UBS AG New York Branch**
7515 Irvine Center Drive
Irvine, CA 92518

UBS Special Servicing Group

www.ubs.com

Loan Number:
Property Address:

Dear

The undersigned individuals that have a loan with UBS AG, New York Branch dba UBS Special Servicing Group (UBS SSG) hereby authorize UBS SSG associates, agents of UBS SSG and/or assigns that right to discuss My/Our loan with the following named individuals. (Please state in what capacity these individuals are representing you next to their names, for example real estate agent, loan officer etc.)

| Authorized Name | Phone No. | Relationship to Borr. |
|---|---|---|

| Authorized Name | Phone No. | Relationship to Borr. |
|---|---|---|

You are hereby authorized to release any information regarding My/Our loan to the above named individuals. It is understood by the undersigned that UBS SSG will not negotiate any arrangements with the above named individuals for the settlement of this debt unless the authorized party is representing them as legal counsel and/or a debt counseling service. If the authorized party is legal counsel for you then we will require that they submit a separate letter of representation to our offices that specifies in what capacity they represent you.

Borrower Name: _____          Date: _____

Borrower Name: _____          Date: _____

Loss Mitigation Department

 **UBS**

**UBS AG New York Branch**
7515 Irvine Center Drive
Irvine, CA 92518

UBS Special Servicing Group

www.ubs.com

Loan Number:
Property Address:

Dear

It is our understanding that your financial circumstances since entering
into the above referenced loan with UBS AG, New York Branch dba UBS
Special Servicing Group (UBS SSG) has changed substantially and that you
are no longer financially able to maintain the loan payments.

In your own words please use the area below to explain what hardship has
occurred that is preventing you from maintaining the payments on your
loan. Please be specific as possible.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Borrower Signature: _____   Borrower Signature: _____   Date: _____

Borrower Signature: _____   Borrower Signature: _____   Date: _____

Loss Mitigation Department

 **UBS**

### BORROWER FINANCIAL STATEMENT

LOAN #_____

| BORROWER | | | | CO-BORROWER | | |
|---|---|---|---|---|---|---|
| **BORROWER'S NAME** | | | | **CO-BORROWER'S NAME** | | |
| **SOCIAL SECURITY #** | **HOME PHONE #** | **WORK PHONE #** | | **SOCIAL SECURITY #** | **HOME PHONE #** | **WORK PHONE #** |
| **MAILING ADDRESS** | | | | **PROPERTY ADDRESS** | | |

| Do you occupy the property? Yes ☐ No ☐ | Is it a Rental? Yes ☐ No ☐ | If so, what is the monthly rental Income? | Is the property listed for sale? Yes ☐ No ☐ | If so, with whom? |
|---|---|---|---|---|
| **REAL ESTATE AGENT'S NAME:** | | | **CREDIT COUNSELING REPRESENTATIVE:** | |
| **REAL ESTATE AGENT'S PHONE:** | | | **CREDIT COUNSELING REP'S PHONE:** | |

| Have you contacted a credit counseling service for help? Yes ☐ No ☐ | | Do you pay Real Estate Taxes? (outside of mortgage payments) Yes ☐ No ☐ | Are the taxes current? Yes ☐ No ☐ |
|---|---|---|---|
| Have you filed Bankruptcy? Yes ☐ No ☐ | If Yes, Chapter 7 ☐ Chapter 13 ☐ | Filing Date: | ATTORNEY'S NAME: | Are there other liens on the property? Yes ☐ No ☐ |
| | | | ATTORNEY'S PHONE: | |

| EMPLOYMENT | | | |
|---|---|---|---|
| **EMPLOYER - BORROWER** | **HOW LONG?** | **EMPLOYER – CO-BORROWER** | **HOW LONG?** |

| Monthly Income - Borrower | | Monthly Income - Co-Borrower | |
|---|---|---|---|
| Wages | $ | Wages | $ |
| Unemployment Income | $ | Unemployment Income | $ |
| Child Support / Alimony | $ | Child Support / Alimony | $ |
| Disability Income | $ | Disability Income | $ |
| Rents Received | $ | Rents Received | $ |
| Other | $ | Other | $ |
| Less : Federal and State Tax, FICA | $ | Less : Federal and State Tax, FICA | $ |
| Less: Other Deductions (401K, etc.) | $ | Less: Other Deductions (401K, etc.) | $ |
| **Total** | $ | **Total** | $ |

| Monthly Expenses (all Borrowers) | | Assets & Liabilities (all Borrowers) | | |
|---|---|---|---|---|
| Other Mortgages / Liens/Rents | $ | Type | | Estimated Value Amount |
| Auto Loan(s) | $ | Checking Account(s) | $ | / |
| Auto Expenses / Insurance | $ | Saving / Money Market | $ | / |
| Credit Cards / Installment Loan(s) | $ | Stocks / Bonds / CDs | $ | / |
| Health Insurance | $ | IRA / Keogh Accounts | $ | / |
| Medical | $ | 401K / ESOP Accounts | $ | / |
| Child Care / Support / Alimony | $ | Home | $ | / |
| Food / Spending Money | $ | Other Real Estate | # | $ | / |
| Water / Sewer / Utilities / Phone | $ | Cars | # | $ | / |
| Other | $ | Other | | $ | / |

# DEFENDANT'S EXHIBIT K

*SEC Info*   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Aames Financial Corp/DE – 'S-8' on 1/13/97 – EX-4.3

*As of:* **Monday, 1/13/97** · *Effective:* **1/13/97** · *Accession #:* **950148-97-68** · *File #:* **333-19675**

*Previous 'S-8':* **'S-8' on 9/16/96** · *Next:* **'S-8' on 11/21/97** · *Latest:* **'S-8' on 9/18/03**

in   this entire Filing.   Show   Docs searched   and   every "hit".

Help...   *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).   ↓Bottom

| As Of Agent | Filer | Filing | For·On·As | Docs:Size | Issuer |
|---|---|---|---|---|---|
| 1/13/97 | Aames Financial Corp/DE | S-8 | 1/13/97 | 5:69K | |
| Bowne of Century City/FA | | | | | |

## Registration of Securities to be Offered to Employees Pursuant to an Employee Benefit Plan — Form S-8
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: S-8 | Registration of Securities to be Offered to Employees Pursuant to an Employee Benefit Plan | 5 | 33K |
| 2: EX-4.1 | Instrument Defining the Rights of Security Holders | 11 | 42K |
| **3: EX-4.3** | **Instrument Defining the Rights of Security Holders** | **12** | **40K** |
| 4: EX-5.1 | Opinion re: Legality | 3 | 9K |
| 5: EX-23.1 | Consent of Experts or Counsel | 2 | 7K |

## EX-4.3 — Instrument Defining the Rights of Security Holders
### Exhibit Table of Contents

*Page*   (sequential)          (alphabetic)          Top

1   1st Page  -  Filing Submission
2   Exercise Schedule
3   Transfer
4   Employee

- Alternative Formats (Word, et al.)
- Employee
- Exercise Schedule
- Transfer

| EX-4.3 | 1st Page of 12 | TOC | ↑Top | Previous | Next | ↓Bottom | Just 1st |
|---|---|---|---|---|---|---|---|

**EXHIBIT 4.3**

**FORM OF ASSUMPTION STOCK OPTION**
**AGREEMENT BETWEEN THE REGISTRANT**
**AND THE EMPLOYEES LISTED ON**
**SCHEDULE A THERETO**

| EX-4.3 | 2nd Page of 12 | TOC | 1st | Previous | Next | ↓Bottom | Just 2nd |

**ASSUMPTION**
**OPTION CERTIFICATE**
**(NON-QUALIFIED STOCK OPTION)**

THIS IS TO CERTIFY that Aames Financial Corporation, a Delaware corporation (the *"Company"*), has issued to the employee named below (the *"Employee"*) an Assumption Non-Qualified Stock Option (the *"Option"*) to purchase shares of the Corporation's Common Stock, par value $0.001 per share (the *"Shares"*), as follows:

Name of Employee:        _____

Address of Employee:     200 Baker Street
                         Costa Mesa, California  92626

Number of Shares:        _____

Option Exercise Price:   _____

Option Expiration Date:  _____

        **EXERCISE SCHEDULE:**  With respect to all Shares underlying the Option, the Option shall become exercisable (*"vest"*) as follows:

        _____

        SUMMARY OF OTHER TERMS: This Option is defined in the Assumption Stock Option Agreement (Non-Qualified Option) (the *"Option Agreement"*) which is attached to this Option Certificate (the *"Certificate"*) as Annex I. This Certificate summarizes certain of the provisions of the Option Agreement for your information, but is not complete. Your rights are governed by the Option Agreement, not by this Summary. The Company strongly suggests that you carefully review the full Option Agreement prior to signing this Certificate or exercising the Option.

        Among the terms of the Option Agreement are the following:

        TERMINATION OF EMPLOYMENT: While the Option terminates on the Option Expiration Date, it will terminate earlier if you cease to be employed by the Company. If your employment ends due to death or permanent disability, the Option terminates 12 months after the date of death or disability, and is exercisable during such 12-month period as to the portion of the Option which had vested prior to the date of death or disability. If your employment terminates *"for cause,"* the Option terminates immediately. In all other cases, the Option terminates 90 days after the date of termination of employment, and is exercisable during such time period as

| EX-4.3 | 3rd Page of 12 | TOC | 1st | Previous | Next | ↓Bottom | Just 3rd |

to the portion of the Option which had vested prior to the date of termination of employment. See Section 5 of the attached Option Agreement.

        **TRANSFER:** The Option is personal to you, and cannot be sold, transferred, assigned or otherwise disposed of to any other person, except on your death. See Section 15(d) of the attached Option Agreement.

        EXERCISE: You can exercise the Option (once it is exercisable), in whole or in part, by delivering to the Company a Notice of Exercise identical to Exhibit *"A"* attached to the Option Agreement, accompanied by payment of the Exercise Price for the Shares to be purchased. The Company will then issue a certificate to you for the Shares you have purchased. You are under no obligation to exercise the Option. See Section 4 of the Option Agreement.

        ANTI-DILUTION PROVISIONS: The Option contains provisions which adjust your Option to reflect stock splits, stock dividends, mergers and other major corporate reorganizations which would change the nature of the Shares underlying your Option. See Section 7 of the Option Agreement.

        WITHHOLDING: The Company may require you to make any arrangements

necessary to insure the proper withholding of any amount of tax, if any, required to be withheld by the Company as a result of the exercise of the Option. See Section 13 of the Option Agreement.

2

| EX-4.3 | 4th Page of 12 | TOC | 1st | Previous | Next | ↓Bottom | Just 4th |

### AGREEMENT

Aames Financial Corporation, a Delaware corporation (the *"Company"*), and the above-named person (the *"Employee"*) each hereby agrees to be bound by all of the terms and conditions of the Assumption Stock Option Agreement (Non-Qualified Stock Option) which is attached hereto as Annex I and incorporated herein by this reference as if set forth in full in this document.

DATED: _____

AAMES FINANCIAL CORPORATION

By:_____
Its:_____

**EMPLOYEE:** _____

_____
(Signature)

_____
(Please print the name exactly as you wish it to appear on any stock certificates issued to you upon exercise of the Option)

3

| EX-4.3 | 5th Page of 12 | TOC | 1st | Previous | Next | ↓Bottom | Just 5th |

### ANNEX I

### ASSUMPTION STOCK OPTION AGREEMENT
### (NON-QUALIFIED STOCK OPTION)

This Assumption Stock Option Agreement (this *"Option Agreement"*) is made and entered into on the execution date of the Option Certificate to which it is attached (the *"Certificate"*), by and between Aames Financial Corporation, a Delaware corporation (the *"Company"*) and _____ (the *"Employee"*), with reference to the following:

### RECITALS

A. Pursuant to that certain Employment Agreement, dated _____, (the *"Employment Agreement"*) by and between One Stop Mortgage, Inc. (*"One Stop"*) and Employee, Employee has been granted an option to purchase _____ shares of One Stop Common Stock, no par value, at an exercise price of _____ $_____ per share (the *"Original Option"*).

B. Pursuant to that certain Agreement and Plan of Reorganization, dated August 12, 1996, by and among the Company, One Stop and a wholly owned subsidiary of the Company, the Company has agreed to assume all of One Stop's obligations under the Original Option.

