Denise Subramaniam
Self-represented
13865 SW Walker Rd
Beaverton OR 97005
503-764-5300

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| **LNV CORPORATION** | Civil Case No. 3:14-cv-01836 |
|     Plaintiff, | |
| v. | **DEFENDANT'S RESPONSE** |
| **DENISE SUBRAMANIAM** | **TO PLAINTIFF'S OBJECTION** |
| pro per | **TO MOTION FOR** |
|     Defendant | **MEDICAL CONTINUANCE** |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO MOTION FOR MEDICAL CONTINUANCE

1.  Here comes Defendant Denise Subramaniam, representing herself, and hereby responds to Plaintiff's objection to her motion for continuance due to medical reasons and states the following:

2.  Plaintiff's counsel claims Defendant "proffered scant evidence in support of her motion" however she attached as Exhibit A to her motion a letter written by her neurosurgeon, Dr. Michael Sandquist, specifying the medical need for surgery and that 90 days post surgery recovery period is expected. Neurosurgeons typically do not write letters specifying their patients' need for surgery when such is untrue. The only uncertainty was how long it would take to schedule the surgery; which could not be ascertained until after the pre-surgery tests were complete.

3.      On March 10, 2015 Dr. Michael Sandquist's office called Defendant to schedule surgery. Attached as Defendant's Exhibit A to this pleading is another letter from Dr. Sandquist explaining the medical urgency in not delaying surgery. Additionally attached as part of this exhibit are portions of Dr. Sandquist's clinical evaluation and surgical instructions.

4.      As is often the case with serious medical conditions exactly what will be needed when is unpredictable. Counsel for LNV's allegations that it is untrue that Defendant's reasons for asking for the earlier time extensions were due medical are false. Attached as Defendant's Exhibit B is an email communication between Defendant and counsel for LNV dated December 18, 2014, specific to her first request for an extension due to medical reasons. She had attached her medical records to the email and they also contained in Defendant's Exhibit B.

5.      These medical records which were provided to counsel for Plaintiff in confidence show that Defendant suffers from among other things multiple herniated discs in the neck, central canal stenosis along with narrowing of the nerve sleeve, multilevel moderate to advanced disc space degenerative changes, spondylosis/disc ostephyte, effacement of the ventral spinal cord, unconvertebral spurring deform of root sleeve, impingment of the left C7nerve root which was the likely cause of pain, numbness, weakings and tingling in left shoulder, arm, hands and fingers.

6.      Even a layman can understand from the medical records attached to the aforementioned email sent to counsel for LNV on December 18, 2014, that this is a serious medical condition and that the possibility of surgery and further delays for genuine medical reasons existed. Defendant requested the court be informed about her medical condition and the possible need for ongoing extensions of time, but counsel for LNV refused to inform the court. Because of the hardship this medical condition caused for Defendant and its impact on her ability to write and file motions she had little choice but to agree to counsel for LNV's stipulations so that the extensions would be granted by the court.

7.  After this initial disclosure of Defendant's medical records to counsel for Plaintiff she was told by counsel she did not need to send additional medical records. She verbally explained the medical reason for each extension of time requested. She also explained that she was being evaluated for surgery and that the possibility for further medical delays did exist. Defendant expressed great concern about having to make her medical records public, as she is now being forced to do, but always offered to send copies to counsel for LNV.

8.  Since December 18, 2014, painful nerve conduction tests have shown nerve damage; the fear is that this damage may become permanent the longer to delay in taking corrective measures (i.e. surgery.)

9.  Attached as Defendant's Exhibit C are a compilation of some of Defendant's additional medical records which show numerous appointments for diagnostic evaluations, medical tests, physical therapy and treatment plans. On December 16 and 17, 2014, Defendant was seen for abdominal pain and bowel problems (in addition to neck and arm pain); on January 2, 2015 she was seen for same symptoms, reactions to medications, and numbness and tingling of extremities became a problem as the extreme pain lessened; on January 7, 2015, she had physical therapy; on January 19, 2015 Defendant had physical therapy and was seen for upper respiratory infection that had persisted more than two weeks; on January 20, 2015 she was experiencing sinus congestion and pain and was also seen for lower back and hip pain; on January 22, 28 and 30, 2015, Defendant had physical therapy; on March 3, 2015 she was seen for acute sinusitis. In addition to the physical therapy appointments shown in these records Defendant had neck traction which is ongoing and was referred for pain management and relaxation counseling and biofeedback to help reduce stress; a necessary component for the healing process.

10.    In addition to being overwhelmed with the sheer volume of medical appointments, Defendant has to cope with the limitations and restrictions of Medicare in securing prescribed medications and medical equipment often spending hours at the time on multiple phone calls to Medicare for approvals and in order to locate approved suppliers. In addition to the immediate medical problems reflected in these medical records specific to the neck and left arm; Defendant suffers from similar pain, muscle weakness and numbing in the legs which have a similar cause in the lower spine. The process of medical evaluation is just beginning for these symptoms which could result in recommendations for future surgeries. Carpal tunnel syndrome was diagnosed in both wrists and hands with the potential need for future surgery in at least one wrist. Other non-invasive treatments are being tried instead; as Defendant prefers to avoid surgery whenever possible.

11.    As for the poorly written motion counsel for LNV complained about; the cause for this is fingers that can't press the keyboard hard enough to register the letters; the constant need for corrections due to this and inappropriate automatic spell-checker corrections; inability to sit for long periods; fatigue; inability to focus and concentrate because of pain, stress and other symptoms.

12.    Defendant's poor performance in writing her pleading is a direct result of her injury and medical problems and the reason she needs a 120 day continuance.

## CONCLUSION

13. Defendant has suffered severe pain, loss of mobility and loss of bodily functions since at least mid-November 2014. She has now been scheduled for surgery on March 17, 2015. Her physician wrote a letter already submitted to the court conveying that post surgery recovery is expected to take 90 days.

14. Neither Defendant, Counsel for LNV nor the Honorable Judge has the medical expertise to question his professional medical opinion.

15. Counsel for LNV was made aware of the seriousness of Defendant's medical conditions as early as December 18, 2014. This is evidenced by email communications between Defendant and counsel for LNV which contained an attachment of Defendant's medical records showing serious medical problems with her spine.

16. Defendant had grave concerns regarding counsel for LNV's refusal to disclose to the court her medical reasons for her continuing need for time extensions.

17. It is now apparent through the false allegations counsel for LNV made in their objection to her motion for a 120 day medical continuance that their refusal to inform the court about the medical necessity behind prior time extensions granted by this court may have had a sinister motive; to prejudice the court against Defendant during a time in which they would have, or should have, known she was vulnerable. There is no excuse for such acts of bad faith.

18.     **WHEREFORE** Defendant prays this court grant the 120 day medical continuance on all deadlines and scheduled dates in this case to allow her the appropriate amount of time her doctor has specified she will need to heal.

19.     Additionally Defendant prays this court acknowledge the uncertainty inherent with serious medical conditions such as what Defendant suffers; and which has been expressed by her doctor in his ending sentence of his first letter attached as Exhibit A to Defendant's motion for 120 day continuance: "Patient will then be reevaluated at that time."

Respectfully,

_____
Denise Subramaniam