Denise Subramaniam  
Self-represented  
13865 SW Walker Rd  
Beaverton OR 97005  
503-764-5300

FILED12 MAR '15 15:48USDC-ORP

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **LNV CORPORATION**  <br>  Plaintiff,  <br>  v.  <br> **DENISE SUBRAMANIAM**  <br> pro per  <br>  Defendant | Civil Case No. 3:14-cv-01836  <br><br> **DEFENDANT'S SECOND MOTION FOR MEDICAL CONTINUANCE** |

### DEFENDANT'S SECOND MOTION FOR MEDICAL CONTINUANCE

1.  Here comes Defendant Denise Subramaniam, representing herself, and hereby for the second time motions this court for a medical continuance and states the following:

2.  The prior joint motions for time extension written and filed by counsel for Plaintiff LNV were unopposed and granted based on medical reasons specific to a spinal injury. Although Plaintiff's counsel, Gabrielle D. Richards, claims Defendant "proffered scant evidence in support of her motion"

3.  This is untrue. Defendant had attached a copy of an MRI report to an email sent to Perkins Coie attorneys Stephen Raher and Erick Haynie on December 18, 2014. A copy of this email and further communications resulting from it between them and Defendant are already in

court record. They are attached as Exhibit B to Defendant's response filed on March 11, 2015 to the objection filed by Ms. Richards to Defendant's first motion for medical continuance.

4. This MRI report dated December 8, 2014 showed Defendant suffers from among other things multiple herniated discs in the neck, central canal stenosis along with narrowing of the nerve sleeve, multilevel moderate to advanced disc space degenerative changes, spondylosis/disc ostephyte, effacement of the ventral spinal cord, unconvertebral spurring deform of root sleeve, impingment of the left C7 nerve root which was the likely cause of pain, numbness, weakness and tingling in left shoulder, arm, hands and fingers.

5. Any lay person who reviews this MRI can determine that these are serious medical issues with long term consequences.

6. In the body of Defendant's email she explained she was in extreme pain and could not use her left arm; could barely type and could not sit upright for more than 20 minutes at a time. Attorney Stephen Raher agreed to prepare and file a joint motion for the extension of time, however he refused to state in this joint motion that the cause was for medical reasons.

7. Defendant was in no position to reject or oppose this because this would mean she'd have to prepare and file a motion herself which was impossible to do with her medical impairment.

8. Defendant's needed to request two additional time extensions for filing after her December 18, 2014, communications with attorney Raher. Each time she explained the medical need and offered to provide updated medical records in support of these requests. She was told

this was not be necessary. Each time a joint motion was filed by Ms. Richards no mention was made as to the medical need for the extension.

9.  As the seriousness of Defendant's medical condition became more apparent and with it an awareness that ongoing continuances would be needed she became concerned about why Ms. Richards and the other attorneys at Perkins Coie would not want to disclose to the court her medical need for such extensions.

10. Defendant had informed attorneys Stephen Raher and Erick Haynie in her December 18, 2014 email that she was attempting non-invasive treatments in hopes of avoiding surgery; therefore Perkins Coie attorneys knew Defendant's medical condition could result in surgery. Any layman knows spinal surgery has the potential risk of paralysis.

11. Defendant now wonders if these Perkins Coie attorneys did not want to disclose to the court the nature of her medical need in hopes of exploiting this possibility and thereby depriving her of her property in behalf of their client while she was incapacitated.

12. Each extension of time asked for by Defendant has been based on medical necessity. As a pro-per litigant she am already disadvantaged. Without access to electronic filing she receives filed documents through the mail days after filing. This causes her to lose precious time in writing and filing responses. Due to her current medical condition preparation of court documents takes two to three times longer than it used to due to the loss of function in her left arm, hand and fingers. She is distracted by a volume of required medical appointments, the stress of dealing with Medicare approvals and finding approved vendors for prescribed medical equipment; and the physical and mental fatigue this causes. The horrific stress of knowing she

has looming deadlines in a legal case that could result in her losing her home to a fraudulent foreclosure sometimes paralyzes her with fear.

13.     Attorneys Gabrielle D. Richards, Stephen Raher and Erick Haynie all knew about the seriousness of Defendant's medical condition and the potential for an ongoing need for time extensions; yet they refused to inform this Honorable Court about this need.

14.     A reasonable person would conclude that they intended to withhold this information from the court so as to prejudice the court against Defendant and at a later time when she was exceptionally vulnerable, as she is now, and claim there was no evidence of medical need so as to make it appear to the court that Defendant's medical cause for continuance was frivolous.

15.     If this is the case then Perkins Coie attorneys Gabrielle D. Richards, Stephen Raher and Erick Haynie are all guilty of committing fraud upon the court, and have egregiously violated their professional code of conduct. Their deceit to this Court has caused me harm.

16.     As a result of the actions of these attorneys Judge Michael Mosman denied Defendant's motion. He did not know these attorneys had received in confidence copies of Defendant's medical records that substantiated Defendant's medical need for a continuance and relied on the genuineness of the false statements they made in their objection.

17.     Defendant did not learn of the denial until she filed her response to their objection on the afternoon of March 11, 2015. She had stayed up most of the night and worked throughout the day to prepare this court document while in a great deal of physical discomfort. Not knowing what else to do to substantiate her medical need to the court she included some of her medical

records in her response. These records should provide the court with all the substantiation needed to grant a medical continuance.

