FILED 13 MAR '15 15:05 USDC-ORP

Denise Subramaniam
Self-represented
13865 SW Walker Rd
Beaverton OR 97005
503-764-5300

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **LNV CORPORATION**<br>**Plaintiff,**<br>**v.**<br>**DENISE SUBRAMANIAM**<br>**pro per**<br>**Defendant** | **Civil Case No. 3:14-cv-01836**<br><br>**DEFENDANT'S MOTION TO DISMISS AS A MATTER OF LAW AND FOR FAILURE TO STATE A CLAIM** |

**DEFENDANT'S MOTION TO DISMISS AS A MATTER OF LAW AND FOR FAILURE TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

1. Here comes Defendant Denise Subramaniam, representing herself, and hereby motions this court to dismiss Plaintiff's complaint against her with prejudice for failure to state a claim as provided for in Federal Rule of Civil Procedure 12(b)(6). In support of her motion she states the following:

2. Plaintiff LNV claims to be the holder of a certain promissory note Defendant signed specific to a mortgage contract entered into with People's Choice Home Loans ("PCHL") on or about February 11, 2004. The enforceability of this Note; along with the enforceability of the deed of trust which Plaintiff, LNV Corporation ("LNV") claims to have acquired through assignment are in question.

3. A prima facie review of the indisputable facts in the court record and a review of the relevant law mandates a judgment for dismissal as a matter of law under Federal Rule Civ. P. 50.

4. Defendant challenges LNV's claim that it is the holder of the promissory note and deed of trust. Plaintiff LNV submitted to this Honorable Court copies of certain documents in support of its claim of standing to foreclose on Defendant's property. These documents on their face cannot be authentic enforceable instruments.

## INDISPUTABLE FACTS

5. The subject loan giving rise to LNV's foreclosure claim was sold to EMC Mortgage Inc. (it is assumed this occurred before May 1, 2004) by PCHL and subsequently sold into the BSABS 2004-HE4 Bear Stearns Asset Backed Securities Trust (the "BSABS 2004-HE4 Trust" or "Trust"). Indisputable evidence exists to show this in fact happened.

6. The Trust's Pooling and Servicing Agreement ("PSA") required that the conveyance of the Mortgage be:

> "...construed as, an absolute sale thereof to the Depositor or the Trustee, as applicable. It is, further, not the intention of the parties that such conveyance be deemed a pledge thereof by the Seller to the Depositor, or by the Depositor to the Trustee."

7. Notice of Default filed in my county on 8/28/2006 by Cal-Western Reconveyance Corporation in behalf of Litton Loan Servicing LP ("Litton") and attached to Defendant's Response to Plaintiff's amended complaint states:

> "Cal-Western Reconveyance Corporation as Trustee, hereby certifies that no assignment of the trust deed by the trustee or by the beneficiary and no appointment of successor-trustee have been made except as recorded in the mortgage records of the county or counties in which the above described real property is situated"

8.  The Bloomberg terminal shows the Defendant's loan was paid in full in the Trust in December 2005; and that it was current at the time it was paid off.

9.  It is uncertain exactly who paid the obligation in full; but it is certain that no legal conveyance of the debt occurred between the Trust and GMAC subsidiary Homecomings Financial Network as purported in a deed assignment filed in Washington County on June 28, 2006 signed by Dana Lantry as Assistance Vice President of PCHL. Nor could a legal conveyance of the Note have occurred in 2006.

10. It is a legal impossibility for PCHL to convey beneficial interest in the debt (note) and the deed of trust in 2006 when PCHL gave up all beneficial interest in the subject mortgage when it conveyed it to EMC presumed to be on or before May 1, 2004, but definitely before December 2005.

11. No assignment of deed of trust was ever filed in Washington County evidencing the "absolute sale" of the Mortgage from PCHL to EMC and then to either Bear Stearns Asset Backed Securities I LLC as the "depositor" or La Salle Bank, N.A. as trustee of the BSABS 2004-HE4 Trust.

12. Evidence exists that the Dana Lantry endorsement on the note and on an allonge submitted to this court are forgeries.

13. Evidence exists of intentional deceit by LNV and/or their counsel in the fabrication of what can only be forged and false documents intended to give the appearance of a legitimate conveyance; when they knew or should have known no such legal conveyance ever occurred.

