Denise Subramaniam
Self-represented
13865 SW Walker Rd
Beaverton OR 97005
503-764-5300

FILED 17 JUN '15 16:34 USDC-ORP

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| **LNV CORPORATION** | **Civil Case No. 3:14-cv-01836** |
| **Plaintiff,** | |
| **v.** | **DEFENDANT'S MOTION TO** |
| **DENISE SUBRAMANIAM** | **EXTEND DISCOVERY DEADLINE** |
| **pro per** | |
| **Defendant** | |

## DEFENDANT'S MOTION TO EXTEND DISCOVERY DEADLINE

Pursuant to Federal Rule 26 (General Provisions Governing Discovery) Defendant incorporates

into this pleading her pleadings in her Motion to Dismiss and in her noticed related cases

*Subramaniam v. Beal et al*, Case No. 3:12-cv-01681-MO and *Subramaniam v. Beal*, Case No:

3:2014cv01482 as well as her pleadings and exhibits in her Notice of Related Cases and her

Notice of Constitutional Questions; and she moves this court to extend discovery until

September 1, 2015, and respectively shows the court as follows:

As a pro-se litigant who's still recovering from spinal surgery, who is disabled and whose

daughter just gave birth to twins on June 2, 2015 after a high risk pregnancy and emergency

induced labor where we almost lost her and the youngest twin, Defendant is appalled by the

ongoing bad faith exhibited by Plaintiff LNV Corporation ("LNV") and its counsel.

The court Administrator had informed LNV's counsel and Defendant that we needed to agree to a discovery schedule before filing the Joint Status report due the day the medical stay lifted on June 8, 2015. Defendant reached out to LNV's counsel, Ms. Richards, two weeks ahead of time. Ms. Richards told her that her client would agree to extend discovery only until July 17, 2015. Defendant felt this was not long enough because she had been medically incapacitated since October 2014 (even before Plaintiff brought this action against her) so she asked for some time to think about this. Defendant wanted to research what the normal discovery period is supposed to be and then discuss it further with LNV's counsel. However her daughter's pregnancy and emergency delivery distracted her, as such an experience would distract anyone. Defendant is certain that if this were your Honor's daughter and twin grand-babies your attention would also be focused on them and their wellbeing at such a critical event; Defendant is certain that even Plaintiff LNV's owner Daniel Andrew "Andy" Beal ("Beal") would focus his attention on his own daughter and twin grand-babies should he experience such a family event.

As a pro-se litigant Defendant doesn't have the luxury afforded Beal in that she can't just pay someone else to do all the work required for legal research and writing like he can.

Defendant evidently missed an email sent by Ms. Richards, who made no attempt to phone Defendant when she didn't receive a response. Had she done so, there would have been plenty of time to reach an agreement. Ms Richards did however phone Defendant on Friday before the deadline in the late afternoon while she was in the hospital with her daughter and family. At that time when Defendant told Ms. Richards about the birth of her twin grandchildren and asked if the call could wait until Monday she congratulated Defendant and said it would not be a problem. At no time did she inform Defendant it was urgent for them to speak at that moment or

she and/or her client would withdraw their "stipulated" agreement to extend the deadline until July 17, 2015. Had she done so, Defendant would have under the circumstances just agreed to the date hoping it could be extended again later if needed.

On Monday June 8, 2015 Defendant was shocked at Ms. Richard's attitude and uncooperativeness. She said her client would not stipulate to any extension of the discovery deadline which ended on the date the medical stay ended June 8, 2015. There can be no due process without discovery and to deny Defendant of her right to discovery as a direct result of an emergency medical need for stay is the epitome of injustice; and it would deny Defendant of her constitutional rights to due process and equal protection of law. (Defendant has heard from other Beal victims that this type of behavior by counsel representing LNV is typical; and that Beal and his LNV, MGC, LPP and other Beal entities do everything possible to thwart discovery.)

Defendant and other Beal victims named in the noticed related cases are victims of racketeering activity as defined by 18 U.S. Code § 1961(1)(B). Although Defendant understands why the court was unable to grant her relief in *Subramaniam v. Beal*, this does not diminish the terror and fear she feels due to the facts she described in her complaint. The series of incidents Defendant experienced as stated in this complaint did not end after the complaint was filed and subsequently dismissed. In September 2014 the first time Defendant dared venture out of her home beyond short trips to get groceries the passenger side window of her jeep was smashed and her computer stolen.

These terrorizing incidents that began on July 30, 2014 with Daniel Andrew "Andy" Beal's ("Beal") discovery of a letter attached to legal pleadings in the *LNV v. Breitlings; Case No. DC-14-04053* related case which Defendant wrote to the Illinois Attorney Registration and

*Defendant's Notice of Related Case*                                    *Page 3 of 5*

Disciplinary Commission about attorney Charles King and a phone call made to Tennessee State Bank where a Charles King used caller-ID spoofing and misrepresented himself as a government employee to inquire about a fed-wire transaction made by Beal victim Ms. Gebhardt into a Bank of America account later discovered to be a legacy global account with Beal's LPS agent DMI as the domestic intermediary for an overseas recipient

Other Beal victims and their families and friends have reported similar experiences; and worse. Regardless of our inability to prove at this point in time are that these things being done to us at the instruction of Beal; we are terrified and in fear for our lives. The mental anguish we each feel is very real and this mental anguish causes all of us to experience horrific health problems. In September Defendant had to go to the emergency room twice; and in fact was in the emergency room when Beal victim JoAnn Breitling phoned to tell her that Beal sold her house in spite of an automatic stay pursuant to Texas Rule of Civil Procedure 376.11. (See noticed related case: *LNV v. Breitlings; Case No. DC-14-04053*).

Most of Beal's victims are elderly, disabled, female heads of household, and/or minorities; already the most vulnerable members of our society and most likely to lack meaning access to the courts. The noticed related cases are NOT typical foreclosures. Most of the Beal victims made payments which Beal's MGC and/or his LPS agents intentionally misappropriated as evidenced by the **$6,000 check made payable to MGC issued by Beal victim Catherine Gebhardt and paid to Beal Bank SSB on October 29, 2008**. (See Exhibit A attached to Defendant's Notice of Related Cases.) This payment which was to cover three months of payments was NEVER credited to Gebhardt's mortgage and this fact is conclusive as evidenced by the Erica Thomas letter dated June 23, 2011 where she states on page 2 paragraph 2: "*MGC*

*has received no payments since we acquired serving of the loan from GMAC Mortgage on or around July 1, 2009.*" This misappropriation of Beal victims' payments is NOT an isolated case but one instance of many in a pattern of such activity designed to result in a self-serving (for Beal) default so he can then use forged documents he knows courts rely on as genuine to intentionally deceive courts and thereby unconstitutionally confiscates the property of his victims. Likewise a misappropriation of Defendant's mortgage payments with a self-serving false claim of default is at the root of the present case.

It is not in the public's interest to allow Beal to continue to get away with these crimes. Nor is it constitutional to deprive Defendant of discovery based on an emergency medical need that required a stay on these court proceedings.

## PRAYER

WHEREFORE Defendant prays this court extend the discovery deadline until September 1, 2015 to allow for appropriate discovery included but not limited to the expert examination by OMNI of the Notes the Plaintiff has claimed are "original" and of which the Plaintiff submitted what it claims are true copies to this court; knowing courts typically presume such documents are genuine.

Respectfully Submitted,

Denise Subramaniam