Denise Subramaniam
Self-represented
13865 SW Walker Rd
Beaverton OR 97005
503-764-5300

FILED 18 JUN '15 14:57 USDC-ORP

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| LNV CORPORATION  Plaintiff, v. DENISE SUBRAMANIAM pro per Defendant | Civil Case No. 3:14-cv-01836  DEFENDANT'S NOTICE OF RELATE CASES |

## DEFENDANT'S NOTICE OF DIRECTLY RELATED CASES

Pursuant to Federal Rule 40.2(a)(1) Defendant files this Notice of Directly Related Cases, and respectively shows the court as follows:

A directly related case existed as *Subramaniam v. Beal et al*, Case No. 3:12-cv-01681-MO in this court stemming from a wrongful foreclosure attempt on Defendant's property in 2012 by Plaintiff, LNV Corporation ("LNV"); and *Subramaniam v. Beal* Case No: 3:2014cv01482. The Honorable Judge Michael W. Mosman presided over the first case while the Honorable Judge Michael H. Simon presided over the second. Plaintiff knows these are directly related cases because it included Defendant's complaints in these two cases as exhibits attached to its complaint in the present case.

proceedings of this directly related case; and such violation resulted in the present foreclosure action now in this court brought by Plaintiff, LNV against Defendant.

Additionally this present case is directly related to the following cases which all originate from the same transaction and involve the same opposing party. These directly related cases are:

1. September 2012 - Catherine Gebhardt: *LNV Corporation v. Gebhardt, Case No. 3:12-CV-468-TAV-HBG*, U.S. District Court Eastern District of Tennessee at Knoxville.
2. Tuli Molina Wohl: *LNV Corporation v. Tuli Molina Wohl, Case No. 1 CA-CV 11-0603*, In the Court of Appeals, State of Arizona Division One
3. 2013 – Robynne A. Fauley: *Fauley v. Washington Mutual et al (LNV), Case No. 3:13-cv-00581-AC*, U.S. District Court District of Oregon, Portland Division; and *LNV v. Fauley; Case No. CV15040532;* Clackamas County
4. June 2, 2011 – Christopher and Marcia Swift: *In the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division; Case No. 12-35690 (LNV Corp v Swifts 2011-ch-00206; Circuit Court of 16th Judical Kane Counnty Illinios LNV Corp v Swifts*
5. 2010 – 2013 – Rhonda L. Hardwick: *LNV as assignee of MERS Inc. as nominee for First Capital Finaicial Services Corp. DBA Full Compass Lending v. Hardwick, Case No. 51C01-1204-MF-00098;* State of Indiana County of Martin in the Martin Circuit Court

Each of these cases arise from the same financial transaction between either MERS as an agent or a GMAC related entity and LNV Corporation, in all these cases LNV produced and submitted to a court as genuine an allonge to the note purportedly endorsed by Jason J. Vecchio a GMAC-RFC employee. In each of these cases LNV produced and submitted to a court as genuine an assignment of deed of trust purporting to convey beneficial interest to LNV; and these assignments of deed of trust are purportedly signed by GMAC-RFC employees Michael Mead or Betty Wright and notarized by GMAC-RFC employee Diane Meistad; and each was executed on March 10, 2008; seven days prior to the incorporation of LNV in Nevada. March 10, 2008 also coincides with the date that commenced the demise of Bear Stearns.

Defendant spoke on the phone with Diane Meistad who confirmed these assignments of deed of trust were all produced as part of a single financial transaction with LNV in 2008 that included numerous loan packages. She also confirmed she was an employee of GMAC's Residential Funding Company, LLC fka Residential Funding Corp. ("GMAC-RFC") and that Michael Mead and Betty Wright were also employees of GMAC-RFC and that they signed documents related to this very large transaction throughout many weeks.

The Jason J. Vecchio signatures on the allonges in each of these cases are identical. A preliminary examination of four of these Jason J. Vecchio signatures and a report by OMNI Document Examinations ("OMNI") dated December 4, 2014 shows that after an examination of these allonges OMNI determined that the signatures of Jason J. Vecchio "submitted as genuine… were stamped signatures or photocopied signatures." In order to definitively determine whether one of the signatures are genuine or if all are copies the original notes and allonges must be produced for examination. This preliminary report casts doubt on the genuineness of the LNV produced "original" notes in all the related cases.