C. The option issued to Employee pursuant to this Option Agreement is provided to Employee in substitution of the Original Option and in satisfaction of the obligation referenced in the immediately preceding recital.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Company and Employee do agree as follows:

1. ASSUMPTION OF OPTION. The Company, in full satisfaction of One Stop's obligations under the Original Option, hereby provides Employee with the right and option (the *"Option"*), upon the terms and subject to the conditions set forth in this Option Agreement, to purchase all or any portion of the number of shares of Common Stock (the *"Shares"*) set forth in the Certificate, at the Option exercise price set forth in the Certificate (the *"Exercise Price"*).

2. TERM OF OPTION. The Option shall terminate and expire on the Option Expiration Date set forth in the Certificate, unless sooner terminated as provided herein.

3.        **EXERCISE PERIOD**.

(a) Subject to the provisions of Sections 3(b) and 5 of this Option Agreement, the Option shall become exercisable (in whole or in part) upon and after the dates set forth under the caption *"Exercise Schedule"* in the Certificate. The installments shall be cumulative; i.e., the Option may be exercised, as to any or all Shares covered by an installment, at any time or times after the installment first becomes exercisable and until the expiration or termination of the Option.

(b) Notwithstanding anything to the contrary contained in this Option Agreement, the Option may not be exercised, in whole or in part, unless and until any then-applicable requirements of all state and federal laws and regulatory agencies shall have been fully complied with to the satisfaction of the Company and its counsel.

4.        EXERCISE OF OPTION.  There is no obligation to exercise the Option, in whole or in part. The Option may be exercised, in whole or in part, only by delivery to the Company of:

(a) written notice of exercise in form and substance identical to Exhibit *"A"* attached to this Option Agreement stating the number of shares of Common Stock then being purchased (the *"Purchased Shares"*); and

(b) payment of the Exercise Price of the Purchased Shares, either in cash or by check.

Following receipt of the notice and payment referred to above, the Company shall issue and deliver to Employee a stock certificate or stock certificates evidencing the Purchased Shares.

5.        **TERMINATION OF EMPLOYMENT**.

(a) If Employee shall cease to be in the employ of One Stop, any present or future corporation which would be a *"subsidiary corporation"* (*"Subsidiary"*) as that term is defined in Section 424 of the Internal Revenue Code of 1986, as amended from time to time, or any successor thereto (the *"Code"*), or any present or future corporation which would be a *"parent corporation"* as that term is defined in Section 424 of the Code (*"Parent"*), for any reason other than death or permanent disability or termination by the Company *"for cause"* (a *"Terminating Event"*), Employee shall have the right to exercise the Option at any time following such Terminating Event until the earlier to occur of (i) 90 days following the date of such Terminating Event and (ii) the Expiration Date. The Option may be exercised following a Terminating Event only to the extent exercisable as of the date of the Terminating Event. To the extent unexercised at the end of the period referred to above, the Option shall terminate. The Company, in its sole and absolute discretion, shall determine whether or not authorized leaves of absence shall constitute termination of employment for purposes of this Option Agreement.

(b) If, by reason of death or disability (a *"Special Terminating Event"*), Employee shall cease to be an officer, director, consultant or employee the Company or any Subsidiary or Parent, then Employee, Employee's executors or administrators or any person or persons acquiring the Option directly from Employee by bequest or inheritance, shall have the right to exercise the Option at any time following such Special Terminating Event until the earlier to occur of (i) 12

2

months following the date of such Special Terminating Event and (ii) the Expiration Date. The Option may be exercised following a Special Terminating Event only to the extent exercisable at the date of the Special Terminating Event. To the extent unexercised at the end of the period referred to above, the Option shall terminate. For purposes of this Option Agreement, *"disability"* shall mean total and permanent disability as defined in Section 22(e)(3) of the Code. Employee shall not be considered permanently disabled unless he furnishes proof of such disability in such form and manner, and at such times, as the Administrator may from time to time require.

(c) If Employee shall be terminated *"for cause"* by One Stop,

the Company, or any Subsidiary or any Parent, the Option shall terminate as of the date of termination. For purposes of this Option Agreement, *"for cause"* shall be defined in the same manner as set forth in the Employment Agreement.

(d) Nothing in the Certificate or this Option Agreement shall confer upon Employee any right to continue in the service and/or employ of One Stop, the Company, any other Subsidiary or any Parent or shall affect the right of the Company, any Subsidiary or any Parent to terminate the relationship or employment of Employee, with or without cause.

6. RESTRICTIONS ON PURCHASED SHARES. None of the Purchased Shares shall be transferred (with or without consideration), sold, offered for sale, assigned, pledged, hypothecated or otherwise disposed of (each a *"Transfer"*) and the Company shall not be required to register any such Transfer and the Company may instruct its transfer agent not to register any such Transfer, unless and until all of the following events shall have occurred:

(a) the Purchased Shares are Transferred pursuant to and in conformity with (i) (x) an effective registration statement filed with the Securities and Exchange Commission (the *"Commission"*) pursuant to the Securities Act of 1933, as amended (the *"Act"*), or (y) an exemption from registration under the Act, and (ii) the securities laws of any state of the United States; and

(b) Employee has, prior to the Transfer of such Purchased Shares, and if requested by the Company, provided all relevant information to Company's counsel so that upon Company's request, Company's counsel is able to, and actually prepares and delivers to the Company a written opinion that the proposed Transfer (i) (x) is pursuant to a registration statement which has been filed with the Commission and is then effective, or (y) is exempt from registration under the Act as then in effect, and the Rules and Regulations of the Commission thereunder, and (ii) is either qualified or registered under any applicable state securities laws, or exempt from such qualification or registration. The Company shall bear all reasonable costs of preparing such opinion.

Any attempted Transfer which is not in full compliance with this Section 6 shall be null and void ab initio, and of no force or effect.

7.     ADJUSTMENTS UPON RECAPITALIZATION. Subject to any required action by the stockholders of the Company:

(a) If the outstanding shares of the Common Stock shall be subdivided into a greater number of shares of the Common Stock, or a dividend in shares of Common Stock or other

3

| EX-4.3 | 8th Page of 12 | TOC | 1st | Previous | Next | Bottom | Just 8th |
|--------|----------------|-----|-----|----------|------|--------|----------|

securities of the Company convertible into or exchangeable for shares of the Common Stock (in which latter event the number of shares of Common Stock issuable upon the conversion or exchange of such securities shall be deemed to have been distributed) shall be paid in respect of the shares of Common Stock, the Exercise Price in effect immediately prior to such subdivision or at the record date of such dividend shall, simultaneously with the effectiveness of such subdivision or immediately after the record date of such dividend, be proportionately reduced, and conversely, if the outstanding shares of Common Stock shall be combined into a smaller number of shares of Common Stock, the Exercise Price in effect immediately prior to such combination shall, simultaneously with the effectiveness of such combination, be proportionately increased.

(b) When any adjustment is required to be made in the Exercise Price, the number of Shares purchasable upon the exercise of the Option shall be adjusted to that number of Shares determined by (i) multiplying an amount equal to the number of Shares purchasable on the exercise of the Option immediately prior to such adjustment by the Exercise Price in effect immediately prior to such adjustment, and then (ii) dividing that product by the Exercise Price in effect immediately after such adjustment.

(c) To the extent that the foregoing adjustments relate to stock or securities of the Company, such adjustments shall be made by the Administrator, and its determination shall be final, binding and conclusive.

(d) The provisions of this Section 7 are intended to be exclusive, and Employee shall have no other rights upon the occurrence of any of the events described in this Section 7.

(e) The grant of the Option shall not affect in any way the right or power of the Company to make adjustments, reclassifications,

reorganizations or changes in its capital or business structure, or to merge, consolidate, dissolve or liquidate, or to sell or transfer all or any part of its business or assets.

8.        INVESTMENT INTENT. Employee represents and agrees that if Employee exercises the Option in whole or in part and if at the time of such exercise the Purchased Shares have not been registered under the Act, Employee will acquire the Shares upon such exercise for the purpose of investment and not with a view to the distribution of such Shares, and that upon each exercise of the Option he or she will furnish to the Company a written statement to such effect.

9.        LEGEND ON STOCK CERTIFICATES. Employee agrees that all certificates representing the Purchased Shares will be subject to such stock transfer orders and other restrictions (if any) as the Company may deem advisable under the rules, regulations and other requirements of the Commission, any stock exchange upon which the Common Stock is then listed and any applicable federal or state securities laws, and the Company may cause a legend or legends to be put on such certificates to make appropriate reference to such restrictions.

10.       NO RIGHTS AS STOCKHOLDER. Employee shall have no rights as a stockholder with respect to the Shares until the date of the issuance to Employee of a stock certificate or stock certificates evidencing such Shares. Except as may be provided in Section 7 of this Option Agreement, no adjustment shall be made for dividends (ordinary or extraordinary, whether in cash,

4

| EX-4.3 | *9th Page of 12* | TOC | 1st | Previous | Next | ¡Bottom | Just 9th |
|--------|------------------|-----|-----|----------|------|---------|----------|

securities or other property) or distributions or other rights for which the record date is prior to the date such stock certificate is issued.

11.       WAIVER OF RIGHTS TO PURCHASE STOCK. By signing this Option Agreement, Employee acknowledges and agrees that none of One Stop, the Company nor any other person or entity is under any obligation to sell or transfer to Employee any option or equity security of One Stop or the Company. By signing this Option Agreement, Employee further acknowledges that all promises, whether written or oral, made by One Stop or the Company regarding the grant of options to purchase shares of the Common Stock of, or other securities of, One Stop or the Company and all grants of such options are superseded and satisfied by this Option Agreement. By signing this Option Agreement, Employee specifically waives all rights which Employee may have had prior to the date of this Option Agreement to receive any option or equity security of One Stop or the Company.

12.       MODIFICATION.  The Administrator may modify, extend or renew the Option or accept the surrender of, and authorize the grant of a new option in substitution for, the Option (to the extent not previously exercised).

13.       WITHHOLDING. The Company shall be entitled to require as a condition of delivery of any Purchased Shares upon exercise of any Option that the Employee agree to remit, at the time of such delivery or at such later date as the Company may determine, an amount sufficient to satisfy all federal, state and local withholding tax requirements relating thereto, and Employee agrees to take such other action required by the Company to satisfy such withholding requirements.

14.       CHARACTER OF OPTION.  The Option is not intended to qualify as an *"incentive stock option"* as that term is defined in Section 422 of the Code.

15.       **GENERAL PROVISIONS.**

(a)        FURTHER ASSURANCES.  Employee shall promptly take all actions and execute all documents requested by the Company which the Company deems to be reasonably necessary to effectuate the terms and intent of this Option Agreement.

(b) NOTICES. All notices, requests, demands and other communications under this Option Agreement shall be in written and shall be given to the parties hereto as follows:

(i)        If to the Company, to:

Aames Financial Corporation
3731 Wilshire Boulevard
Los Angeles, California 90010

(ii)       If to Employee, to the address set forth in the records of One Stop.

or at such other address or addresses as may have been furnished by such party in writing to the other party hereto. Any such notice, request, demand or other communication shall be effective (i) if given by mail, 72 hours after such communication is deposited in the mail by first-class certified mail,

5

| EX-4.3 | 10th Page of 12 | TOC | 1st | Previous | Next | ↓Bottom | Just 10th |

return receipt requested, postage prepaid, addressed as aforesaid, or (ii) if given by any other means, when delivered at the address specified in this subparagraph (b).

(c) TRANSFER OF RIGHTS UNDER THIS OPTION AGREEMENT. The Company may at any time transfer and assign its rights and delegate its obligations under this Option Agreement to any other person, corporation, firm or entity, including its officers, directors and stockholders, with or without consideration.

(d) OPTION NON-TRANSFERABLE. Employee may not sell, transfer, assign or otherwise dispose of the Option except by will or the laws of descent and distribution, and the Option may be exercised during the lifetime of Employee only by Employee or by Employee's guardian or legal representative in the case of a disability, and upon Employee's death only by Employee's Estate or by any person who acquired the Option by bequest or inheritance or by reason of the death of Employee.

(e) SUCCESSORS AND ASSIGNS. Except to the extent specifically limited by the terms and provisions of this Option Agreement, this Option Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns, heirs and personal representatives.

**(f) GOVERNING LAW. THIS OPTION AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE IN, AND TO BE PERFORMED WITHIN, THAT STATE.**

(g) MISCELLANEOUS. Titles and captions contained in this Option Agreement are inserted for convenience of reference only and do not constitute a part of this Option Agreement for any other purpose. Except as specifically provided herein, neither this Option Agreement nor any right pursuant hereto or interest herein shall be assignable by any of the parties hereto without the prior written consent of the other party hereto.

The Signature Page to this Option Agreement consists of the last page of the Certificate.