18.     Medical records are very private and personal; so much so they are protected by privacy laws. No one should feel compelled to make them public as Defendants felt compelled to do. This is why she sent them in confidence to the attorneys at Perkins Coie in the first place. Even though they are opposing counsel they have a fiduciary duty to be honest with the court.

19.     If from the beginning they had informed the court about the genuine medical need for Defendants extensions of time, and that future extensions for medical need might be necessary, then harm caused to Defendant could have been avoided. They could have simply assured the court that she had provided them with evidence of her medical need for the extensions.

20.     In his Order the judge said Defendant should get an affidavit from her doctor. Why didn't someone just tell her this so that so she could have gotten the affidavit resolved the issue a week ago?

21.     On March 12, 2015, Defendant called her surgeon's office but he's in surgery the rest of the day and his staff can't pull out for this.

22.     Defendant's primary care physician is on vacation until Tuesday. She has an appointment March 12, 2015 to get an MRI required for her surgery. Her surgery is on Tuesday March 17, 2015 and on Monday March 16, 2015 she has to make sure the hospital knows about the accommodations she need for her hospital stay because of her other disabilities.

23.     This ordeal unduly caused Defendant to suffer burden, hardship, undue stress and emotional anguish.

24.     Instead of filing an objection with the court if these Perkins Coie attorneys had had the common decency to tell Defendant they would not object if she obtained an affidavit from her physician then she would not have been subjected to hours of extreme stress (which her health care providers tell her she must reduce); and the court would have had what it needed some time ago to grant the medical continuance.

25.     Had the judge requested the court clerk phone Defendant and tell her to obtain an affidavit from her physician then this could have been resolved some time ago. As a pro-per litigant Defendant do not know procedures, she does her best to learn, but this fiasco is an example of how pro-per litigants are denied their constitutional rights to due process and equal protection of the law.

26.     Informing Defendant that the court required an affidavit from her physician could not be construed by any reasonable person as providing her with "legal advice" it is merely informing her of what is expected and needed by the court. Doing so saves all parties and the court a lot of time and aggravation. It is the decent, respectful and courteous thing to do.

27.     Is there some law that forbids officers of the court to interact with others in keeping with societal concepts of human decency, respect and common courtesy?

28.     Not informing the court of Defendant's medical condition then not requesting she provide the court with an affidavit from her physician in a timely manner has caused her extreme undue

stress at a time when she am supposed to reduce her stress to improve the outcome of her surgery and hasten her recovery.

29. Attorney Gabrielle D. Richards is herself disabled. She uses a wheelchair and is visibly disabled. Perhaps she has been disabled from birth. If so she wouldn't be able to understand the extreme grief a person feels who once had an active life and a thriving profession and who after she overcame many obstacles including disability to finally earn a six figure income had this all taken from her by more severe and debilitating disabilities, invisible to others.

30. Defendant is not in a wheelchair, but she could be in the future because the same degenerative spinal conditions found in her neck are likely causing the pain and periodic weakness with her hips and legs that she experiences. These symptoms are only at the beginning stage of medical evaluation.

31. Every time Defendant manages to overcome one medically caused limitation another seems to come along. The anguish she feels over such loss and the limits they place on her ability to do the things she once did easily is sometimes too much to bear. Her inability to function impacts her life quality and her ability to enjoy life. She still struggles with the frustration of her loss; and hasn't yet accepted her new limitations. In her own mind Defendant thinks she can still do things that she really can't do. This is the reason for last minute requests for extension of time mentioned by Ms. Richards in her objection to Defendant's motion for medical continuance.

32. Attorney Gabrielle D. Richards has overcome the limitations her disabilities. It is something to be proud of and Defendant is sure she worked hard to accomplish this. Defendant is

also sure it also took time; support from others and special accommodations to help her be productive in spite of her disabilities. Defendant is certain that without the Americans with Disabilities Act ("ADA") Ms. Richards's success might not have been possible.

33. Becoming productive and once again earning an income is something Defendant yearns to achieve even at her age; however she is still in the process whereas Ms. Richards's has already achieved some visible success.

34. Another condition Defendant has been diagnosed with is fibromyalgia. She is just beginning to learn how to live with the constant pain and other symptoms associated with fibromyalgia. Pain cannot be seen by others so it is easy for others to think "that person is not 'really' disabled". Apparently this is the judgment made by attorney Richards and her colleagues. Shame on them. This is the exact reason Congress amended the ADA in 2009 to make sure disabled people with "invisible" disabilities are not denied protection under the ADA.

## CONCLUSION

35. Defendant has suffered severe pain, loss of mobility and loss of bodily functionsdue to spinal injury since November 2014. She has surgery scheduled on March 17, 2015. She has no opportunity to file anything further with the court. Her surgeon and her primary care physician are unavailable today to prepare an affidavit. Her surgeon already wrote two letters that are in court record about Defendant's medical need for a continuance.

36. Defendant has submitted to the court her medical records with her response filed on March 11, 2015 to LNV's objection to her earlier motion for medical continuance. These records are ample substantiation of medical need for a continuance.

37. Defendant's constitutional rights to due process and equal protection of law will be violated if a medical continuance is not granted at this time.

38. Defendant will appeal a denial.

39. **WHEREFORE** Defendant prays this court grant her a 90-day medical continuance on all deadlines and scheduled dates in this case to allow her the appropriate amount of time her doctor has specified in his letter she needs to recover.

40. Defendant prays this court sanction counsel for Plaintiff LNV for what is in the least attorney misconduct; and at the worst fraud upon the court.

Respectfully,

_____
Denise Subramaniam