The allonges and other endorsements to the note submitted by LNV in the present case were not presented in the earlier case involving these same parties and the same matters. (Subramaniam v. Beal, Case # 3:12-cv-1681). Had these documents existed at that time logic dictates that they would have been submitted to this Court then.

14. Evidence exists that the parties endorsing the note, the allonges, the substitutions of trustee, and the assignments of deed of trust which were submitted to this court by Plaintiff LNV in support of its claim of standing to foreclose on Defendant's property were robosigners. These parties include but are not limited to: Dana Lantry, Jason J. Vecchio, Diane Meistad, and Betty Wright.

15. A preliminary report released by OMNI Document Examinations ("OMNI") on December 4, 2014 specific to several Jason J. Vecchio endorsed allonges identical to the one Plaintiff LNV submitted to this court in the present case shows evidence of fraud mandating further investigation of the alleged "original" notes LNV claims is in its possession, the allonges, the substitutions of trustee, and the assignments of deed of trust for a more though forensic investigation so a definitive determination of fraud can be made.

16. The letter Attorney General of Texas, Greg Abbott, wrote to MGC dated October 4, 2010 is further evidence that the Plaintiff LNV knew or should have known the allonges, the substitutions of trustee, and the assignments of deed of trust which they submitted to this court in this present case were robosigned and otherwise altered or forged. The parties endorsing these alleged instruments were all employees of Ally fka GMAC identified specifically in Abbott's letter as corporate entities whose employees were found to be robosigning and otherwise falsifying such records and instruments.

**MEMORANDUM OF LAW**

17. The allonges, the substitutions of trustee, and the assignments of deed of trust submitted to this court by Plaintiff LNV meet the exception under O.R.S. § 223.575(1) as fraud undermines the effect of the deed to convey to the grantee anything. In this case the court cannot accept the deed as prima facie evidence of title in the grantee (as being either LNV or its predecessors Homecomings Financial Network and Residential Funding Corporation, ("GMAC-RFC") because the evidence offered by Plaintiff LNV is tainted with fraud.

18. Citing O.R.S. § 223.575 - Legal and evidentiary effect of deed:

> *The effect of the deed shall be to convey to the grantee therein named the legal and equitable title in fee simple, to the real property described in the deed, excepting only the lien of a local government on such assessments or liens as were not included in the foreclosure proceedings. The deed shall be prima facie evidence of title in the grantee, except as stated in this section, and that all proceedings and acts necessary to make such deed in all respects good and valid have been had and done. Such prima facie evidence shall not be disputed, overcome or rebutted, or the effect thereof avoided, except by satisfactory proof of either:*
>
> *(1) Fraud in making the final assessment or in the final assessment, or in the procuring of the lien.*
>
> *(2) Payment of the final assessment or lien before sale or redemption after sale.*
>
> *(3) That payment or redemption was prevented by fraud of the purchaser.*
>
> *(4) That the property was sold for a lien or final assessment for which neither the property nor its owner, at the time of sale, was liable, and that no part of the final assessment or lien was assessed or levied upon the property sold. [Amended by 1991 c.902 §67; 2003 c.802 §43]*

19. Defendant has been damaged by the fraudulent activities and actions of the Plaintiff LNV and its predecessors because the marketable title to her property has been damaged for nearly ten

years; thus depriving her of liberty to enjoy her property or to sell her property and recover the investment she made into it. A clouded title is an unmarketable title.

20. In Oregon, "[t]he presumption is that all conveyances are duly recorded, and the fact that the record fails to show a conveyance of real property would give rise to the presumption that no such a conveyance is in existence." Collins v. Delashmutt, *6 Or 51, 54 (1876).* Furthermore, "[t]he principle is, that an abstract is an epitome of the substance of the record of titles, and a title cannot rest even partly in parol when tendered in performance of a contract calling for a clear title abstract." Wurfel v. Bockler, *106 Or 579, 584, 210 P 213 (1923).*

21. It is well established in Oregon that all conveyances must be recorded "so that the validity of titles may appear from the inspection of the records, and no purchaser can be required to go forward, and complete a purchase when the title of his vendor does not appear from an inspection of the records." Collins v. Delashmutt, *6 Or 51, 53–54 (1876)*. The public records must clearly show that the title of the seller is valid. Schreiber v. Karpow, *290 Or 817, 823, 626 P2d 891 (1981) (quoting from Lockhart v. Ferrey, 59 Or 179, 183, 115 P 431 (1911)*, the following: "A marketable title means one appearing to be such by the record of conveyances or other public memorial. It means that the title must appear of record and not rest in parol"); Winslow v. Gilstrap, *147 Or 374, 380, 32 P2d 767 (1934).*