Furthermore, LNV through their attorneys at Lender Processing Services aka Black Knight Financial Services ("LPS") affiliated Anselmo Lindberg Oliver LLC fka Freedman Anselmo Lindberg LLC, showed Marcia and Chris Swift what LNV alleged was their "original" note. Defendant went with Robynne A. Fauley to the law offices of LPS affiliated RCO Legal in Portland to examine what LNV alleged was her "original" note. Viewings of these two alleged "original" notes revealed similar characteristics that identify them as forgeries.

This present case is also directly related to the case: _Breitlings v. LNV et al; Case No. 3:15-CV-00703;_ U.S. District Court for the Northern District of Texas Dallas Division. The Breitlings'

case (and their many related the cases including: *Breitlings v. LNV; Case No. 314-cv-03322* U.S. District Court for the Northern District of Texas Dallas Division; *LNV v. Breitlings; Case No. DC-14-04053* in the Dallas Civil District Court of Texas; *LNV v. Breitlings and all other Occupants, Case No. JE-1500071D*, in the Justice of the Peace Court No. 2 Dallas County Garland Texas; *LNV v. Breitlings and all other occupants, Case No. CC-15-00911-C* Dallas County Court of Law, Court No. 3; *Breitlings v. Ames and MGC, Case No. DC-10-02189* in the Dallas Civil District Court of Texas; and *Breitlings v. MGC, Case No. DC-11-07087* in the Dallas Civil District Court of Texas) is directly related to the present case because it involves the same party, LNV, and similar claims.

The Breitlings, like the other Beal victims named above, have experienced numerous instances of mortgage servicing fraud from LNV's alleged mortgage servicer, MGC Mortgage Inc. ("MGC"). Both LNV and MGC are privately owned and operated by Daniel Andrew "Andy" Beal. The parties named herein opposing Beal's LNV in all these related cases are victims of multiple instances of crimes that constitute a pattern of criminal activity perpetrated on them by D. Andrew Beal and his corrupt business organization and his agents and attorneys that include but are not limited to: financial fraud, forgery, unlawful debt collection, theft of property, conspiracy to commit fraud, abuse of judicial process, fraud upon the court, improper influence, coercion, intimidation, tampering with evidence, and many more acts of bad faith and criminal intent extending over many years for purposes of the personal financial gain of Mr. Beal and to the detriment of his victims.

Related party Catherine Gebhardt in Tennessee is about to be wrongfully evicted from her home by LNV. Her troubles with Beal's MGC began in 2008 when she mailed a cashier's check made

payable to MGC to 7195 Dallas Parkway, Plano Texas for $6,000 to be applied to her mortgage to cover three months of payments. MGC claimed they never received that check, but when Ms. Gebhardt was finally able to retrieve this check from her bank it shows the check was paid to Beal Bank SSB on October 29, 2008. This was not the only payment MGC misappropriated and Ms. Gebhardt complained to every government agency she could think of including her Congressman because MGC refused to resolve the continuing problems with misappropriation of her payments and was determined to move ahead with foreclosure based on its own trumped up default. MGC's Erica Thomas wrote a letter dated June 23, 2011 to Ms. Gebhardt's Congressman Roe's office where on page 2 paragraph 2 she states: "***MGC has received no payments since we acquired serving of the loan from GMAC Mortgage on or around July 1, 2009***." This statement is conclusively false because Beal Bank SSB cashed Ms. Gebhardt's $6,000 check on October 29, 2008. (See Exhibit A attached hereto) Many other false statements exist in the Erica Thomas letter. She also fails to identify herself as an attorney in this letter. Her Texas Bar # is 24042027. It appears from online evidence that Erica Thomas was not actually on the payroll with MGC but employed via contract, most likely with Beal Bank. Erica Thomas's one big lie in her aforementioned letter is demonstrative of Beal's pattern of criminal activity; especially when considered alongside a sampling of numerous consumer complaint letters received by the Texas Attorney General's office describing the same pattern of criminal activity. (See Exhibit B)