6

| EX-4.3 | 11th Page of 12 | TOC | 1st | Previous | Next | ↓Bottom | Just 11th |

Exhibit "A"

**NOTICE OF EXERCISE**

(To be signed only upon exercise of the Option)

TO:    Aames Financial Corporation

The undersigned, the holder of the enclosed Stock Option Agreement (Non-Qualified Stock Option), hereby irrevocably elects to exercise the purchase rights represented by the Option and to purchase thereunder _____ * shares of Common Stock of Aames Financial Corporation (the "Company"), and herewith encloses payment of $_____ in full payment of the purchase price of such shares being purchased.

Dated: _____

```
-------------------------------
(Signature must conform in all respects
to name of holder as specified on the
face of the Option)

-------------------------------
(Please Print Name)

-------------------------------
 (Address)
```

* Insert here the number of shares called for on the face of the Option (or, in the case of a partial exercise, the number of shares being exercised), in either case without making any adjustment for additional Common Stock of the Company, other securities or property which, pursuant to the adjustment provisions of the Option, may be deliverable upon exercise.

7

| EX-4.3 | Last Page of 12 | TOC | 1st | Previous | Next | ↓Bottom | Just 12th |

### SCHEDULE A

### OPTION GRANTS UNDER ASSUMPTION STOCK OPTION AGREEMENTS

[Download Table]

| Name of Optionee | Exercise Price | Number of Options | Expiration Date |
| --- | --- | --- | --- |
| Robert Anthony | 0.2949 | 10,172 | 9/14/05 |
| Steven Baker | 0.2949 | 10,172 | 9/15/05 |
| David Balk | 0.2950 | 5,086 | 9/14/05 |
| Agnes Bartigue | 0.2948 | 2,034 | 9/15/05 |
| Dwayne Barfell | 0.2949 | 20,345 | 9/15/05 |
| David Blewett | 4.5642 | 10,172 | 11/20/05 |
| Henry Brandt | 0.2949 | 10,172 | 10/19/05 |
| James Carlson | 0.2949 | 20,345 | 10/09/05 |
| Rick Carter | 0.2949 | 15,259 | 9/14/05 |
| John Dempsey | 0.2949 | 6,782 | 9/15/05 |
| Thanh-Nga Do | 0.2950 | 2,543 | 9/14/05 |
| Christopher Dreitzler | 4.5642 | 10,172 | 11/22/05 |
| Rita Duckwitz | 0.2948 | 2,034 | 9/15/05 |
| Kevin Helmick | 0.2949 | 15,259 | 10/27/05 |
| Colleen Hutchinson | 4.5642 | 20,345 | 2/09/06 |
| Pamela Ingalls | 0.2950 | 5,086 | 9/15/05 |
| Douglas Johnson | 0.2949 | 15,259 | 9/14/05 |
| Ernie LaCasse | 4.5651 | 2,543 | 2/19/06 |
| James Laliberte | 0.2950 | 2,543 | 3/15/05 |
| Dana Lantry | 0.2949 | 10,172 | 9/14/05 |
| Arte Libunao | 0.2950 | 5,086 | 9/15/05 |
| Lucio Martino | 0.2949 | 20,345 | 10/10/05 |
| Randy Morrisson | 0.2950 | 5,086 | 9/15/05 |
| Laurel Neuber | 0.2950 | 5,086 | 9/15/05 |
| Neil Notkin | 0.2949 | 40,690 | 9/15/05 |
| Robert Rivernider | 0.2949 | 20,345 | 9/15/05 |
| Debra Shetland | 0.2950 | 2,543 | 9/15/05 |
| Larry Siegel | 0.2949 | 10,172 | 9/15/05 |
| Steven Tomaszewski | 32.1295 | 2,543 | 5/30/06 |
| Scott Warren | 0.2950 | 2,543 | 9/15/05 |
| Peter Waterson | 4.5649 | 5,086 | 12/15/05 |
| Matthew Woodle | 0.2949 | 20,345 | 9/15/05 |
| Peter Woodworth | 0.2949 | 40,690 | 9/15/05 |
| **TOTAL** | | **377,055** | |

---

### Dates Referenced Herein  *and*  Documents Incorporated by Reference

| *This 'S-8' Filing* | *Referenced-On Page* | | | *Other Filings* |
| --- | --- | --- | --- | --- |
| | *Date* | *First* | *Last* | |
| Filed on / Effective on: | 1/13/97 | | | 424B3 |
| | 8/12/96 | 5 | | SC 13G |
| | | | | **List all Filings** |

↑Top

---

Filing Submission 0000950148-97-000068  –  Alternative Formats (Word / Rich Text, HTML, Plain Text, et al.)

---

Copyright © 2015 **Fran Finnegan & Company**. *All Rights Reserved.*
*About – Privacy – Redactions – Help* — *Sat, 24 Jan 23:16:38.0 GMT*

# DEFENDANT'S EXHIBIT L

# OMNI
# Document Examinations

www.docexamination.com

**Robin D. Williams, MFS, MS, D-BFDE**
**Board Certified**
rwilliams@docexamination.com

**Bonnie L. Schwid, B.S., D-BFDE**
**Board Certified**
blschwid@docexamination.com

December 4, 2014

Attorney Paul Bach
Bach Law Offices
PO Box 1285
Northbrook, Illinois   60065

## PRELIMINARY REPORT

RE: Questioned Signature on Allonge to Promissory Note

Dear Attorney Bach:

Pursuant to your request, I examined the following documents:
**Document containing the disputed signature of Jason J. Vecchio:**
Q-1    Chris Swift and Marcia Swift, Allonge, Batavia, Illinois, dated 01/26/07 (machine copy).

**Documents submitted as bearing the genuine signature(s) of Jason J. Vecchio**
(all are machine copies):
A-1    Tuli M. Wohl, Allonge, Phoenix, Arizona, dated 11/14/06.
A-2    Rhonda L. Hardwick, Allonge, Loogootee, Indiana, dated 09/30/03.
A-3    Catherine Gebhardt, Allonge, Sevierville, Tennessee, dated 11/07/02.

The purpose of the examination was to determine whether the signature in question on Item Q-1 was written in ink or if the questioned signature on Q-1 and the signatures submitted as genuine on Items A-1, A-2, A-3 were stamped signatures or photocopied signatures.

## Procedure
The examination consisted of a visual and microscopic study of the writing style, the discriminating writing characteristics, natural variations, spatial arrangement, letter formations, letter connections and other significant handwriting features.
Side-by-side comparisons were made between the questioned signature and the signatures that were used for comparison as well as overlaying the signatures on top of one another on a light box.

**Mailing Address:**
1253 Scheuring Road
Suite A
DePere, WI 54115

1001 W. Glen Oaks Ln.
Suite 219
Mequon, WI 53092

205 W. Wacker Dr.
Suite 922
Chicago, IL 60606

Defendant's Exhibit L - Page 1

RE: Attorney Paul Bach
Page 2
December 4, 2014

## Opinion

The characteristics within the questioned signature on the Item Q-1, an Allonge to a Promissory Note for Chris Swift and Marcia Swift and the evidence within the comparison documents, A-1, A-2 and A-3, Allonges for Tuli M. Wohl, Rhonda L. Hardwick and Catherine Gebhardt depicts that the signatures are duplicates of one another. In order to come to a definitive opinion regarding whether one signature was written in ink or if all 4 signatures were created using a stamp or by means of photocopying, we require that the original questioned document, Q-1, be made available for examination in order to determine whether the signature in question on Q-1 was written in ink, created by a stamp or if the signature is a photocopy.

## Discussion

This examination was conducted from machine copies of the documents in question and the documents that were used for comparison. I assume that they are accurate reproductions of the original documents.

Please allow four weeks in the event that testimony will be required.

Respectfully submitted,
Omni Document Examinations

Robin D. Williams, MFS, MS, D-BFDE
*Diplomate-Board of Forensic Document Examiners*

Defendant's Exhibit L - Page 2

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:        0        LOAN ID:    11380185

NOTE DATE:    1/26/2007      LOAN AMOUNT:      $449,500.00

BORROWER NAME:  MARCIA SWIFT & CHRIS SWIFT

PROPERTY ADDRESS:   601 SENNETT ST, BATAVIA, IL  60510

PAY TO THE ORDER OF
LNV Corporation

WITHOUT RECOURSE
Residential Funding Company, LLC

By:

Name: Jason J. Vacchio
Title: Post Funding Manager
Residential Funding Company, LLC

Defendant's Exhibit L - Page 3

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:      0-         LOAN ID:    10898238

NOTE DATE:    11/14/2006      LOAN AMOUNT:      $475,000.00

BORROWER NAME: TULI M WOHL

PROPERTY ADDRESS:    1321 E LUKE AVE, PHOENIX, AZ 85014

PAY TO THE ORDER OF

LNV Corporation

WITHOUT RECOURSE

Residential Funding Company, LLC

By:

Name: Jason J. Vecchio

Title: Post Funding Manager

Residential Funding Company, LLC

Defendant's Exhibit L - Page 4

08/24/2014  03:31    8127093149              GREENWICH ANTIQUES              PAGE  01/01

## ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:        0        LOAN ID:    8754006

NOTE DATE:    9/30/2003      LOAN AMOUNT:        $87,550.00

BORROWER NAME:  RHONDA L HARDWICK

PROPERTY ADDRESS:   201 CHURCH ST, LOOGOOTEE, IN  47553

PAY TO THE ORDER OF

LNV Corporation

WITHOUT RECOURSE
Residential Funding Company, LLC

By:

Name:  Jason J. Vecchio
Title:  Post Funding Manager
Residential Funding Company, LLC

Defendant's Exhibit L - Page 5

| ALLONGE TO PROMISSORY NOTE |
| --- |

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:        0          LOAN ID:    8263393

NOTE DATE:    11/7/2002        LOAN AMOUNT:        $243,100.00

BORROWER NAME:   CATHERINE GEBHARDT

PROPERTY ADDRESS:   3753 THOMAS CROSS ROAD, SEVIERVILLE, TN 37876

PAY TO THE ORDER OF

LNV Corporation

WITHOUT RECOURSE

Residential Funding Company, LLC

By: _____

Name: Jason J. Vecchio

Title: Post Funding Manager

Residential Funding Company, LLC

Defendant's Exhibit L - Page 6

## 1: Q-1 Allonge Signature of Jason J. Vecchio Compared to the Signature(s) of Jason J. Vecchio on the Allonges of 3 Separate Parties

Questioned Document -
Allonge for Chris Swift and Marcia Swift

Comparison Allonges from 3 other Parties

Defendant's Exhibit L - Page 7



WITHOUT RECOURSE
Residential Funding Company, LLC

By:

Name: Jason J. Vecchio
Title: Post Funding Manager

Q-1
Swift Allonge



WITHOUT RECOURSE
Residential Funding Company, LLC

By:

Name: Jason J. Vecchio
Title: Post Funding Manager

A-1
Wohl Allonge



WITHOUT RECOURSE
Residential Funding Company, LLC

By:

Name: Jason J. Vecchio
Title: Post Funding Manager

A-2
Hardwick Allonge



WITHOUT RECOURSE
Residential Funding Company, LLC

By:

Name: Jason J. Vecchio
Title: Post Funding Manager

A-3
Gebhardt Allonge

2: Q-1 Allonge Signature of Jason J. Vecchio Compared to the Signature(s) of Jason J. Vecchio
on the Allonges of 3 Separate Parties - COLORIZED

Q-1 Swift Allonge = GREEN

A-1 Wohl Allonge = ORANGE
A-2 Hardwick Allonge = BLUE
A-3 Gebhardt Allonge = RED

Defendant's Exhibit L - Page 8

By:

Name: Jason J. Vecchio
Title: Post Funding Manager

Q-1 Swift Allonge = GREEN

By:

Name: Jason J. Vecchio
Title: Post Funding Manager

A-1 Wohl Allonge = ORANGE

By:

Name: Jason J. Vecchio
Title: Post Funding Manager

A-2 Hardwick Allonge = BLUE

By:

Name: Jason J. Vecchio
Title: Post Funding Manager

A-3 Gebhardt Allonge = RED

## 3: Q-1 Allonge Overlaid by the Allonges of 3 Separate Parties - with Slight Separations for Illustrative Purposes

Q-1 Swift Allonge = GREEN

A-1 Wohl Allonge = ORANGE
A-2 Hardwick Allonge = BLUE
A-3 Gebhardt Allonge = RED

Defendant's Exhibit L - Page 9



## 4: Q-1 Allonge Overlaid by the Allonges of 3 Separate Parties - ALIGNED

Q-1 Swift Allonge = GREEN

A-1 Wohl Allonge = ORANGE
A-2 Hardwick Allonge = BLUE
A-3 Gebhardt Allonge = RED

Defendant's Exhibit L - Page 10



By:

Name: Jason J. Vecilla
Title: Post Funding Manager

## CURRICULUM VITAE

### Robin D. Williams B.S.A.J., M.F.S., M.S., D-BFDE
### Board Certified Forensic Document Examiner
### Omni Document Examinations

1253 Scheuring Road, Suite A, De Pere, WI  54115. (920) 339-9500
1001 W. Glen Oaks Lane, Suite 219, Mequon, WI  53092. (262) 241-9100
205 W. Wacker Drive, Suite 922, Chicago, IL  60606. (312) 346-9300

## EDUCATION

*Formal Education*

- Police Science (two years), Fox Valley Technical College, Appleton, WI. 1972-74.
- Bachelor of Science degree in Administration of Justice. The American University, Washington, D.C.1980.
- Master of Forensic Science degree, George Washington University, Washington, D.C., 1981.
- Graduate Studies in Education, University of Wisconsin-Stout, Menomonie, WI, 1985-87.
- Master of Science Degree, University of Wisconsin-Whitewater, 1996.
- Ph.D. Candidate in Safety Engineering, Kennedy-Western University, Boise, Idaho.