22. "A contract to sell real property imports, in the absence of any stipulation respecting the matter, an agreement to convey title to the premises in fee simple." Burns v. Witter, *56 Or 368, 372, 108 P 129 (1910)*; see also 92 CJS Vendor & Purchaser §184 (1955); CHAPMAN MAUPIN, MARKETABLE TITLE §5, *at 203 (3d ed 1921)*; 1 MILTON R. FRIEDMAN, CONTRACTS AND CONVEYANCES OF REAL PROPERTY §4.2, *at 359 (5th ed 1991).*

Thus, once the contract is signed, the vendee need not accept less than good title to the property, and is not required to accept doubtful title that may expose the vendee to the expense and hazard of litigation. Percy v. Miller, *197 Or 230, 240, 251 P2d 463 (1953); 92 CJS, supra, §183.*

23. The clean hands doctrine ("CHD") deprives Plaintiff LNV of standing. The CHD is a doctrine of standing. The grounds on which the CHD determines (the lack of) standing—a plaintiff's connected/related wrongdoing—are, however, unique, reflecting the unusual norms the CHD embodies.

24. "He who comes into equity must come with clean hands." See, e.g., Johnson v. Yellow Cab Transit Co., *321 U.S. 383, 387 (1944)*; DAN B. DOBBS, LAW OF REMEDIES: DAMAGES, EQUITY, RESTITUTION 68 (2d ed. 1993.

25. The CHD manifests the principle that "one cannot seek equitable relief or assert an equitable defense if that party has violated an equitable principle, such as good faith." BLACK'S LAW DICTIONARY *268 (8th ed. 2004).* Any willful conduct that is iniquitous, unfair, dishonest, fraudulent, unconscionable, or performed in bad faith may constitute "unclean hands" under the CHD. See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., *324 U.S. 806, 815 (1945)*; N.Y. Football Giants, Inc. v. L.A. Chargers Football Club, Inc., *291 F.2d 471, 473 (5th Cir. 1961)*; DOBBS, *supra note 1, at 68; 27A AM. JUR. 2D Equity §100 (1996).*

26. Conduct in violation of the CHD need not therefore be illegal. Precision, *supra note 3, at 815; DOBBS, supra note 1, at 68.* A party seeking to obtain an equitable remedy may be denied on the grounds of unclean hands if her conduct violated principles of law, ethics, equity, or morality, even though the claimant would have been entitled to the remedy absent her prior

wrongdoing. See Deweese v. Reinhard, *165 U.S. 386, 390 (1897)* ("if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."); Miller v. Beneficial Mgmt. Corp., *855 F. Supp. 691, 712–713 (D.N.J. 1994)* ("Whenever a party who seeks to set the judicial machinery in motion and obtain some equitable remedy has violated conscience or good faith, or other equitable principle in his prior conduct with reference to the subject in issue, the doors of equity will be shut against him [or her] notwithstanding the defendant's conduct has been such that in the absence of the circumstances supporting the maxim, equity might have awarded relief.") (citations omitted).

27. A component of the CHD common to most of its manifestations is that the plaintiff's iniquitous or wrongful conduct—grounding the rejection of his or her complaint or petition—must somehow connect or relate to the conduct, interaction, or transaction underlying the plaintiff's cause of action. Garber v. Crews, *324 U.S. 200 (1945)*; Loughran v. Loughran, *292 U.S. 216, 229 (1934) (J. Brandeis)*; Keystone Driller Co. v. Gen. Excavator Co., *290 U.S. 240, 245 (1933)*; Fladeboe v. Am. Isuzu Motors, Inc., *150 Cal. App. 4th 42, 57 (4th Dist. 2007), modified, (Apr. 24, 2007)*; Mas v. Coca-Cola Co., *163 F.2d 505, 508 (4th Cir. 1947)*; Hoehm v. Crews, *144 F.2d 665, 672 (10th Cir. 1944)*; Ohio Oil Co. v. Sharp, *135 F.2d 303, 307 (10th Cir. Okla. 1943);* Salzman v. Bachrach, *996 P.2d 1263, 1265 (Colo. 2000);* Nakahara v. NS 1991 Am. Trust, *718 A.2d 518, 522 (Del. Ch. 1998)*; CHARLES ALANWRIGHT&ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §2946 (2d ed. 2010); 27A AM. JUR., supra note 3, §104; DOBBS, supra note 1, at 68–70. KENNETH H. YORK, JOHN A. BAUMAN & DOUG RENDLEMAN, CASES AND MATERIALS ON REMEDIES *209 (5th ed. 1992)*. While "equity does not demand that its suitors shall have led blameless lives . . . it