Beal victims, including Defendant, made numerous phone calls to IRS agents over a period of months and it appears MGC does not have an IRS EIN number; i.e. it cannot have employees. Beal victims have requested canceled checks made payable to MGC from their banks and every retrieved check was paid to an entity other than MGC, this indicates that MGC does not have its

own bank account, which also indicates that it does not have an IRS EIN number because one is required for a business bank account. This begs the question, why would a mortgage servicing company not have an IRS EIN number? The most logical answer is that it doesn't want to report its earnings to the IRS and it's a shell corporation used to launder financial transactions. This conclusion is supported by the fact that most of the Beal victims experience the exact same problems with MGC misappropriating their payments and then using its self-made default to foreclose on their properties using falsely fabricated and forged assignments of deed of trust, allonges to the note, and forged notes. An examination of Beal victims IRS 1098 forms shows that Beal's MGC and its LPS agent Dovenmuehle Mortgage Inc. ("DMI") appear to be falsely under reporting the interest paid by Beal victims; Beal victims suspect that Beal falsely reports losses to the IRS and other government agencies then launders overseas the excessive profits he actually makes through his covert criminal activities that result in wrongful foreclosures on thousands of properties across the county. Defendant wrote to the Illinois Attorney Registration and Disciplinary Commission about DMI attorney Charles King and the phone call to Tennessee State Bank where Charles King used caller-ID spoofing and misrepresented himself as a government employee to inquire about a fed-wire transaction made by Ms. Gebhardt into a Bank of America account as per MGC's instructions in a payoff letter sent to her and other Beal victims. This Bank of America fed-wire account is a legacy global account with DMI as the domestic intermediary to an undisclosed overseas recipient. Beal's discovery of this letter through its being attached to legal pleadings filed on July 30, 2014 in the *LNV v. Breitlings; Case No. DC-14-04053* prompted Mr. Beal's surveillance of Defendant beginning on July 30, 2014.

Unfortunately the courts tend to believe organizations like MGC and LNV instead of examining the evidence presented by Beal victims who have mostly ended up representing themselves after

being financially drained by Beal's malicious litigation over many years and/or because their own attorneys suspiciously began to sabotage their cases against them in favor of LNV. This happened to Ms. Gebhardt; it also happened to the Breitlings and the Swifts. Sudden attorney incompetence appears to be another pattern in Beal related cases. The parties opposing Beal's LNV in all these related cases are now all self-represented (and not by choice).

In *LNV v. Breitlings; Case No. DC-14-04053* LNV named GMAC as a defendant. This is indicative that LNV (i.e. Mr. Beal) had reason to believe GMAC may have a claim of beneficial interest in the Breitlings' note and deed of trust. Wilshire was the last mortgage servicer the Breitlings made payments to prior to Beal's MGC. Attached to this Notice as Exhibit C is a copy of a limited power of attorney executed by Residential Funding Real Estate Holdings LLC as "Owner" appointing as attorney-in-fact Wilshire Credit Corporation authorizing Wilshire to execute certain documents and transactions for Residential Funding Real Estate Holdings LLC which is endorsed with signatures of GMAC-RFC employees Jason J. Vecchio, Betty Wright, Barbara Zahn and Steven Hanson and notarized by Mary E. Lueth. This indicates the transaction through which LNV acquired the purported assignment of the Breitlings' deed of trust and the purported conveyance of their note may have been within one of the packages included in the very large deal that Diane Meistad told Defendant about in their phone conversation. Both Defendant and Beal victims JoAnn and Samuel Breitling originally financed their property with Norwest. Those mortgages were paid in full but Norwest failed to file a satisfaction of mortgage in both these cases. LNV included as an exhibit to their complaint in *LNV v. Breitlings; Case No. DC-14-04053* documents showing that GMAC purchased Norwest.

Additionally LNV showed to WFAA investigative reporter Brett Shipp what Beal alleged to be the Breitlings' "original" note which contained characteristics that identify it as a forgery similar to those characteristics identifying the aforementioned alleged Swift and Fauley "original" notes as forgeries. (Interestingly, Beal refused to allow the Breitlings to view their purported "original" note.)

Cases directly related to the present case are not limited to the ones noticed herein; amendments to these Notices of Related Cases or additional Notices of Related Cases will be submitted as appropriate.

Defendant and the other Beal victims have a common law and constitutional right to challenge LNV's evidence presented to the court against them, especially when LNV has the burden of proof and the result of this ligation/trial will be deprivation of these related parties' property. Certainly the respective courts in these related cases would not want to be party to the derivation of constitutional rights and/or party to a conspiracy to defraud these related parties' and thereby wrongfully deprive them of their properties.