*Certification and Testing*

Certified by testing, by the Board of Forensic Document Examiners, (BFDE), 2008. The BFDE is accredited by the Forensic Specialties Accreditation Board (FSAB).

Recertified by the Board of Forensic Document Examiners 2013.

*Training and Continuing Education*

- Mentored in the field of Document Examination under the direction of Document Examiners Clarence Bohn, (Retired FBI Crime Laboratory and Professor at George Washington University, Washington, D.C.) and Viola Stevens, (Retired Wisconsin State Crime Laboratory.
- Special Studies in Forensic Photography, Armed Forces Institute of Pathology, Walter Reed Army Medical Center, Washington, D.C. (Msgt Brady and Dr. Thompson).
- College of Microscopy, Fundamentals of Microscopy Workshop for Forensic Document Examiners, McCrone College of Microscopy, Westmont, Il., October 24, 2006.

1

Defendant's Exhibit L - Page 11

- Attended Association of Forensic Document Examiners 2006 continuing education symposium, October 25-28, 2006, McCrone College & Laboratory, Chicago (Westmont), Illinois.

- Rochester Institute of Technology in conjunction with the United States Secret Service Laboratory, Rochester, NY, Symposium and conference for Forensic Document Examiners, June 12-15, 2007. Topics included traditional, digital and contemporary printing processes as well as forensic identification of printing processes.

- Leadership Seminar Marian College (attended a Seminar by the Pointman Leadership Institute entitled "Principle Based Leadership, The Importance of Ethics", June 6,7, 8, 2001 held at Marian College, Fond du Lac, Wisconsin).

- Attended Association of Forensic Document Examiners 2007 continuing education symposium, September 26-29, 2007, Tucson, Arizona.

- Attended Association of Forensic Document Examiners 2008 continuing education symposium, October 17-20, 2008, Albuquerque, New Mexico.

- Attended Association of Forensic Document Examiners 2009 continuing education symposium, November 5-8, 2009, Milwaukee, Wisconsin.

- Attended Association of Forensic Document Examiners 2010 continuing education symposium, October 14-17, 2010, Phoenix, Arizona.

- Attended Association of Forensic Document Examiners 2011 continuing education symposium, November 3-8, 2011, Louisville, Kentucky.

- Attended Association of Forensic Document Examiners 2012 continuing education symposium, October 18-21, 2012, Phoenix, Arizona.

- Attended Association of Forensic Document Examiners 2013 continuing education symposium, October 10-13, 2013, Chicago (Westmont), Illinois.

- Attended "Printing Process Identification for Forensic Document Examiners" October 14, 2013, Hooke College of Applied Sciences, McCrone Institute, Westmont, Illinois.

- Attended AAFS Annual Meetings 1989, La Vegas, NV; 1990, Cincinnati, OH; 2008, Washington, D.C., and attended Workshop # 21, "The Impact of Confirmational Bias and Context Effect on Report Writing in the Forensic Science Laboratory"; Workshop # 5, " The Applications of Color Analysis and Light Theory in the Forensic Examination of Documents"; 2009 Denver, Colorado, and attended Workshop #7 " Security Documents Before and After the Crime: REAL ID, Physical and Electronic Security Features, Developments in Commercial Printing Technology, and an Introduction to Counterfeit Link Analysis"; Workshop # 18 "Standards in the Forensic Sciences: Their History, Development, and Impact on Laboratory Practice; 2010 Seattle, Washington, and attended Workshop #7, "Signature Examination: Translating Basic Science to Practice"; 2011 Chicago, Illinois, and attended Workshop #6 "Fracture Match of Papers, Tapes, and Miscellaneous Materials for Document Examiners"; Workshop #13 Indentation

2

Defendant's Exhibit L - Page 12

Sequencing Workshop"; 2012 Atlanta, Georgia, and attended Workshop #20 "Flawed Forensics: Recognizing and Challenging Misleading Forensic Evidence and Disingenuous Expert Testimony". 2013 Washington, D.C., and attended Workshop #4, "Signature Examination of Healthy and Impaired Writers", 2014 Seattle, Washington, and attended Workshop #10 Bias in Forensics – "Examining the Sources and Impacts of Bias on Perceptual and Cognitive Judgments Made by Forensic Experts, Strategies for Excluding or Impeaching Expert Testimony Tainted by Bias, and Proposed Solutions for Minimizing or Inhibiting Biasing Influences"; Workshop #22, "Questioned Document Examination and Enhancement of Evidence Using Various Light and Filter Techniques".

- Attended ASTM E30-02 annual subcommittee meetings on Forensic Document Examination: 2008, 2009, 2010, 2011, 2012

- Attended ASTM E30 main committee meetings on Forensic Science: 2013, 2014

- Ongoing conferences and review of numerous books, journals, and publications in the above areas.

### *Publications*

- Contributing writer/editor Book Review/Commentary, "Scientific Examination of Questioned Documents", Second Edition, by Kelly, J.S., Lindblom, B.S. (Editors) 2006, CRC Press, Boca Raton, Fl., Published in the Journal of Forensic Document Examination Volume 21, 2011.
- Article published in the "TLMI Illuminator" publication (Tag and label Manufacturers Institute).

### *Presentations*

- Presentation of a case of Memorabilia Fraud involving Green Bay Packers Quarterback Brett Favre, at the Annual Symposium of the Association of Forensic Document Examiners, Tucson, Arizona, 2007.

- Presentation of a Workshop on Procedures for Obtaining Exemplars, at the Annual Symposium of the Association of Forensic Document Examiners, Milwaukee, Wisconsin, 2009

- Presented a Workshop Part I, on request writings related to an admitted forger involving a case between the Defendant and The University of Wisconsin, Madison, WI, at the Annual Symposium of the Association of Forensic Document Examiners, Louisville, Kentucky, 2011.

3

Defendant's Exhibit L - Page 13

- Presented a Workshop Part II, on request writings related to an admitted forger involving a case between the Defendant and The University of Wisconsin, Madison WI, at the Annual Symposium of the Association of Forensic Document Examiners, Phoenix, Arizona, 2012

### *Professional Experience*

- Over thirty years of professional experience as a forensic document examiner.
- Teaching and Research History, Undergraduate Level at Northeast Wisconsin Technical College, Blackhawk Technical College, Marian College and Concordia University.
- Qualified to teach the following courses:

| | |
|---|---|
| Criminalistics | Law of Arrest, Search and Seizure |
| Constitutional Law | Criminal Law |
| Courts and Jurisdiction | Administrative Law |
| History and Philosophy of Law Enforcement | Criminal Procedure |
| | Police and Technical Photography |
| Interviews, Interrogations and Confessions | Rules of Evidence |
| Criminal Investigation | Police Administration |

- Certified Law Enforcement Instructor by Wisconsin State Department of Justice/Training and Standards Bureau, 1984-2007.

| | |
|---|---|
| Constitutional Law | Interviewing & Interrogations |
| Community Resources | Investigations |
| Criminal Code | Juvenile Code |
| Criminal Justice System | Physical Evidence |
| Criminal Procedure | Professional Orientation |
| Ethics | Testifying in Court |
| Evidence Collection | Administrative Law and Procedure |

- Full Time Faculty Member Northeast Wisconsin Technical College, Police Science Program.
- Adjunct Faculty Member Blackhawk Technical College, Law Enforcement Officer's in-service program.

4

Defendant's Exhibit L - Page 14

- Part Time Faculty Member, Marian University, Administration of Justice Program, Fond Du Lac, Wisconsin.
- Adjunct Professor, Concordia University, Criminal Justice Program, Appleton and Green Bay, WI.
- Lecturer in Legal Investigations and Demonstrative Evidence, Carthage College.
- Developed Chemical Reagents for Ink Testing of Photocopies.
- Court-Qualified as an expert in the fields of document examination and criminalistics.

### *Community Service*

- Police and Fire Commissioner for the Village of North Fond Du Lac, Wisconsin, 1997 to present.
- Offices held as a Police and Fire Commissioner: Secretary 1998-1999, Vice President 1999 to 2013 presently President 2013. Also served as a panel member - Employment Relations for Employment Evaluation of Police Officers and Fire Fighters.
- Engaged in leadership roles in community and church activities.
- Past President, Vice President and Board of Directors Member of Bay Area Youth Development Services Inc. (Non-Profit), 1990 - 1995.
- Appointed to Marian University School of Criminal Justice Dean's Advisory Board 2008-present.

### *Memberships*

- Association of Forensic Document Examiners (AFDE)
- American Society of Testing and Materials (ASTM) Committee E30
- The Board of Forensic Document Examiners (BFDE), Currently Treasurer of the Board

5

Defendant's Exhibit L - Page 15

# DEFENDANT'S EXHIBIT M

Email dated January 6, 2015 from attorney Christopher Wright of Watt, Tieder, Hoffar & Fitzgerald, L.L.P made an appearance only for MGC in case # 3:12-cv-1681 yet in the email he refers to his client as being LNV…..

Google | christopher wright | +Dee

Gmail | Move to Inbox | More | 2 of 48

COMPOSE

Inbox (2,669)
Starred
Important
Sent Mail
Drafts (123)
Circles
Ancestry.com (60)
Borders
BVNT Resolution...
cpanel new host ...
Ebay Mail (103)
Economic Faimes...
eFax (75)
Footnote.com

Sign into chat

**Christopher Wright** Jan 6

to me, John, Emilie

Dear Ms. Subramaniam:

In response to to your email, and to follow up on my prior email that I could not agree to your proposed stipulate, LNV Corporation ("LNV") will only agree to an extension of your time to file a reply to LNV's opposition to your Rule 60 motion up through and including January 20, 2015. But, as previously indicated LNV will not oppose your motion for an extension of time to file a reply accordingly. LNV and I as counsel cannot permissibly e-file any document for you, however. Please note that LNV agrees to this extension without reference to, or review of, your medical records, which are unnecessary, and LNV is amenable to granting the extension regardless. Please kindly do not send LNV or I as counsel any unsolicited medical records in the future.

Thank you and best regards,

Chris

Sent from my iPhone



# DEFENDANT'S EXHIBIT N

**Heptig Law Group, Ltd.**
15050 E. Beltwood Pkwy
Addison, Texas 75001


**J. Pat Heptig**

pheptig@heptiglaw.com

NOVEMBER 14, 2014

_Via Federal Express:771862877634_

Denise Subramanian
13865 SW Walker Rd.
Beaverton, OR 97005

      Re:    False and Defamatory Statements Regarding Beal Bank

Dear Ms. Subramanian:

      My firm represents Beal Bank. It has come to our attention that you have posted content on Scribed.com that contains FALSE and DEFAMATORY statements against Beal Bank and its affiliates, officers, and employees (collectively, the "Beal Entities").

      In particular, the content displayed at http://www.scribd.com/doc/238783107/Greg-Abbott-Works-for-Beal includes a graphic containing false and defamatory statements against the Beal Entities. In particular, the graphic contains two pictures of Beal Bank's CEO, one of which is a caricature (labeled as "Bully Beal") shaking a fist with Mr. Beal's head superimposed on the character. The graphic also includes statements that "Does Greg Abbott Work For by Andy Beal?" and "Beal Beats up on Grandmas and Single Moms and Greg Abbott lets Him!" The graphic goes on to state that "Beal wants to make an Example of Disabled Grandma JoAnn Brietling who cares for her disabled son and retired police officer husband To Intimidate Other Victims!" These images and statements are false, abusive, and defamatory against the Beal Entities. The false and defamatory statements and graphic have harmed the reputation and goodwill of the Beal Entities, and may interfere with and damage their relationships with the business community and other companies.