does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." Precision, *supra note 3, at 814 (emphasis added).*

28. Before delving into the philosophical analysis, here is a couple of illustrating examples. As a way of preventing debtors seizing his assets, Plaintiff Osborne, the owner of a paving business, contracted with defendant Nottley's husband (later deceased) to hold, in exchange for certain consideration, title of a parcel of land, a mobile home, and stock in the paving business all owned by Osborne. Osborne v. Nottley, *206 Ore. App. 201, 201–06 (Or. Ct. App. 2006).* The parties agreed that once Osborne's "problems" or "issues" with his creditors were resolved, Nottley would return title to Osborne. Not surprisingly perhaps, once Osborne settled his affairs, Nottley refused to transfer the assets back to Osborne. Osborne ejected the defendant from the properties, and litigation ensued. Plaintiff Osborne sought equitable relief in the form of a declaration of ownership. The Oregon Court of Appeals barred relief on the ground of unclean hands, ruling that "[a] conveyance designed 'for the purpose of placing property beyond the reach of creditors' constitutes inequitable conduct sufficient to bar relief under the unclean hands doctrine." *Id. at 205.*

29. The most dominant goal or norm that judges ascribe to the CHD is the protection of what is best captured by the concept of "court integrity." (citations omitted); Premier Farm Cred., PCA v. W-Cattle, LLC, *155 P.3d 504, 519 (Colo. App., 2006)* ("The [unclean hands doctrine] is intended to protect the integrity of the court, and simply means that equity refuses to lend its aid to a party who has been guilty of unconscionable conduct in the subject matter in litigation."); Osborne, *supra note 11, at 205*; FISCHER, *supra note 9, at 462.*

30. Plaintiff lacks standing to pursue their claims; and Plaintiff fails to make a claim for which relief may be granted.

31. Failure to state a claim on which relief can be granted is a non-waivable defense and can be raised at any time. Fed R. Civ P. 12(g),(h)(2); see also Schabel v. Lui, *302 F.3d 1023, 1034 (9thCir. 2002)*, Freeman v. Northwest Acceptance Corp., *754 F.2d 553, 559 (5th Cir. 1985)*, Rosenblatt v. United Air Lines, *21 F.R.D. 110, 111 (S.D.N.Y 1957)*. As such this motion to dismiss is properly before the Court at this time.

## CONCLUSION

32. Plaintiff has the burden of proof. Plaintiff has failed to demonstrate they have a prima facie case.

33. A prima facie review of documents in court records shows the impossibility for a legal conveyance of the mortgage from Homecomings Financial Network to Residential Funding Corporation (GMAC-RFC) and then to Plaintiff, LNV Corporation to have occurred.

34. A prima facie review of documents in court records shows a high probability that the note allonges, assignments of deed, and substitutions of trustee were forged to give the appearance such a conveyance occurred; and the only reason for forging such instruments is with intent to deceive Defendant and this Honorable Court. The court has in the past, relied on such documents as being genuine. Such deceit has harmed Defendant and caused her to suffer significant damages.

35. O.R.S. § 223.575 specifies that a conveyance of deed must be free of fraud.

36. Under the clean hand doctrine Plaintiff LNV is not entitled to obtain an equitable remedy because the Plaintiff LNV is acting unethically or has acted in bad faith with respect to the subject of the complaint.

37. THEREFORE as a matter of law Plaintiff lacks standing and has failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

38. Furthermore this case is ripe for a judgment as a matter of law under Federal Rule 50.

39. **WHEREFORE** Defendant prays this court grant her motion for dismissal with prejudice.

Respectfully,

Denise Subramaniam