This matter is of outmost public interest to any American citizen who owns property as there can be no public confidence in a judiciary that appears so biased towards financial institutions (and the Beal entities are not truly financial institutions but shams designed to appear to be something they not) that it trashes the constitutional rights of American homeowners and refuses to acknowledge a preponderance of evidence that shows the Beal entities have submitted forged documents to the courts and made false claims to the courts about their standing to foreclose on the Beal victims properties; and that their claims of default are also fabricated and the result of their own misdeeds and intentional misappropriation of their victims payments. If the respective

courts hearing these related cases allow the Beal entities to get away with this blatant pattern of criminal activity then no American homeowner is safe from a similar unwarranted and unconstitutional court sanctioned criminal derivation of their property by any party who claims to have standing and the capacity to forge the appropriate documents to make it appears that they do when they do not. (All it takes to forge documents that look genuine is a computer and Adobe Photoshop software.)

Pursuant to RCFC 42.1 and 18 U.S. Code § 3663A the parties opposing Beal's LNV in these related cases motion the courts presiding over these related cases for consolidation of these related cases for the limited purposes of compelling Beal and his LNV to produce the alleged "original" Swift, Hardwick, Fauley and Breitling notes already shown to the Swifts, to Robynne A. Fauley and Denise Subramaniam, and to Brett Shipp, (and which all possess characteristics that identify them as forgeries), in addition to the original notes for Tuli Molina Wohl, Rhonda L. Hardwick, Catherine Gebhardt and Denise Subramaniam; and to turn these alleged "original" notes over to the custody of the United States Bankruptcy Court For the Northern District of Illinois Eastern Division and into the custody and care of Judge Donald R. Cassling and/or the United States Attorney General, Lorretta Lynch, via the office at the Northern District of Illinois, Eastern Division, 219 S. Dearborn St., 5th Floor, Chicago, IL 60604 for the purposes of forensic evaluation for authenticity by OMNI Document Examinations and Robin D. Williams at 205 W. Wacker Drive, Suite 922, Chicago, IL 60606 and for purposes of further examination by the United States as appropriate; and for purposes of deposing Robin D. Williams after examination of these notes is complete so that his expert testimony as well as his report can be submitted as expert testimony in each of the related cases.

In addition to these notes the parties opposing Beal's LNV in these related cases seek examination of all documents relative to the transaction(s) and contract between GMAC-RFC and/or other parties and LNV that gives rise to LNV's claim of conveyance and/or assignment(s) of the aforementioned notes and deeds of trust; all documents and contracts specific to the business relationship(s) between LNV and MGC; between LNV and/or MGC and Dovenmuehle Mortgage Inc.; and between LNV and/or MGC and any and all Lender Processing Services ("LPS") aka Black Knight Financial Services affiliated entities; as well as an examination of the LPS Desktop Database referred to in the Bret Maloney deposition in the Swift case by an expert database examiner and/or the FBI.  LNV submitted to courts affidavits of Bret Maloney in several of the related cases which these courts relied on as truthful testimony.  A comparison Bret Maloney's testimony in the aforementioned deposition as well as a deposition in <u>Harris v. LNV,</u> Case No. 3:12-CV-0552 in the U. S. District Court for the Middle District of Tennessee, Nashville Division, and his many affidavits shows Maloney has committed perjury and his testimony should be stricken. This is not just because he claimed to have never committed a felony crime and the Beal victims discovered he had and have the criminal records to prove it, but because of many inconsistencies with his testimony and statements he made which can be proven false; if the Beal victims can ever in truth be heard by a court, (i.e. have meaningful access to the judiciary, due process and equal protection of the laws.)

18 U.S. Code § 3663A(a) states:

> "Whenever the Attorney General has reason to believe that any person or enterprise may be in possession, custody, or control of any documentary materials relevant to a racketeering investigation, he may, prior to the institution of a civil or criminal proceeding thereon, issue in writing, and cause to be served upon such person, a civil investigative demand requiring such person to produce such material for examination."

Several of the parties opposing Beal's LNV in these related cases have filed <u>Notices of Constitutional Questions</u> and collectively beseech the United States Attorney General to issue such a civil investigative demand to Daniel Andrew Beal ("Beal") requiring him to produce the aforementioned materials for examination. The parties opposing Beal's LNV in these related cases have consistently claimed that they are individually and collectively victims of the crimes of convicted felon Lorraine Brown and victims of a corrupt organization operated by Beal and by his "racketeering activity" as defined by 18 U.S. Code § 1961(1)(B) which states:

> "...'racketeering activity' means any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery),... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud),... section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant),... section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity),..."