      It has also come to our attention that you have posted a comment at https://www.hisadvocates.org/blog/help-protect-your-constitutional-right-to-due-process, in which you state "it is certain [a judge] accepted a bribe from Beal." This statement is simply false and has no basis in fact whatsoever. This statement is merely a maliciously false statement made with the specific intent to harm the reputations of the Beal Entities. As a result, you are fully liable to the Beal Entities under common law and state laws for libel and defamation.

      **We demand that you immediately:**

**Heptig Law Group, Ltd.**

November 14, 2014
Page 2

- **TAKEDOWN the defamatory graphic posted at
  http://www.scribd.com/doc/238783107/Greg-Abbott-Works-for-Beal;**

- **CEASE and DESIST from any distribution and publication of the graphic
  posted at http://www.scribd.com/doc/238783107/Greg-Abbott-Works-for-Beal;**

- **TAKEDOWN the defamatory statement at
  https://www.hisadvocates.org/blog/help-protect-your-constitutional-right-to-due-
  process; and**

- **CEASE and DESIST from any distribution or publication of any and all false
  and defamatory statements about the Beal Entities.**

We request that, within five (5) days from the date of this letter, you provide written
confirmation that you have taken the foregoing corrective actions to avoid further harm to the
Beal Entities. My clients take this matter very seriously and demand immediate corrective action
by you to address this situation. If you fail to take the necessary corrective actions here, we will
not hesitate to take all necessary action to protect the Beal Entities, and to recover all available
damages and remedies, to the maximum extent allowed under the law.

Very truly yours,

J. Pat Heptig

**Heptig Law Group, Ltd.**
15050 E. Beltwood Pkwy
Addison, Texas 75001
(214) 451-2154

**J. Pat Heptig**

pheptig@heptiglaw.com

DECEMBER 10, 2014

*Via Federal Express: 772168292107*

H. Anthony Hervol
Law Office of H. Anthony Hervol
4414 Centerview Dr, Suite 200
San Antonio, TX 78228

Re:     False and Defamatory Statements by Stuart Hamm in Scribd.com posting

Dear Mr. Hervol:

My firm represents Beal Bank. I understand that you represent Stuart Hamm in connection with his real estate foreclosure dispute with LNV corporation, one of Beal Bank's affiliated companies. It has come to our attention that Mr. Hamm has posted comments on the Scribd.com website (www.scribd.com) that contain numerous scurrilous and malicious FALSE and DEFAMATORY statements against Beal Bank and its affiliates, officers, and employees (collectively, the "Beal Entities").[1]

In particular, Mr. Hamm's posting contains several materially false, libelous, and defamatory statements directed against the Beal Entities. These statements include, but are not limited to, statements that the Beal Entities:

- commit mortgage fraud and money laundering, among other things
- commit "full scale fraud upon thousands of homeowners"
- commit "fraudulent foreclosure"
- "steal[] homes in record numbers" and commit "unethical business practices"
- "lie" about its activities

Each of these statements is false and defamatory. It is also very clear that all of these statements were made by Mr. Hamm with actual malice towards my clients, and made with the specific intent to harm them. The statements are outright falsehoods or are made with reckless disregard as to whether they are false or not. Quite simply, the false accusations are made out of spite by Mr. Hamm to attack my clients in the wake of his loss in a court of law. Moreover, Mr. Hamm's attempt to couch such defamation as his "personal opinion" does not somehow

---

[1] *See* https://www.scribd.com/doc/247945508/Why-I-Think-Andy-Beal-is-a-Bully-by-Stuart-Hamm

1

**Heptig Law Group, Ltd.**

December 10, 2014
Page 2

immunize the false accusations. The accusations are false statements of fact, not opinion. As a result, Mr. Hamm's defamatory statements are not protected under the First Amendment. In all events, Mr. Hamm is now personally liable to the Beal Entities for under common law and state laws for libel and defamation for each and every defamatory statement, regardless of whether he couches it as "opinion" or not.

**We demand that Mr. Hamm immediately:**

**1. TAKEDOWN the false and defamatory comments on the www.scribd.com website; and**

**2. CEASE and DESIST FROM any distribution or publication of any and all false and defamatory statements about the Beal Entities.**

My clients take this matter very seriously and demand immediate corrective action by Mr. Hamm to address this situation. If he fails to take the necessary corrective actions here, we will not hesitate to take all necessary action to protect the Beal Entities, and to recover all available damages and remedies, to the maximum extent allowed under the law.

In case you no longer represent Mr. Hamm, please let me know the name of his new counsel so that I can direct this matter to their attention. I appreciate your cooperation in this regard. Please contact me if you have any questions regarding this matter. We look forward to your prompt response.

Very truly yours,

J. Pat Heptig

**Heptig Law Group, Ltd.**
15050 E. Beltwood Pkwy
Addison, Texas 75001

**J. Pat Heptig**

pheptig@heptiglaw.com

DECEMBER 9, 2014

*Via Federal Express: 772156542563*

Denise Subramanian
13865 SW Walker Rd.
Beaverton, OR 97005

Re:     False and Defamatory Statements Regarding Beal Bank

Dear Ms. Subramanian:

It has come to our attention that you have AGAIN posted content on Scribd.com that contains numerous scurrilous and malicious FALSE and DEFAMATORY statements against Beal Bank and its affiliates, officers, and employees (collectively, the "Beal Entities").

In particular, you have posted various "letters" by yourself and others (*i.e.*, Catherine Gebhardt, Stuart Hamm, and JoAnn Breitling) that contain materially false, libelous, and defamatory statements directed against the Beal Entities. These statements include, but are not limited to, statements that the Beal Entities:

- "fabricated mortgage related documents with forgeries, false signatures and false statements"
- "admit" to "fabricating forged and falsified mortgage records"
- "admittedly using forged and fabricated mortgage documents"
- "put you under surveillance and terrorized you" and put a tracking device on your car
- hired a private investigator to "illegally access DMV records" and break into your car and steal your computer
- "have [you] followed and killed"

Each of these statements is false and defamatory. As an example, you assert that my clients admitted to fabricating forged and falsified mortgage documents. This is blatantly false. My client never committed such acts. Nor did my clients somehow "admit" to committing such acts. The statement that you apparently rely upon as support for your false accusation is actually a statement made *by an opposing party* in a brief from an old case involving my clients. Thus, it was not a statement or admission by my clients, as you purport it to be. The accusation was false then and remains false today.

1

**Heptig Law Group, Ltd.**

December 9, 2014
Page 2


You have also posted several other "letters" by Catherine Gebhardt, Stuart Hamm, and JoAnn Breitling on the scribd.com website that also contain numerous false and defamatory statements, including without limitation that the Beal Entities:

- commit "fraud", "mortgage fraud", and "fraudulent foreclosures"
- "blatantly commit fraud upon the court"
- "fabricate false legal documents"
- "pay attorneys to commit fraud"
- "steal homes from people"
- "buy off attorneys, court officers and state officials"
- "fraudulently fabricated documents"
- commit "money laundering"
- conspire to commit same crimes that Lorraine Brown (at DocX) was convicted of committing
- commit a "massive scheme of enterprise fraud that includes money laundering"

It is very clear all of these statements in your "letter" and the other "letters" you post on the Scribd.com website were made or posted by you with actual malice towards my clients, and made with the specific intent to harm them. The statements are outright falsehoods or are made with reckless disregard as to whether they are false or not.

Quite simply, the false accusations are made out of spite by you to attack my clients. Your attempt to couch such defamation as a "personal opinion" does not somehow immunize the false accusations. The accusations are false statements of fact, not opinion. As a result, your defamatory statements are not protected under the First Amendment. (I suggest you contact a First Amendment lawyer to verify this on your own.) In all events, you are now personally liable to the Beal Entities for under common law and state laws for libel and defamation for each and every defamatory statement, regardless of whether you couch it as "opinion" or not.

**We demand that you immediately:**

- **TAKEDOWN the false and defamatory comments on the <u>www.scribd.com</u> website; and**

- **CEASE and DESIST FROM any distribution or publication of any and all false and defamatory statements about the Beal Entities.**

My clients take this matter very seriously and demand immediate corrective action by you to address this situation. If you fail to take the necessary corrective actions here, we will not hesitate to take all necessary action to protect the Beal Entities, and to recover all available damages and remedies, to the maximum extent allowed under the law.

**Heptig Law Group, Ltd.**

December 9, 2014
Page 3

Very truly yours,

J. Pat Heptig

**Heptig Law Group, Ltd.**
15050 E. Beltwood Pkwy
Addison, Texas 75001

**J. Pat Heptig**

pheptig@heptiglaw.com

DECEMBER 9, 2014

*Via Federal Express: 772156542563*

Denise Subramanian
13865 SW Walker Rd.
Beaverton, OR 97005

Re:     False and Defamatory Statements Regarding Beal Bank

Dear Ms. Subramanian:

It has come to our attention that you have AGAIN posted content on Scribd.com that contains numerous scurrilous and malicious FALSE and DEFAMATORY statements against Beal Bank and its affiliates, officers, and employees (collectively, the "Beal Entities").

In particular, you have posted various "letters" by yourself and others (*i.e.*, Catherine Gebhardt, Stuart Hamm, and JoAnn Breitling) that contain materially false, libelous, and defamatory statements directed against the Beal Entities. These statements include, but are not limited to, statements that the Beal Entities:

- "fabricated mortgage related documents with forgeries, false signatures and false statements"
- "admit" to "fabricating forged and falsified mortgage records"
- "admittedly using forged and fabricated mortgage documents"
- "put you under surveillance and terrorized you" and put a tracking device on your car
- hired a private investigator to "illegally access DMV records" and break into your car and steal your computer
- "have [you] followed and killed"

Each of these statements is false and defamatory. As an example, you assert that my clients admitted to fabricating forged and falsified mortgage documents. This is blatantly false. My client never committed such acts. Nor did my clients somehow "admit" to committing such acts. The statement that you apparently rely upon as support for your false accusation is actually a statement made *by an opposing party* in a brief from an old case involving my clients. Thus, it was not a statement or admission by my clients, as you purport it to be. The accusation was false then and remains false today.

1

**Heptig Law Group, Ltd.**

December 9, 2014
Page 2

You have also posted several other "letters" by Catherine Gebhardt, Stuart Hamm, and JoAnn Breitling on the scribd.com website that also contain numerous false and defamatory statements, including without limitation that the Beal Entities:

- commit "fraud", "mortgage fraud", and "fraudulent foreclosures"
- "blatantly commit fraud upon the court"
- "fabricate false legal documents"
- "pay attorneys to commit fraud"
- "steal homes from people"
- "buy off attorneys, court officers and state officials"
- "fraudulently fabricated documents"
- commit "money laundering"
- conspire to commit same crimes that Lorraine Brown (at DocX) was convicted of committing
- commit a "massive scheme of enterprise fraud that includes money laundering"

It is very clear all of these statements in your "letter" and the other "letters" you post on the Scribd.com website were made or posted by you with actual malice towards my clients, and made with the specific intent to harm them. The statements are outright falsehoods or are made with reckless disregard as to whether they are false or not.

Quite simply, the false accusations are made out of spite by you to attack my clients. Your attempt to couch such defamation as a "personal opinion" does not somehow immunize the false accusations. The accusations are false statements of fact, not opinion. As a result, your defamatory statements are not protected under the First Amendment. (I suggest you contact a First Amendment lawyer to verify this on your own.) In all events, you are now personally liable to the Beal Entities for under common law and state laws for libel and defamation for each and every defamatory statement, regardless of whether you couch it as "opinion" or not.

**We demand that you immediately:**

- **TAKEDOWN the false and defamatory comments on the <u>www.scribd.com</u> website; and**

- **CEASE and DESIST FROM any distribution or publication of any and all false and defamatory statements about the Beal Entities.**

My clients take this matter very seriously and demand immediate corrective action by you to address this situation. If you fail to take the necessary corrective actions here, we will not hesitate to take all necessary action to protect the Beal Entities, and to recover all available damages and remedies, to the maximum extent allowed under the law.