From the U.S. Attorneys' Criminal Resource Manual section 2173. Jury Instruction -- Criminally Derived Property - 18 U.S.C. 1957(f)(2):

> "The term 'criminally derived property' means any property constituting or derived from, proceeds obtained from a criminal offense... This term only requires that the property be derived from a criminal offense. There is no definition of criminal offense. Thus, there is no obligation that the property be derived from felonious conduct in violation of state, federal or foreign law... Thus, the government must prove only that defendant knew that the property involved in the monetary transaction constituted, or was derived from, [directly or indirectly], proceeds obtained by some criminal offense. It need not prove that he/she knew the precise nature of the criminal offense from which the proceeds derived."

The United States Attorney General already prosecuted and convicted Lorraine Brown (*United States of America v. Lorraine Brown*, Case No. 3:12-cr-198-J-25 MCR, (M.D. Fla.) Lorraine Brown was convicted of conspiracy to commit mail and wire fraud pursuant to 18 U.S. Code §

1341 and § 1343) for the same activities Beal's LNV and MGC and Beal's LPS agents are using specific to the parties opposing Beal's LNV in these related cases, i.e. falsely fabricating, forging and robo-signing assignments of deed of trust, allonges to notes and affidavits and filing them in county recorders offices via mail and wire transmissions; and or filing them with courts across the country via mail and wire transmissions. Beal and the business entities within his corrupt organization, that include but are not limited to his MGC and LNV, in each of the related cases have further used such forged and robo-signed documents to initiate and perfect foreclosures knowing this is a violation of numerous Texas (and other states') civil statutes and penal code. This is evidenced by a letter sent to his MGC by the Attorney General of Texas dated October 4, 2010. Beal's MGC responded to the Texas Attorney General's letter in a letter dated October 21, 2010 by stating that his MGC had assured it was not using such documents in its Texas foreclosures. (See <u>Exhibit D</u> for copies of these two letters.) Yet numerous Beal victims including the parties opposing Beal's LNV in these related cases (one who resides in Texas) claim Beal's MGC and LNV are doing just that. (In addition to the seven Beal victims whose litigation is being related hereby, at least five other Beal victims are from Texas out of an ever growing group that now exceeds 40 victims from the additional states of California, Oregon, Arizona, North Carolina, New York, New Jersey, Pennsylvania, Ohio, Tennessee, Louisiana, Connecticut, Illinois, Indiana and Michigan. The known Beal victims are certain that once media reports about Beal thousands if not tens of thousands of Beal victims will come forward; and their experiences with the Beal entities within his corrupt organization will be consistent with the pattern of criminal activity these seven Beal victims have expressed through their court pleadings.)

Many Beal victims claim Beal's MGC misappropriated their payments then used these self-serving misappropriations of their funds to falsely claim they had defaulted on their loans so as to justify foreclosure actions where Beal's MGC and LNV then submit to courts as genuine these false, forged and robo-signed documents, all the while knowing they are false, with intent to deceive the courts and deprive the Beal victims of their property for Beal's personal gain.

Whether or not the alleged "original" notes and alleged assignments of deed of trust are genuine rather than forgeries is material as to whether or not LNV has standing to foreclose on the Beal victims' properties. Whether or not Beal's MGC committed intentional servicing fraud by misappropriating payments and claiming false defaults against Beal victims so he could fraudulently foreclose on their properties is also material as to whether or not LNV has standing to foreclose. Likewise these facts are material as to whether or not Beal has committed a pattern of felony crimes and engaged in a pattern of criminal activity defined as a pattern of "racketeering activity" by 18 U.S. Code § 1961(1) & (5). Facts specific to whether or not Beal, his LNV, his LPS agents and his attorneys and other officers of the court have intentionally thwarted justice, tampered with evidence, abused judicial process and engaged in a conspiracy to deny the Beal victims their constitutional rights to due process and equal protection of law under the fifth and fourteenth amendments are material as to whether or not the Beal victims have been unconstitutionally deprived of their property and/or their liberty to make financial decisions regarding their property (the largest single investment they have made in their lives); and whether or not Beal operates a corrupt organization or "racketeering enterprise" as defined by 18 U.S. Code § 1961(4). Additionally the aforementioned facts are material as to whether or not Beal and his LNV and his agents and/or his attorneys have violated 15 U.S. Code § 1692 et al.

The Beal victims have suffered significant financial losses and great emotional anguish and distress extending over many years as a result of the crimes perpetrated against them by Beal, his racketeering enterprise, his LPS agents and his attorneys.

18 U.S. Code § 3663A(a)(2) states:

> "For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern..."