**Heptig Law Group, Ltd.**

December 9, 2014
Page 3

Very truly yours,

J. Pat Heptig

# DEFENDANT'S EXHIBIT O

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND JO ANN BREITLING, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:14-cv-3322-M |
| LNV CORPORATION, ET AL., | § § | |
| Defendants. | § § § | |

---

## PLAINTIFF'S RESPONSE TO LNV AND MGC'S OBJECTION TO REQUEST FOR INJUCTIVE RELIEF
## **** URGENT ****

---

Now come Plaintiffs, pro-se, and respond in opposition to LNV Corporation's ("LNV") and MGC Mortgage, Inc.'s ("MGC") (collectively, the "Beal Defendants") Response in Opposition to Request for Injunctive Relief ("Beal Defendants Opposition to Injunctive Relief"), and respectively show the Court as follows:

The Beal Defendants' seek to evict us from our property located as 1704 Cornwall Lane, Sachse, Texas 75048 ("Plaintiffs' Property") based on their blatant and consistent violations of Texas law, including Texas penal code; and based on a court order they obtained through the use of fraud upon the court and the use of forged and falsified deed assignments and other mortgage related documents; as well as the possible bribing of a judge.

The Beal Defendants claim "this Court is precluded from granting the requested injunctive relief pursuant to the Younger abstention doctrine and the Anti-Injunction Act, both of

which prohibit federal courts from enjoining ongoing state court proceedings." However neither the Younger abstention doctrine nor the Anti-Injunction Act applies to the present case.

## Younger Abstention Doctrine Not Applicable

Younger abstention doctrine applies primarily to criminal cases. The doctrine has been extended to State civil proceedings in aid of and closely related to state criminal statutes, (*Huffman v. Pursue, Ltd., 420 U.S. 592, 43 L.Ed.2d 482, 95 S.Ct. 1200 (1975)*); administrative proceedings initiated by a State agency, (*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 n.2, 91 L. Ed. 2d 512, 106 S. Ct. 2718 (1986)*); or situations where the State has jailed a person for contempt of court. (*Judice v. Vail, 430 U.S. 327 (1977)*). The doctrine applies even where the state does not bring an action until after the person has filed a lawsuit in federal court, provided that the federal court has not yet undergone proceedings of substance on the merits of the federal suit. (*Hicks v. Miranda, 422 U.S. 332, 45 L.Ed.2d 223, 95 S.Ct. 2281 (1975)*)

Accordingly the types of cases where the Younger abstention doctrine typically apply are brought on by a State or a State agency as the plaintiff; or when the State or a State agency is a party to the case. The State of Texas is not a party to the present case.

From *"Our Federalism" - The Younger Abstention Doctrine, by Beth Shankle Anderson, The Florida Bar Journal, November, 2007 Volume 81, No. 10, page 8*:

> The Younger abstention doctrine has its roots in the concept of "Our Federalism" which grew out of the case of *Younger v. Harris, 401 U.S. 37 (1971)*. This doctrine instructs federal courts to refrain from hearing constitutional challenges to state action when federal action would be regarded as an improper intrusion on the state's authority to enforce its laws in its own courts. (*Younger, 401 U.S. at 44*) The abstention doctrine derives from the

longstanding concepts of comity and federalism. The coexistence of state and federal powers embodies a system in which there must be respect by both sovereigns to protect the other's legitimate interests. (*Id. at 44-45*) Justice Black emphasized that while the federal government may be anxious to protect federal rights and interests, it must "always endeavor to do so in ways that will not unduly interfere with the legitimate activities of the [s]tates." (*Id. at 44*) This gave rise to the concept of "Our Federalism" which, the Supreme Court explained, "does not mean blind deference to '[s]tates' [r]ights,' anymore than it means centralization of control over every important issue in our [n]ational [g]overnment and its courts." (*Id. at 39*)

In Younger, Harris, an advocate for communism, was indicted in a California state court and charged with violation of the California Criminal Syndicalism Act. He filed a complaint in the district court seeking an order to enjoin Younger, the district attorney, from prosecuting him any further under the California statute. Harris alleged that the statute violated his right to free speech and press as guaranteed under the First and 14th amendments. (*Id.*) The district court agreed, and held that the California Criminal Syndicalism Act was "void for vagueness and overbredth in violation of the First and [14]th [a]mendments."(*Id. at 40*) The court issued an injunction restraining Younger from further prosecuting Harris under the act. (*Id. at 43*) Younger then appealed the decision to the U.S. Supreme Court.

The U.S. Supreme Court, in an opinion delivered by Justice Black, reversed the decision of the district court and held that the federal relief sought by Harris was barred because of the **"fundamental policy against federal intervention with state criminal proceedings."** The Court noted that Congress, since its early beginnings, had emphasized the importance of deference to state court proceedings, leaving them free from federal court interference, specifically citing the "Anti-Injunction Act." (*Id. at 46*) Justice Black maintained that the primary sources for prohibiting federal intervention in state prosecutions were readily apparent in the "basic doctrine of equity jurisdiction" and comity, both of which comprise the notions found in "Our Federalism."

The Younger abstention doctrine derived from these longstanding concepts of comity and federalism, which are unique to this country. This foundation creates a federal judiciary without blind deference to the states or centralized control over each and every national issue. Younger abstention is distinguished from other abstention doctrines because it is based on considerations of comity and equity jurisprudence. A court sitting in equity should not interfere with the ongoing proceedings of state criminal prosecutions. (*Id. at 55-56*) The Younger court expressly noted that its decision was based on notions of comity and "Our Federalism," not the Anti-Injunction Act. (*Id. at 54 (noting the Court had "no occasion to consider" whether the Anti-Injunction Act applies to the instant case)*)

**Exceptions to the Younger Abstention Doctrine**

Younger implied that a federal court may act to enjoin a state court proceeding when certain extraordinary circumstances exist that involve traditional considerations of equity jurisprudence. (*Id. at 53-54.*) Although these exceptions are implicit in Younger, many scholars argue that these exceptions are virtually nonexistent in their application. (William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 *Harv. L. Rev. 489, 498 (1977)* (concluding that showings of extraordinary circumstances under the

exceptions are "probably impossible to make"); Brian Stagner, *Avoiding Abstention: The
Younger Exceptions*, 29 **Tex. Tech. L. Rev.** 137, 141 (1998) (describing the *Younger*
exceptions as an "escape hatch that rarely opens")) These three principal exceptions
include bad faith and harassment, patently unconstitutional statutes, and the lack of an
adequate state forum. (*Younger*, 401 U.S. at 53-54.)

Perhaps the Beal Defendant's and the growing list of attorneys representing them

misconstrue the principles inherent in the Younger abstention doctrine to be indicative that it

applies to the present case before this court, but they are incorrect in their assessment because in

the present case they are attempting to circumvent the jurisdiction of this Court and the State

District Court by seeking jurisdiction in a Texas Justice of the Peace Court for an eviction when

the present case raises questions pertaining to title and to whether or not the court order granting

a summary judgment to LNV in a foreclosure is void thereby making the sale of our property

void. Our complaint against the Defendants was originally filed in the Texas District Court

where jurisdiction is proper, and then removed to this Honorable Federal District court by the

Beal Defendants. Texas law is clear, the justice court lacks jurisdiction in this case.

The jurisdiction of the State district court pre-empts the justice court on issues of

possession when questions of title and possession are so integrally linked or intertwined that

possession may not be determined without first determining title. In such cases the justice court

is deprived of jurisdiction. *Mitchell v. Armstrong Capital Corp., 911 S.W.2d 169, 171 (Tex. App-

Houston (1st Dist.) 1995,, writ denied); Merit Management Partners I, L.P. v. Noelke, 266 S.W.

3d 637,650 (Tex. App, Austin, 2008, no pet.)* Texas government code provides that a county

court does not have jurisdiction in "a suit for the recovery of land." *Tex. Gov't Code Ann. §

26.043(8) (West 2004);* see also *Doggett v. Nitschke, 498 S.W.2d 339, 339 (Tex. 1973)* ("A

county court does not have jurisdiction to try questions of title to land.")

In the present case injunctive relief is not being sought against the State, but against
private parties bent on violating State law and on depriving us of our property and our liberty to
enjoy our property without due process in violation of our constitutional rights under the Fifth
and Fourteenth Amendments. Injunctive relief is being sought to prevent the Beal Defendants
from illegally and wrongfully evicting us from our property until the State Court can hear our
claims pertaining to title on the merits of the case.

No matter who wins in the JP Court, the case will be appealed. Beal and his Beal
Defendants have nearly infinite financial resources, whereas we do not. Beal has now hired four
different law firms to act in his behalf against us. Litigating self-represented in yet another court
will cause us severe hardship and will result in the epitome of injustice as it would allow the Beal
Defendants to use their ill-gotten wealth to further exploit our vulnerability and to confusticate
the judicial process.

We paid $22 to request a jury trial. It will cost us at least $200 to pay for copies to
distribute to the court and to the jurors. More importantly, it will take hours of time to prepare for
a hearing and a ultimate appeal in the county court; and this preparation will distract us from
preparing for the case at hand; and the added stress of this hardship burden will undoubtedly
affect our health further jeopardizing our ability to defend ourselves without counsel which is
most certainly the intent of the Beal Defendants.

The Younger Court established some exceptions to its broad policy of nonintervention.
When state court criminal prosecutions are brought in bad faith or for the purpose of harassment
(such as repeated prosecutions without any hope of ultimately securing a conviction), federal
equitable principles justify intervention. See id. at 48-49; *Perez v. Ledesma, 401 U.S. 82, 85
(1971).*

The present case does not involve a criminal prosecution, but for the sake of assuming

that the Younger doctrine could in some way apply here, the correlation would be that the Beal

Defendants have brought in bad faith and for the purpose of harassment this new eviction action

in the justice court; when they fully know we have challenged their claim of title in the State

district court, which they then removed to this Honorable federal court; and they fully know that

our complaint specific to title has not yet been adjudicated. Attorneys for the Beal Defendants

know, or should know, that the justice court lacks jurisdiction to evict us; however Beal's money

seems to convince many individuals to do things they know they shouldn't do.

We are terrified that we will receive in the justice court a repeat of what happened in

Defendant Tillery's court. To quote from an article titled "Ethics issues arise in rulings by justice

of the peace" by Lise Olsen published by the Houston Chronicle:

> "Elected Justice of the Peace Hilary Harmon Green repeatedly ordered the eviction of
> tenants and relatives on behalf of a five-time felon even though she and her husband, City
> Controller Ron Green, both had financial and personal ties to the home builder... Their
> contract with Jordon helped the Greens land a $508,000 mortgage, though their house
> had an assessed value in 2008 of only one third that amount, according to Harris County
> tax records.... Ethically, Hilary Green should have recused herself on legal cases
> involving Jordon because of her other associations with him, said Lillian Hardwick, an
> Austin attorney and expert in judicial conduct who co-authored the authoritative
> Handbook of Texas Lawyer and Judicial Ethics....Green's most unusual ruling favored
> Jordon in a family dispute over the ownership of his grandfather's house in
> 2009....Despite disputes over the ownership of the house and the authenticity of
> documents, Green ruled for Dwayne Jordon and later denied his uncle permission to re-
> enter the house to collect his personal property, court records show." (See **Exhibit A** for
> a copy of the full article.)

A State integrity investigation ranked Texas as at high risk for corruption; it received n

overall score of D+. An article published by KERA News titled "Investigation Finds Texas At

Risk For Corruption" states:

"Texas ranks in the bottom half of all states for being vulnerable to corruption. That's one of the findings in the extensive State Integrity Investigation which looks at how accountable state governments are to their citizens....Texas also gets low marks for having no limits on how much individuals, lobbyists or political action committees can contribute to campaigns...That's been a source for what you might even call corruption in the state over the years...Texas is by far the largest and wealthiest state that moves hundreds of millions of dollars of political money through the system with no limits. It really skews who is active in Texas politics...." (See **Exhibit B** for the full article.)

A source quoted in another article included in Exhibit B titled "Texas gets near-failing

grade for corruption risk" by Emily Wilkins says:

"We were closer to flunking the survey than we might think, noting that the judicial accountability score might have been lower than the C grade Texas received [for judicial accountability] if it was taken into account that Texas judges are allowed to take campaign contributions from lawyers and other special interest groups....We are one of the few states that have no limits on what a lobbyist can give, what a PAC or individual can give – that really pulls down our score and results in Texas being run like it's an oligarchy..."

Individuals with excessive wealth like D. Andrew Beal are used to getting their own way and having the privileges of an oligarch who imposes his will onto others who are more vulnerable that himself; and without regard for the law. We have been outspoken about his Beal Defendants' corrupt business practices since 2008 and he is retaliating against us for this because government authorities and the media are finally investigating. He is driven to take our home from us regardless of whether or not he has a legal right to do so and to cause us as much pain as possible to set an example and make other victims fearful of speaking out about his activities.