18 U.S. Code § 3663A(a)(3) states:

> "The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."

The Beal victims believe Beal should also pay restitution to the United States; specifically to the courts due to his pattern of abuse and fraud upon the courts. This restitution should be directly used to finance a program to ensure the constitutional rights to due process and equal protection of law of parties like the Beal victims are not violated in the future because the courts lack funds.

18 U.S. Code § 3663A(b)(1) states:

> "The order of restitution shall require that such defendant in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense (A) return the property to the owner of the property or someone designated by the owner; or (B) if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to (i) the greater of (I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing, less (ii) the value (as of the date the property is returned) of any part of the property that is returned."

In addition to restitution pursuant to 18 U.S. Code § 3663A et al, (Mandatory Crime Victims Restitution Act) victims of Beal's crimes are entitled to damages pursuant to 15 U.S. Code § 1692 et al, (Fair Debt Collection Practices Act), including damages for emotional distress and punitive damages, and to treble damages pursuant to 18 U.S. Code § 1961 et al.

A recent decision by the Sixth Circuit Court of Appeals in Case No. 13-3402, *Rick Slorp v. Lerner, Sampson & Rothfuss, et al* Originating Case No. : 2:12-cv-00498 aptly represents the interests of the Beal victims in their related cases and the facts to be determined by the courts hearing these cases. Quoting from this Appellate decision:

> *The district court held that Slorp lacked standing because he sustained no injury as a result of the assignment. In its view the foreclosure action "was filed because of his default under the terms of the Note and Mortgage; not because of the creation of the allegedly 'false' Assignment." Although the foreclosure action caused Slorp to incur legal fees, the court stated, he incurred those fees because he defaulted, "not because of the Assignment." Thus the district court held that Slorp sustained no injury attributable to the allegedly fraudulent assignment.*
>
> *This analysis suffers from one key error: It mistakes the source of the injury alleged in Slorp's complaint. Slorp does not attribute his injuries to the false assignment of his mortgage; rather, he attributes his injuries to the improper foreclosure litigation. According to the complaint, Bank of America (through LSR) filed a foreclosure action against Slorp despite its lack of interest in the mortgage; the defendants misled the trial court by fraudulently misrepresenting Bank of America's interest in the suit; and Slorp incurred damages when he was compelled to defend his interests. If Bank of America had no right to file the foreclosure action, it makes no difference whether Slorp previously had defaulted on his mortgage. Slorp's suit to recover damages caused by Bank of America's lawsuit satisfies each of the three components of Article III standing. That is all that is required for count one, which alleged a violation of the FDCPA—a federal statute. See Hollingsworth v. Perry, 133 S. Ct. 2652, 2667 (2013) (stating that "standing in federal court is a question of federal law, not state law"); see also Coyne v. Am. Tobacco Co., 183 F.3d 488, 495 (6th Cir. 1999). Slorp has established standing to seek relief under the FDCPA, and the district court erred when it held otherwise.*

One glaring difference is that most of the Beal victims <u>NEVER DEFAULTED ON THEIR MORTGAGES!</u> Beal's MGC fabricated false defaults by intentionally misappropriating Beal victims' payments. Beal and his LNV and MGC also acted intentionally in bad faith to prevent

Beal victims from refinancing their mortgages at lower rates, and refuses to report their good payment history to credit reporting agencies which also prevents them from refinancing and causes their credit score to drop by on average 100 points. Modification offers to Beal victims were typically padded with extra fees and predatory rates making the costs so insanely high that no one in their right mind would ever agree to them, but that too was by design, so Beal could say "we offered them a settlement/modification by they turned it down."

Is this what any of the Honorable judges reading this, or anyone else, would want done unto them? *"Do unto others as you would have them do unto you." Jesus of Nazareth - Luke 6:31; Matthew 7:12*


Respectfully Submitted,


_____
Denise Subramaniam

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record, pro-se parties and the United States Attorney General and the Attorney General of the State of Oregon via the Court's CM/ECF system, email, and/or regular mail, and/or certified mail with return receipt requested.

U.S. Department of Justice
Loretta Lynch,
U. S. Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
202-514-2000


Gabrielle D. Richards | Perkins Coie LLP
1120 NW Couch Street
10th Floor
Portland, Oregon 97209-4128
D. +1.503.727.2255
F. +1.503.346.2255
grichards@perkinscoie.com


Respectfully Submitted,

_____
Denise Subramaniam