Beal and his Beal Defendants removed our case to federal court in hopes of getting a "more favorable" judge (as per Document 52, Exhibit A, starting on page 17, and Exhibit B, starting on page 37) when this didn't not get the results he wanted he has shopped for yet another judge who might be more easily deceived or persuaded (perhaps with a bribe) to give him what

he wants. This is tyranny; and as the guardian of our great Constitution this court has an obligation to put a stop to it.

One of the exceptions established by the Younger Court to its broad policy of nonintervention is patently unconstitutional statutes, (*Younger*, 401 U.S. at 53-54.) The present case has nothing to do with unconstitutional statutes; however we have been denied our constitutional rights under the Fifth and Fourteenth Amendments to due process and equal protection of the law. These deprivations have not occurred at the hands of the State but at the hands of the Defendants.

Another exception established by the Younger Court is the lack of an adequate state forum. (*Younger*, 401 U.S. at 53-54.) Although in the present case a lack of an adequate state forum does not exist, there does exist an intentional interference by the Beal Defendants to thwart and convolute that state forum so as to prevent justice and abuse the judicial process.

Younger Court acknowledged that federal equitable principles justify intervention. (See id. at 48-49; *Perez v. Ledesma, 401 U.S. 82, 85 (1971)*). Equitable principles justify intervention in the present case.

As for the Younger Court's exception in the case where actions are brought in bad faith or for the purpose of harassment: Factors for determining whether prosecution was brought in bad faith or to harass include: (1) whether it was frivolous or undertaken with no objective hope of success; (2) whether it was motivated by the defendant's suspect class, or in retaliation for the exercise of constitutional rights; and (3) whether it was conducted in a manner to harass or to constitute an abuse of prosecutorial discretion, typically through unjustified and **oppressive use**

**of multiple prosecutions**). See *Kern v. Clark, 331 F.3d 9, 12-13 (2d Cir. 2003)* (district court committed error in resolving factual disputes regarding bad faith exception to Younger without conducting an evidentiary hearing). [Note so far we have had no evidentiary hearing in the present case. And although the actions in the present case are not prosecutions, the Beal Defendants are bringing multiple actions in different courts, while the present case specific to whether they have title is still pending.]

The three principal exceptions to the Younger abstention doctrine include bad faith and harassment, patently unconstitutional statutes, and the lack of an adequate state forum. (*Younger*, 401 U.S. at 53-54.) The first of these exceptions, bad faith and harassment, would most certainly apply to the present case before this court.

The Beal Defendants have consistently acted in bad faith with us, with the State court, with this federal district court and now with the county justice court. They are harassing us with an onslaught of simultaneous legal actions in multiple courts. Additionally the Beal Defendants have demonstrated a similar pattern of abuse of judicial process, bad faith and harassment in numerous other cases against other homeowner victims.

The Beal Defendants and their attorneys and agents willfully violated the automatic stay provided by Texas Rules of Civil Procedure 736.11 by selling our property to Defendant LNV on September 2, 2104. The Beal Defendants were properly informed of the automatic stay effective under Texas Rules of Civil Procedure 736.11 (See **Exhibit C** – Fax of Notice of Automatic Stay of Sale of Property sent to multiple Beal Defendant Employees and agents.) The illegal sale of our property is captured on video.

Additionally the Beal Defendants foreclosed on our property using robosigned, forged and

otherwise falsified mortgage and foreclosure related documents; and they have done so, or are

attempting to do so, in numerous other cases across the country and in Texas.

As per Texas Attorney General Greg Abbott if affidavits and other documents, such as

deeds of trust and appointments of substitute trustees were prepared by employees referred to as

"robosigners" who signed thousands of documents a month without reading them; who signed

affidavits which falsely claim personal knowledge of facts and which falsely claim the affiant

reviewed the attached documents; who notarized documents prior to the signer signing or when the

signer was not present before the notary; and who filed affidavits with records attached that do not

correctly reflect loan payments, charges and advances; and such documents:

> "were utilized in establishing MGC Mortgage Inc.'s authority to conduct the sale or obtain
> a court order for a sale, such use would have been in violation of <u>Section 17.46(a)</u> of the
> <u>Texas Deceptive Trade Practices Act</u>; Section 392.304, Texas Debt Collection Practices
> Act; <u>Section 37.02, Texas Penal Code</u>; Section 12.001, Texas Property Code; Section
> 406.009, Texas Government Code; Texas Constitution Article 16, **Section 50; and/or Rule
> 736(1), Texas Rules of Civil Procedure**, and the document and **therefore the foreclosure
> sale would have been invalid**." (See **Exhibit D** – Letter from Texas Attorney General Greg
> Abbott mailed to Beal's MGC.)

The State's interests in upholding its own laws are not thwarted by this Honorable federal

court intervening at this point and granting us injunctive relief to prevent irreparable harm until

the present case can be heard by the State court on its merits.

## ANTI-INJUNCTION ACT NOT APPLICABLE

The federal Anti-Injunction Act, (28 U.S.C. Sec. 2283) states:

> "A court of the United States may not grant an injunction to stay proceedings in a State
> court except as expressly authorized by Act of Congress, or where necessary in aid of its
> jurisdiction, or to protect or effectuate its judgments."

In the present case we are not asking this court to stay proceedings in a State court, but to restrict the Beal Defendants from seeking jurisdiction for eviction in a county court when Texas statues state that jurisdiction rests with the State district court, and not the county justice court for matters specific to title. The Honorable Magistrate Judge David L. Horan has already recommended that the case be remanded to State court. We are requesting injunctive relief to prevent the Beal Defendants from by-passing the State district court and adjudication on the merits of our case.

Preliminary injunctions decisions are based on a four-factor test: 1) likelihood of success on the merits; 2) potential irreparable harm; and two optional factors 3) balance of the equities and 4) public interest. A preliminary injunction (PI) will only issue when the first two elements are demonstrated by the party requesting PI relief and the combined result of all four elements/factors weighs in favor of a PI.

## LIKELIHOOD OF PREVAILING ON THE MERITS

The Beal Defendants violated Texas Rules of Civil Procedure to obtain a court order to sell our home.

### Violation 1

Rule 736 requires the party seeking to foreclose an equity lien to file a **verified** application in the district court of the county where all or part of the property is located. The rule also includes a list of items which **shall** be included in the application. The lender must serve the application **and** notice on each party who is "obligated to pay the debt" by certified **and** first class mail.

The Beal Defendants did not file the required verified application that included the list of items required in the application in the district court of the county where our property is located as required by Rule 736.

### Violation 2

We never received a valid default notice. The only one sent was in Jan 2013, and Scott Hayes, counsel for MGC in case # DC-1107087 in the 116th Dallas district court told my attorney at the time Patricia McCartney that this was sent in error.

No notice of intent to accelerate was ever sent; and they generated the notice of acceleration the same day they filed their "in Rem" Foreclosure Complaint in the 134th Dallas district court and we didn't receive it until at least a week later.

Before foreclosing a lien against realestate, the debt secured by the real estate must have matured. With consumer loans, this usually occurs through acceleration of the loan after a default in payment. Failing to properly accelerate the debt is probably the most common foreclosure defeat and serve to void a foreclosure sale.

The Texas Supreme Court requires the mortgagee to give clear and unequivocal notice of its intent to accelerate to the extent that the "mortgagee must bring home to the [mortgager] that failure to cure will result in acceleration of the note and foreclosure under the power of the sale." (*Ogden v. Gibraltar Sav. Ass'n.,* 640 S.W.2nd 232, 233 (Tex. 1982))

**Violation 3**

In addition to the FNMA requirement that the borrower be provided 30 days right-to-cure a

default, the Fair Debt Collection Practices Act [15 U.S.C. 1692 – 16920] ("FDCPA") required

that a debt collector provide the borrower 30 days in which to request verification of the debt.

We in fact did write to the debt collector, Defendant Codilis & Stawiarski ("C&S") and

requested validation of the debt. No validation of the debt was ever done and Defendant C&S

failed to respond as required by the FDCPA.

**Violation 4**

Texas Rule 736.1 states:

"(a) Where Filed. An application for an expedited order allowing the foreclosure of a lien
listed in Rule 735 to proceed must be filed in a county where all or part of the real property
encumbered by the loan agreement, contract, or lien sought to be foreclosed is located or in
a probate court with jurisdiction over proceedings involving the property.

(b) Style. An application must be styled "In re: Order for Foreclosure Concerning [state:
property's mailing address] under Tex. R. Civ. P. 736.

(c) When Filed. An application may not be filed until the opportunity to cure has expired
under applicable law and the loan agreement, contract, or lien sought to be foreclosed.

(d) Contents. The application must:

(1) Identify by name and last known address each of the following parties:

(i) for a home equity loan, reverse mortgage, or home equity line of credit, each
person obligated to pay the loan agreement, contract, or lien sought to be
foreclosed and each mortgagor, if any, of the loan agreement, contract, or lien
sought to be foreclosed;

(ii) for a tax lien transfer or property tax loan, each person obligated to pay the
loan agreement, contract, or lien sought to be foreclosed, each mortgagor, if any,
of the loan agreement, contract, or lien sought to be foreclosed, each owner of the
property, and the holder of any recorded preexisting first lien secured by the
property;

(iii) for a property owners' association assessment, each person obligated to pay the
loan agreement, contract, or lien sought to be foreclosed who has a current
ownership interest in the property.

(2) Identify the property encumbered by the loan agreement, contract, or lien sought to be foreclosed by its commonly known street address and legal description.

(3) Describe or state:

(A) the type of lien listed in Rule 735 sought to be foreclosed and its constitutional or statutory reference;

(B) the authority of the party seeking foreclosure, whether as the servicer, beneficiary, lender, investor, property owners' association, or other person with authority to prosecute the foreclosure;

(C) each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed;

(D) each mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed who is not a maker or assumer of the underlying debt;

(E) as of a date that is not more than sixty days prior to the date the application is filed:

(i) if the default is monetary, the number of unpaid scheduled payments,

(ii) if the default is monetary, the amount required to cure the default,

(iii) if the default is non–monetary, the facts creating the default, and

(iv) if applicable, the total amount required to pay off the loan agreement, contract, or lien;

(F) that the requisite notice or notices to cure the default has or have been mailed to each person as required under applicable law and the loan agreement, contract, or lien sought to be foreclosed and that the opportunity to cure has expired; and

(G) that before the application was filed, any other action required under applicable law and the loan agreement, contract, or lien sought to be foreclosed was performed.

(4) For a tax lien transfer or property tax loan, state all allegations required to be contained in the application in accordance with section 32.06(c–1)(1) of the Tax Code.

(5) Conspicuously state:

(A) that legal action is not being sought against the occupant of the property unless the occupant is also named as a respondent in the application; and

(B) that if the petitioner obtains a court order, the petitioner will proceed With a foreclosure of the property in accordance with applicable law and the terms of the loan agreement, contract, or lien sought to be foreclosed.

(6) Include an affidavit of material facts in accordance with Rule 166a(f) signed by the petitioner or the servicer describing the basis for foreclosure and, depending on the type of lien sought to be foreclosed, attach a legible copy of:

(A) the note, original recorded lien, or pertinent part of a property owners' association declaration or dedicatory instrument establishing the lien, and current assignment of the lien, if assigned;

> (B) each notice required to be mailed to any person under applicable law and the
> loan agreement, contract, or lien sought to be foreclosed before the application was
> filed and proof of mailing of each notice; and
>
> (C) for a tax lien transfer or property tax loan:
>
>> (i) the property owner's sworn document required under section 32.06(a–1)
>> of the Tax Code; and
>>
>> (ii) the taxing authority's certified statement attesting to the transfer of the
>> lien, required under section 32.06(b) of the Tax Code."

No such application was ever filed by the Beal Defendants. None of the items that MUST be

included in the application under Texas Rule 736 for a non-judicial foreclosure were included in

any pleading that might be construed as an application under Texas Rule 736.1.

## Violation 5

In the Joint Status report filed on October 21, 2014 [Document 32, page 8] counsel for the Beal

Defendants state: "On September 2, 2014, the Property was sold to LNV at a **non-judicial**

foreclosure sale for $149,400.54."

Further evidence that the Beal Defendants moved forward with a non-judicial foreclosure when

they failed to comply with Texas Rule of Civil Procedure 736.1 is that the Beal Defendants filed

a notice of substitution of trustee in the county recorder's office, on September 8, 2014 which

they attached to their Sworn Complaint for Forcible Detainer filed in the Justice of the Peace

Court of Dallas County, Texas and which they also attached to their Response in Opposition to

Request for Injunctive Relief [Document 57-2 PageID 950] filed in this court. The substitution of

Trustee was from Michael L. Riddle to Shelley Ortolani. (See **Exhibit G**)

A trustee performs the sale only in non-judicial foreclosures. Quoting from "Texas Rule 736

Foreclosure – Judicial?" by Mary Doggett:

> "There is a common misconception in Texas as to what exactly is a foreclosure procedure
> pursuant to Rule 736 of the Texas Rules of Civil Procedure….In a judicial foreclosure one
> would file a suit and get a judgment; the court would order the lien foreclosed, issue the
> order of sale, and have an officer of the court conduct the sale.

> In a 736 foreclosure, on the other hand, the court's actions are more ministerial. Before the
> court proceeding, the lienholder starts the nonjudicial process by sending default notices
> and accelerating the debt. Only then does he file an application for an order (as opposed to
> a suit) in court. Additional parties and claims are not permitted: the only issue for the court
> to determine is whether the lienholder complied with the conditions precedent to
> foreclosing the lien. In fact, if the debtor raises any other issues, the court is essentially
> supposed to dismiss the 736 application. If the court agrees that the lienholder's
> application is sufficient, the court issues an order that says, "yes, you've done all the steps
> precedent to a nonjudicial foreclosure; you may now foreclose." It is then the lienholder
> (through a trustee) who conducts the sale, not an officer of the court. (See **Exhibit E** for
> the full article.)

When Texas first allowed Texas Home Equity Loans in 1998 it was with the expressed

stipulation that the property could only be foreclosed upon through a judicial foreclosure. Every

attorney we have every spoken with has told us that a non-judicial foreclosure is not permitted

with a Texas Home Equity Loan like we had and that we would always have our day in court.

During the 40 months of prior litigation where we were the plaintiffs and Defendant MGC in the

present case was the defendant they could have counter-sued or initiated a foreclosure but they

never did; in fact foreclosure was never mentioned because they were never able to produce

documents that our attorneys had requested to verify that they were the holder of the note and

deed of trust.

### Violation 6

The Beal Defendants were required by 51.002 (b) to disclose the name and address of the

substitute trustee and they did not.

### Violation 7

Texas Rules of Civil Procedure 736.11: Automatic Stay and Dismissal if Independent Suit Filed

states:

   (a) A proceeding or order under this rule is automatically stayed if a respondent files a
separate, original proceeding in a court of competent jurisdiction that puts in issue any
matter related to the origination, servicing, or enforcement of the loan agreement,
contract, or lien sought to be foreclosed prior to 5:00 p.m. on the Monday before the
scheduled foreclosure sale.

   (b) Respondent must give prompt notice of the filing of the suit to petitioner or petitioner's
attorney and the foreclosure trustee or substitute trustee by any reasonable means
necessary to stop the scheduled foreclosure sale.

   (c) Within ten days of filing suit, the respondent must file a motion and proposed order to
dismiss or vacate with the clerk of the court in which the application was filed giving
notice that respondent has filed an original proceeding contesting the right to foreclose
in a court of competent jurisdiction. If no order has been signed, the court must
dismiss a pending proceeding. If an order has been signed, the court must vacate the
Rule 736 order.

   (d) If the automatic stay under this rule is in effect, any foreclosure sale of the property is
void. Within 10 business days of notice that the foreclosure sale was void, the trustee
or substitute trustee must return to the buyer of the foreclosed property the purchase
price paid by the buyer.

   (e) The court may enforce the Rule 736 process under chapters 9 and 10 of the Civil
Practices and Remedies Code.

The trustee sale was scheduled for Tuesday September 2, 2014. We filed our separate, original

proceeding in the Dallas District court on Friday August 29· 2014. Our complaint is specific to

issues related to the origination, servicing, or enforcement of the loan agreement, contract, or lien

sought to be foreclosed.

The Beal Defendants were notified as per <u>Texas Rules of Civil Procedure 736.11</u> of our separate, original complaint against them and of the automatic stay, but they chose to ignore it proceed with the sale of our property illegally. (See **Exhibit C**).  This fax, as well as emails were sent to the following individuals: David Allison, executive officer with Defendant DMI; William Mynat president of Defendant DMI, Ed Szarkowicz, attorney with Defendant DMI, Scott Rosenblum, director of Defendant DMI; Bret Malloney employed by Defendant MGC and Beal Bank; Grant Hamilton, attorney for Defendant MGC; Mr. Carl Frischling and Mr. Ezra G Levin senior partners at Kramer Levin Naftalis & Frankel LLP where Mr. Rosenblum is employed; Mary M. Speidel, Jeffrey Ben Hardaway, Leo C. Stawiarski Jr., Ernest John 'Ernie' Codilis Jr., all attorneys with Defendant C&S; and several employees of Beal Bank.

I, JoAnn Breitling, personally phoned and spoke with David Allison and Grant Hamiton on the day of the sale to inform them that we had filed an independent lawsuit against the Beal Defendants and that an automatic stay of the sale was in place under <u>Texas Rules of Civil Procedure 736.11.</u>

### <u>Specific issues with Origination that Render the Mortgage Contract Void or Voidable</u>

Our signatures were forged on several documents by the broker during underwriting without our knowledge or permission. (See **Exhibit F** – Forged signatures at origination.) These documents also evidence the fact that we were never given proper legal disclosures under the Truth in Lending Act ("TILA"). This fact was judicially determined by Judge Tanya Parker in the 116th Dallas District court, case # DC-11-07087.

An assignment of deed of trust filed with our county by Defendant MGC shows a "Subsequent Recording" as being "Assigned to Aames Capital Corporation" and "Assigned to Banker Trust of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Home Loans SV-79, 1800 Tapo Canyon Road Simi Valley, CA 93065, on September 6, 2001, Instrument No 1520053, here in"

This in indicative of fraud in the factum at origination as the party identified as the "lender" on our origination mortgage documents was not a true lender but a "straw lender" standing in for parties intentionally not disclosed to us, but known to the "straw lender" i.e. parties to the Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2 Trust. This intentional omission of material fact prevented us from any opportunity to understand the risks and obligations of the mortgage contract. This constitutes fraud in the factum and voids the contract.

### Forged, Robosigned and Falsified Assignments of Deed of Trust

Even if the mortgage contract were enforceable, which it is not, the Beal Defendants have used forged, robosigned and falsified assignments of deed of trust, allonges and affidavits to convey what claim is beneficial interest in the mortgage (the note and the deed of trust) to Defendant LNV.

In addition to the letter from Texas Attorney General Greg Abbott to Beal Defendant MGC which unequivocally states that court orders and foreclosure sales are invalid if they are obtained through the use of robosigned and falsified assignments of deed of trust, allonges and affidavits;

and that this also violates a host of Texas laws, including penal code. (This letter proves that the Beal Defendants were warned and intentionally chose to violate the laws of Texas, and similar laws in other States, to continue to perfect foreclosures with such illegal methods.) This evidence makes intent to defraud by the Beal Defendants conclusive.

Fraud on the court occurs when the judicial machinery itself has been tainted, such as when an attorney, who is an officer of the court, is involved in the perpetration of a fraud or makes material misrepresentations to the court. Fraud upon the court makes void the orders and judgments of that court.

In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

What has been presented herein and in our other pleadings are only a fraction of the evidence we have to show that Defendant LNV is not the holder of the mortgage.

A recent Texas Supreme Court decision in Fourteenth Court of Appeals, case No: 14-13-00932-CV; Yarbourgh v. Household Finance Corporation III on appeal from the County Court at Law No. 2 Galveston County Texas states:

"In an issue of first impression, we must decide whether an affirmative defense of forgery, supported by an affidavit alleging that the defendants' signatures on a deed of trust were forged, raises a genuine issue of title intertwined with the issue of possession sufficient to deprive a justice court of jurisdiction in a forcible detainer action. We hold that it does. The courts below

lacked jurisdiction in this forcible detainer action because determining the right to possession necessarily required the resolution of a title dispute." (See **Exhibit I** for the full opinion)

### Specific issues with Mortgage Servicing that render the Mortgage Unenforceable

In the Joint Status report filed on October 21, 2014 [Document 32, page 8] counsel for the Beal

Defendants also state:

"MGC is the master servicer of the Loan on behalf of LNV, and DMI has been the authorized sub-servicer of the Loan since April 2010."

The Texas Department of Savings and Mortgage Lending say that Defendant MGC is not

licensed as a mortgage servicer in Texas; they operate under Beal Bank's license. Defendant

DMI is licensed as a mortgage servicer in Texas; however mortgage sub-servicing is not a valid

mortgage servicing activity.

In our prior 40 months of litigation with Beal Defendant MGC they were unable to produce a

payoff balance or a payment history.

In June 2008 we were approved for a refinance at a much better interest rate, but Beal Defendant

MGC failed to provide a payoff balance; eventually the offer expired and we've been stuck with

MGC's shenanigans ever since. (See **Exhibit I** – Borrower Release documents, other documents

specific to our attempt to refinance in 2008 and various communications with MGC during this

time.)

Page one of Exhibit H is an expedited request for our pay off balance dated June 16, 2008.

Notice someone named L. Campbell wrote next to the Received stamp: "Not in system."

Page two of **Exhibit I** is another request for pay off sent to MGC by Beneficial the lender who we had the refinance offer with dated July 3, 2008. Again an MGC employee wrote that our loan was not in their system.

Pages three and four of **Exhibit I** is a communication from MGC to Beneficial stated we had an incomplete authorization form.

Pages 5 through 7 of **Exhibit I** are another request, using MGC's forms for the pay-off dated July 14, 2008. We never got the pay off balance.

Also attached as **Exhibit J** are communications with attorneys representing MGC in our prior litigation. Page 1 in a letter from attorney Scott Hayes to my attorney at the time, Patricia McCarthy, evidencing the fact that he abated the case for sixty days; this was a delay tactic.

Page 2 of **Exhibit J** is a copy of a letter from Glenn Joyner a reverse mortgage consultant – we were again trying to refinance to get away from MGC and their horrific bad faith and servicing practices – to MGC attempting get a pay off (this attempt was also unsuccessful) however the letter states that Beal Defendant MGC told Mr. Joyner that Beal Defendant DMI was the new servicer for the loan but that DMI told him that "MGC did in fact still own the loan."

Pages 3 through 6 of **Exhibit J** are my first complaint letter to Attorney General Greg Abbott about Beal Defendant MGC dated in May 2009. I made two additional complaints in 2011 and 2013, but nothing to my knowledge was ever done to investigate. I have copies of numerous letters sent to Attorney General Greg Abbott about Beal Defendant MGC obtained through the Freedom of Information Act; they all say the same thing: MGC put them into a default by not

providing a place to make payments; and then prevented them from curing the default through

several tactics including tacking on exorbitant fees, and then using that default to initiate

foreclosure.

We have considerable additional evidence of foul play in the servicing of our loan by Beal

Defendant MGC. They were given ample opportunity to cure the many instances of violation to

Texas Constitution Article XVI, Section 50 and Texas Rules of Civil Proceedure 736(1) but

consistently fail to do so and continue down a path of what can only be concluded are intentional

violations.

Texas Constitution Article XVI, Section 50(i) states:

> "This subsection shall not affect or impair any right of the borrower to recover damages from
> the lender or assignee under applicable law for wrongful foreclosure."

## IRREPARABLE HARM IF INJUNCTIVE RELIEF NOT GRANTED

A wrongful eviction and the added stress of fighting yet another court battle in another court with

the Beal Defendants will cause our family irreparable harm; it may cause the death of my

husband. (See **Exhibit K** – Letter from Samuel Breitling's doctor and **Exhibit L** – Medical

records for JoAnn and Matthew Breitling.)

## BALANCE OF THE EQUITIES

D. Andrew Beal is reported to purchase "distressed debt" for $0.04 on the dollar. He purchases

pools of loans and then looks for the "kernels" whether or not they are valid debts or defaulted

debts. Beal's MGC will cause a default if the homeowner is not in a default.

We have on the other hand invested heavily in our home over a thirty three year period of time.

## PUBLIC INTEREST

Public interest is best served when individuals like D. Andrew Beal and his Beal Defendants are held accountable for violating the law. Americans can have no confidence in our judiciary when wealthy billionaires get away with blatant violations of law to steal homes from seniors and hard working American through those violations.

## FEDERAL RULE 11

Federal rule 11 provides for sanctions on attorneys who violate professional code of conduct and abuse the judicial process.

JoAnn S Breitling

Samuel G. Breitling

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was

served upon all counsel of record and pro-se parties via the Court's CM/ECF system, regular

mail, and/or certified mail, return receipt requested n this 16th day of October 2014.

JoAnn S Breitling                                   Samuel G. Breitling