Denise Subramaniam
Self-represented
13865 SW Walker Rd
Beaverton OR 97005
503-764-5300

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **LNV CORPORATION** | **Civil Case No. 3:14-cv-01836** |
| **Plaintiff,** | |
| **v.** | **DEFENDANT'S MOTION** |
| **DENISE SUBRAMANIAM** | **FOR JUDICIAL NOTICE OF** |
| **pro per** | **ADJUDICATIVE FACTS** |
| **Defendant** | |

## DEFENDANT'S MOTION FOR JUDICIAL NOTICE OF RICK SLORP V. LERNER, SAMPSON & ROTHFUSS, ET AL

Comes now Defendant Denise Subramaniam, representing herself, pursuant to Federal Rule 201

Judicial Notice of Adjudicative Facts and hereby requests this Court take judicial notice of the

documents described herein in and in support states as follows:

1. THE DEFENDANT moves this Court to take judicial notice of:

   ***Rick Slorp v. Lerner, Sampson & Rothfuss, et al***, Case No. 13-3402, United States
   Court of Appeals for the Sixth Circuit, Originating Case No. : 2:12-cv-00498. (Attached
   as Exhibit A)

2. This case is similar to the present case in that it originated through a series of foreclosure

   actions where the foreclosing party lacked standing to foreclose due to a forged

   assignment of deed of trust. Quoting the Appellate justices:

*The law firm of Lerner, Sampson & Rothfuss (LSR) filed that foreclosure action against Rick Slorp on behalf of its client, Bank of America. Because Countrywide had originated Slorp's mortgage, LSR attached to the complaint an assignment purporting to assign an interest in Slorp's mortgage to Bank of America. The state court awarded judgment to Bank of America. Slorp subsequently retained counsel who questioned the assignment's validity, and he sought to depose Shellie Hill, the LSR employee who had executed the assignment on behalf of Mortgage Electronic Registration Systems, Inc. (MERS). Bank of America promptly dismissed the foreclosure action, and the state court vacated its judgment.*

3. Slorp then filed an action against LSR, Hill, MERS, and Bank of America to recover the

   attorney's fees he expended in the foreclosure action. The Appellate justices found:

   *The gravamen of the complaint was that the defendants engaged in unfair, deceptive, and fraudulent debt-collection practices when they filed an illegitimate foreclosure action against Slorp. The defendants moved to dismiss the complaint, and as that motion was pending, Slorp sought leave to amend his complaint to add a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. The district court granted the motion to dismiss and denied the motion for leave to amend the complaint. We now affirm the dismissal of the original complaint but reverse the district court's denial of the motion for leave to amend the complaint. We remand the case to the district court with instructions to permit Slorp to amend his complaint to add a RICO claim.*

4. Slorp originally alleged that "filing and maintaining the foreclosure action with the use of

   false statements and evidence constitute[d] a false, deceptive, and/or misleading practice

   in an attempt to collect a debt." Slorp filed a motion for leave to file a second amended

   complaint, together with his proposed second amended complaint. The proposed

   complaint expanded the factual allegations and added a fifth count alleging a violation of

   RICO, 18 U.S.C. § 1961. The defendants opposed Slorp's request for leave to amend.

   The district court denied Slorp's motion for leave and dismissed the complaint.

5. The district court also concluded that Slorp had not suffered damages attributable to the

   allegedly fraudulent assignment because his exposure to the foreclosure action resulted

from his default on the promissory note rather than any of the defendants' conduct. The court then rejected each of Slorp's claims on the merits.

6.  Ultimately the Appellate justices determined:

> *The district court held that Slorp lacked standing because he sustained no injury as a result of the assignment. In its view the foreclosure action "was filed because of his default under the terms of the Note and Mortgage; not because of the creation of the allegedly 'false' Assignment." Although the foreclosure action caused Slorp to incur legal fees, the court stated, he incurred those fees because he defaulted, "not because of the Assignment." Thus the district court held that Slorp sustained no injury attributable to the allegedly fraudulent assignment.*

> *This analysis suffers from one key error: It mistakes the source of the injury alleged in Slorp's complaint. Slorp does not attribute his injuries to the false assignment of his mortgage; rather, he attributes his injuries to the improper foreclosure litigation. According to the complaint, Bank of America (through LSR) filed a foreclosure action against Slorp despite its lack of interest in the mortgage; the defendants misled the trial court by fraudulently misrepresenting Bank of America's interest in the suit; and Slorp incurred damages when he was compelled to defend his interests. If Bank of America had no right to file the foreclosure action, it makes no difference whether Slorp previously had defaulted on his mortgage. Slorp's suit to recover damages caused by Bank of America's lawsuit satisfies each of the three components of Article III standing. That is all that is required for count one, which alleged a violation of the FDCPA—a federal statute. See Hollingsworth v. Perry, 133 S. Ct. 2652, 2667 (2013) (stating that "standing in federal court is a question of federal law, not state law"); see also Coyne v. Am. Tobacco Co., 183 F.3d 488, 495 (6th Cir. 1999). Slorp has established standing to seek relief under the FDCPA, and the district court erred when it held otherwise.*

7.  Federal Rule of Evidence 201(c)(2) - Judicial Notice of Adjudicative Facts states:

> "*The court **must** take judicial notice if a party requests it and the court is supplied with the necessary information.*"

The necessary information is supplied herein as attached Exhibit A.

8.  Defendant also filed a Motion for Judicial Notice of Adjudicative Fact in the Criminal Indictment and Conviction of Lorraine Brown for Conspiracy to Commit Mail and Wire Fraud in support of her Motion to Dismiss filed with this court on Friday March 6, 2015.

Collectively the Beal victims, specifically Beal victims as parties identified in her Notice

of Related Cases, have experienced as pro-se litigants that in spite of the language of the

law requiring courts to take judicial notice of adjudicative fact courts have routinely

ignored and even denied their motions for judicial notice. This violates federal rules of

evidence and constitutes a deprivation of our constitutional rights to due process and

equal protection of law.

9.  Federal Rule 301 Presumptions in Civil Cases states:

> "...unless a federal statute or these rules provide otherwise, the party against
> whom a presumption is directed has the burden of producing evidence to rebut
> the presumption. But this rule does not shift the burden of persuasion, which
> remains on the party who had it originally."

10. LNV as the plaintiff had the burden of proof or persuasion in the present case. LNV

submitted to the court various mortgage related documents including an assignment of

deed of trust and allonges to the note as evidence of its standing to foreclose on

Defendant's property. Defendant challenges the authenticity of these documents.

11. Deed assignments, since they are filed with the property recorders' office carry a

presumptive burden. Presumptions governed by Rule 301 are given the effect of placing

upon the opposing party (Defendant in the present case) the burden of establishing the

nonexistence of the presumed fact, once the party invoking the presumption establishes

the basic facts giving rise to it.

12. Adjudicative fact in the criminal indictment and conviction of Lorraine Brown for

conspiracy to commit mail and wire fraud defeats the presumption that deed assignments

and other documents filed with a property recorders' office must be genuine.

Adjudicative fact in this criminal conviction it is that <u>over 1 million fraudulently signed</u> <u>and notarized mortgage-related documents were produced through the crimes of Lorraine</u> <u>Brown and her co-conspirators and filed with property recorders' offices across the</u> <u>country</u>. This adjudicative fact defeats the presumption invoked by LNV.

13. Likewise judges in many federal and state courts seem to have a presumption that since the homeowner "defaulted" on their mortgage they are not entitled to protection of the law or to damages as a result of a continued onslaught of foreclosure attempts by parties that lack standing to foreclose on their properties. Adjudicative fact in *Rick Slorp v.* *Lerner, Sampson & Rothfuss, et al* defeats this biased and unconstitutional presumption.

14. Defendant has consistently claimed, and the evidence supports her claim, that she NEVER DEFAULTED ON HER MORTGAGE! Defendant has also consistently claimed LNV is not a party of interest to either her note or her deed of trust and therefore has no standing to foreclose on her property.

15. Furthermore, Defendant has consistently claimed she is a victim of a crime and the adjudicative facts in *United States of America v. Lorraine Brown*, Case No. 3:12-cr-198-J-25 MCR, (M.D. Fla.) support this claim; and that she is entitled to restitution for the damages she has suffered. This claim is supported by adjudicative fact in *Rick Slorp v.* *Lerner, Sampson & Rothfuss, et al*

Respectfully Submitted,

_____

Denise Subramaniam

# DEFENDANT'S EXHIBIT A

Adjudicative Fact in *Rick Slorp v. Lerner, Sampson & Rothfuss, et al*

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: September 29, 2014

Mr. Troy John Doucet
Doucet & Associates
700 Stonehenge Parkway
Suite 2-B
Dublin, OH 43017

> Re: Case No. 13-3402, *Rick Slorp v. Lerner, Sampson & Rothfuss, et al*
> Originating Case No. : 2:12-cv-00498

Dear Counsel:

The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Bryant L. Crutcher
Case Manager
Direct Dial No. 513-564-7013

cc: Mr. Rick D. DeBlasis
    Mr. John P. Hehman
    Ms. Kimberlee Shay Rohr
    Mr. James W. Sandy
    Brad Jonathon Terman
    Mr. James S. Wertheim

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0745n.06

No. 13-3402

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RICK A. SLORP, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LERNER, SAMPSON & ROTHFUSS; BANK OF | ) | COURT FOR THE |
| AMERICA, N.A.; SHELLIE HILL; | ) | SOUTHERN DISTRICT OF |
| MORTGAGE ELECTRONIC REGISTRATION | ) | OHIO |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    MOORE, GIBBONS, and SUTTON, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** This case relates to alleged misconduct in a

separate state-court foreclosure action. The law firm of Lerner, Sampson & Rothfuss (LSR) filed

that foreclosure action against Rick Slorp on behalf of its client, Bank of America. Because

Countrywide had originated Slorp's mortgage, LSR attached to the complaint an assignment

purporting to assign an interest in Slorp's mortgage to Bank of America. The state court

awarded judgment to Bank of America. Slorp subsequently retained counsel who questioned the

assignment's validity, and he sought to depose Shellie Hill, the LSR employee who had executed

the assignment on behalf of Mortgage Electronic Registration Systems, Inc. (MERS). Bank of

America promptly dismissed the foreclosure action, and the state court vacated its judgment.

Slorp then filed this action against LSR, Hill, MERS, and Bank of America to recover the

attorney's fees he expended in the foreclosure action. The gravamen of the complaint was that

the defendants engaged in unfair, deceptive, and fraudulent debt-collection practices when they

Case 3:14-cv-01836-MQ   Document 60   Filed 06/18/15   Page 9 of 36
Case: 13-3402   Document: 61-2   Filed: 09/29/2014   Page: 2    (3 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

filed an illegitimate foreclosure action against Slorp.  The defendants moved to dismiss the complaint, and as that motion was pending, Slorp sought leave to amend his complaint to add a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68.  The district court granted the motion to dismiss and denied the motion for leave to amend the complaint.  We now affirm the dismissal of the original complaint but reverse the district court's denial of the motion for leave to amend the complaint.  We remand the case to the district court with instructions to permit Slorp to amend his complaint to add a RICO claim.

I.

LSR filed a separate foreclosure action on behalf of Bank of America in the Franklin County Court of Common Pleas in July 2010.  Bank of America attached to its complaint a promissory note dated December 14, 2007.  The note named Countrywide Bank, FSB as the lender and Slorp as the borrower.  Bank of America also attached a mortgage that secured the promissory note with Slorp's home.  The poor printing quality renders the mortgage difficult to read, but it lists Countrywide Bank, FSB as the lender and MERS as the lender's nominee.

Bank of America also attached a document, captioned "Assignment of Mortgage," which states that MERS "does hereby assign to BAC Home Loans Servicing, L.P.[1] fka Countrywide Home Loans Servicing, L.P. . . . all of its interest in that certain mortgage from Rick A. Slorp . . . to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, FSB."  The assignment was executed on behalf of MERS, "as nominee for Countrywide Bank, FSB, its successors and assigns," by Shellie Hill, who purported to be an assistant secretary and vice president of MERS. The assignment was dated July 9, 2010, and was prepared by LSR.

---

[1]Slorp alleges that BAC Home Loans Servicing was formerly known as Countrywide Home Loans Servicing and is currently an arm of Bank of America, N.A.

-2-

Case 3:14-cv-01836-MO Document 60 Filed 06/18/15 Page 10 of 36
Case: 13-3402 Document: 61-2 Filed: 09/29/2014 Page: 3 (4 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

After Slorp answered the foreclosure complaint, Bank of America moved for summary judgment. The court of common pleas granted that motion. Slorp moved for relief from the judgment in July 2011, and in February 2012 Slorp served Hill with a subpoena *duces tecum*, demanding that she "appear at an evidentiary hearing and bring documents demonstrating her relationship with [Bank of America] and its predecessors, documents demonstrating her appointment as Assistant Secretary and Vice president of Defendant MERS, and other documents related to the Assignment." One month later—on the day before Hill was scheduled to testify at the evidentiary hearing—Bank of America voluntarily dismissed the foreclosure action, and the state court vacated the judgment.

On June 7, 2012, Slorp filed this action in the United States District Court for the Southern District of Ohio against LSR, Bank of America, Hill, and MERS. The four-count complaint alleged a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e; a violation of the Ohio Consumer Sales Practices Act (CSPA), Ohio Rev. Code §§ 1345.02 and 1345.03; falsification in violation of Ohio Rev. Code § 2921.13; and civil conspiracy to commit falsification.

According to the complaint, Hill "falsely executed" the assignment because Countrywide Bank did not exist on July 9, 2010, and Hill was not an employee of MERS on that date. Hill acted at the behest of LSR and with Bank of America's knowledge, said Slorp, and her "false statement was made with the purpose to mislead the judge in the performance of her official function within the foreclosure action." Slorp alleged that "filing and maintaining the foreclosure action with the use of false statements and evidence constitute[d] a false, deceptive, and/or misleading practice in an attempt to collect a debt." Slorp sought actual damages of

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

$8,934.44, treble damages of $26,803.32, statutory damages of $1,000, non-economic damages of $5,000, and fees and costs.

Bank of America and MERS moved to dismiss Slorp's complaint, and LSR and Hill filed a separate motion to dismiss on the same day. After the parties finished briefing those motions, Slorp filed an amended complaint without first seeking the defendants' consent or the court's leave. The parties held a pretrial conference two days later, and Slorp pledged to file a motion for leave to amend within five days of that conference. Slorp then filed a motion for leave to file a second amended complaint, together with his proposed second amended complaint. The proposed complaint expanded the factual allegations and added a fifth count alleging a violation of RICO, 18 U.S.C. § 1961. The defendants opposed Slorp's request for leave to amend.

The district court denied Slorp's motion for leave and dismissed the complaint. The court held that Slorp lacked standing to challenge the validity of the assignment because he was not a party to the assignment. The district court also concluded that Slorp had not suffered damages attributable to the allegedly fraudulent assignment because his exposure to the foreclosure action resulted from his default on the promissory note rather than any of the defendants' conduct. The court then rejected each of Slorp's claims on the merits.

Turning to Slorp's motion for leave to amend the complaint, the district court first noted that the proposed amended complaint "provides no new factual allegations that would alter the Court's analysis" of the merits of Slorp's claims. The court then denied the request for leave to amend because it held that the RICO claim in the proposed amended complaint was not viable. Slorp had not identified any injury caused by the assignment, the court stated, and he therefore would not be able to obtain relief under RICO. Slorp timely appealed.

Case 3:14-cv-01836-MO    Document 60    Filed 06/18/15    Page 12 of 36
Case: 13-3402    Document: 61-2    Filed: 09/29/2014    Page: 5    (6 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

## II.

We begin with standing. Article III of the United States Constitution limits the power of the federal judiciary to the adjudication of certain "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. From this textual limitation and "the separation-of-powers principles underlying that limitation," the federal courts have "deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386–88 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Three components comprise this "irreducible constitutional minimum": (1) the plaintiff must have suffered an "injury in fact," (2) that injury must be "fairly traceable" to the defendant's challenged conduct, and (3) it must be likely that the plaintiff's injury would be redressed by the requested relief. *Lujan*, 504 U.S. at 560–61. At its essence, Article III standing requires the plaintiff to have some personal and particularized stake in the dispute. *See Raines v. Byrd*, 521 U.S. 811, 818–19 (1997).

To determine whether Slorp had Article III standing, we focus on whether Slorp sustained an injury that was traceable to the defendants' conduct—the first two of the three "core components." This "inquiry often turns on the nature and source of the claim asserted." *Raines*, 521 U.S. at 818–19 (internal quotation marks omitted). And so it does here.

The district court held that Slorp lacked standing because he sustained no injury as a result of the assignment. In its view the foreclosure action "was filed because of his default under the terms of the Note and Mortgage; not because of the creation of the allegedly 'false' Assignment." Although the foreclosure action caused Slorp to incur legal fees, the court stated, he incurred those fees because he defaulted, "not because of the Assignment." Thus the district court held that Slorp sustained no injury attributable to the allegedly fraudulent assignment.

-5-

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

This analysis suffers from one key error: It mistakes the source of the injury alleged in Slorp's complaint. Slorp does not attribute his injuries to the false assignment of his mortgage; rather, he attributes his injuries to the improper foreclosure litigation. According to the complaint, Bank of America (through LSR) filed a foreclosure action against Slorp despite its lack of interest in the mortgage; the defendants misled the trial court by fraudulently misrepresenting Bank of America's interest in the suit; and Slorp incurred damages when he was compelled to defend his interests. If Bank of America had no right to file the foreclosure action, it makes no difference whether Slorp previously had defaulted on his mortgage.[2] Slorp's suit to recover damages caused by Bank of America's lawsuit satisfies each of the three components of Article III standing. That is all that is required for count one, which alleged a violation of the FDCPA—a federal statute. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) (stating that "standing in federal court is a question of federal law, not state law"); *see also Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 495 (6th Cir. 1999). Slorp has established standing to seek relief under the FDCPA, and the district court erred when it held otherwise.

## III.

Whether Ohio law countenances Slorp's state-law claims requires that we clarify the circumstances under which a mortgagor can challenge the validity of an assignment that purportsto assign the mortgagee's interest in the mortgage to another entity.

Much of the district court's analysis was taken from *Livonia Properties Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC*, where we held that a homeowner did not have standing to challenge the validity of a home-loan assignment in an action contesting a

---

[2] Although whether Slorp had defaulted is not pertinent to the actual legal issue, whether Slorp had defaulted remains an issue in the case. Slorp did not concede default in his complaint, and the defendants' assertions that he did default may not be considered by the district court in connection with a motion to dismiss testing Slorp's allegations.

Case 3:14-cv-01836-MO Document 60 Filed 06/18/15 Page 14 of 36
Case: 13-3402 Document: 61-2 Filed: 09/29/2014 Page: 7 (8 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

foreclosure. 399 F. App'x 97, 102 (6th Cir. 2010). The type of standing we discussed in *Livonia Properties* is a common-law analogue of statutory standing, wholly unrelated to Article III standing. It is entirely a creature of state contract law and is assessed in conjunction with the merits of the claim, not as a threshold issue. Assignments are contracts and, as a general matter, are regulated by the common law of contracts. *See* 6A C.J.S. *Assignments* § 123 (2014). A person who is neither a party to the contract nor in privity with the parties, and who is not a third-party beneficiary of the contract, is said to lack "standing" to enforce the contract's terms and to challenge its validity. *See Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602–03 (7th Cir. 2001) (analyzing contractual privity as an issue of state-law standing); *City of Akron v. Castle Aviation, Inc.*, No. 16057, 1993 WL 191966, at *2 (Ohio Ct. App. June 9, 1993) ("As a general rule a non-party may not assert contract rights unless it is a third-party beneficiary under the contract or such standing is conferred by statute."). *Livonia Properties* was one of innumerable cases recognizing that this general contract principle extends to assignments, subject to various caveats and exceptions. *See also, e.g.*, *Druso v. Bank One of Columbus*, 705 N.E.2d 717, 721–22 (Ohio Ct. App. 1997).

We analyze the district court's holding in more detail than might ordinarily be necessary because our *Livonia Properties* opinion has confounded some courts and litigants, *see, e.g.*, *Etts v. Deutsche Bank Nat'l Trust Co.*, No. 13-11588, 2014 WL 645358, at *4 (E.D. Mich. Feb. 19, 2014) (noting that the inexact use of the term "standing" to denote a homeowner's eligibility to challenge certain aspects of a foreclosure made it "unclear whether Defendants are challenging Plaintiffs' standing under Article III of the Constitution, under the Michigan statutory scheme, or both"), and has generally received more attention than an unpublished opinion might warrant.

-7-

Case 3:14-cv-01836-MQ   Document 60   Filed 06/18/15   Page 15 of 36
Case: 13-3402   Document: 61-2   Filed: 09/29/2014   Page: 8          (9 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

**A.**

The district court held, and the defendants now maintain, that Slorp lacked standing to assert his claims because an individual who is not a party to an assignment may not attack the assignment's validity. We differ with this interpretation of *Livonia Properties*. The sweeping rule that the district court extrapolated from *Livonia Properties* dwarfs our actual holding in that case. The district court in *Livonia Properties* stated that an individual "who is not a party to an assignment lacks standing to challenge that assignment," and our *Livonia Properties* opinion quoted and endorsed that general statement, perhaps inartfully. 399 F. App'x at 102. But we quickly limited the scope of that rule, clarifying that a non-party homeowner may challenge the validity of an assignment to establish the assignee's lack of title, among other defects. *Id.* (citing 6A C.J.S. *Assignments* § 132); *see also Carmack v. Bank of N.Y. Mellon*, 534 F. App'x 508, 511–12 (6th Cir. 2013) ("*Livonia*'s statement on standing should not be read broadly to preclude all borrowers from challenging the validity of mortgage assignments under Michigan law."). Thus a non-party homeowner may challenge a putative assignment's validity on the basis that it was not effective to pass legal title to the putative assignee. *See Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 361 (6th Cir. 2013); *Livonia Props.*, 399 F. App'x at 102; *see also Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353–54 (1st Cir. 2013); 6A C.J.S. *Assignments* § 132 ("The debtor may also question a plaintiff's lack of title or the right to sue.").

There was no dispute in *Livonia Properties* that the assignor had assigned title to the assignee; rather, the homeowner lacked "standing" to assert that the assignment was not properly recorded and suffered from technical defects that prevented the assignee from establishing record chain of title under Michigan law. In this case, by contrast, Slorp alleges that Bank of America, the putative assignee, held neither his mortgage nor the attendant promissory note when it filed

Case 3:14-cv-01836-MO   Document 60   Filed 06/18/15   Page 16 of 36
Case: 13-3402   Document: 61-2   Filed: 09/29/2014   Page: 9      (10 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

the foreclosure action because the parties lacked the authority to assign his mortgage to Bank of
America when they purported to do so. That distinction makes all the difference. *See Conlin*,
714 F.3d at 361 (stating that a third party may challenge an assignment if that challenge would
render the assignment void). Because Slorp alleges that the assignment was fraudulent and that
Bank of America therefore did not hold title at the time of the foreclosure,[3] *Livonia Properties*
does not bar his suit—in fact, it supports it.

**B.**

*Livonia Properties* also does not govern Slorp's standing to assert the statutory claims
that he alleged in his complaint. *Livonia Properties* discusses the defenses that are available to
homeowners who face foreclosure—*i.e.*, the circumstances in which a homeowner may impede
foreclosure by attacking the assignment of the mortgage. *See* 399 F. App'x at 102–03 (relying in
large part on 6A C.J.S. *Assignments* § 132, which is captioned "Defenses"). That opinion says
nothing about when a homeowner may bring suit to seek redress for fraudulent or deceptive acts
in connection with a foreclosure.

Insofar as Ohio law affects Slorp's standing to bring the CSPA, falsification, and
conspiracy claims, the relevant law is the statutes that create those causes of action. Like the
federal courts, Ohio courts distinguish between constitutional and statutory standing. Ohio's
constitutional standing doctrine resembles its federal counterpart. *See Fed. Home Loan Mortg.*

---

[3] In Slorp's memorandum in opposition to the defendants' motion to dismiss, he stated
that he "has not attacked the validity of the assignment." The district court's opinion quoted this
statement, which could be interpreted as an admission that the assignment was valid and
effective. But this interpretation would belie the allegations of fraud in Slorp's complaint, and
when that language is read in context, it is clear that he *does* dispute the validity of the
assignment. The statement relates to his requested relief rather than his allegations: He states
that he does not presently seek a declaration of the invalidity of the assignment; he only seeks
damages for the defendants' prior fraudulent conduct. This interpretation comports with the
allegations in the complaint and the arguments in his briefs, all of which maintain that the
assignment was invalid.

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

*Corp. v. Schwartzwald*, 979 N.E.2d 1214, 1218–20 (Ohio 2012). By contrast, the Ohio state courts repeatedly have held that statutory standing is a question to be resolved with reference to the specific language of the applicable statute rather than to abstract standing principles. *See, e.g.*, *Ohio Valley Assocd. Builders & Contractors v. DeBra-Kuempel*, 949 N.E.2d 582, 585–87 (Ohio Ct. App. 2011) (discussing statutory standing and stating that the "only issue" is whether the plaintiff was an "interested party" as defined in the relevant statute, "common-law standing notwithstanding"); *Rose-Gulley v. Spitzer Akron, Inc.*, No.21778, 2004 WL 1736982, at \*3 (Ohio Ct. App. Aug. 4, 2004) (holding that plaintiff lacked standing to assert CSPA claim because she was not a "consumer" within the meaning of that statute). "To incorporate common-law standing principles when the legislature has specifically authorized a party to bring suit is simply inappropriate." *Ohio Valley Associated Builders & Contractors v. Indus. Power Sys., Inc.*, 941 N.E.2d 849, 856 (Ohio Ct. App. 2010).

Accordingly, to determine whether Slorp had standing to bring CSPA, falsification, and conspiracy claims against the defendants, we look only to the language of those statutes. *See Kuempel*, 949 N.E.2d at 586–87 ("[C]ommon-law standing requirements, such as establishing a 'personal stake' in a case, do not apply when the issue is statutory standing under [a statute]."). The principles outlined in *Livonia Properties* are irrelevant here.

## IV.

Because Slorp has Article III standing and *Livonia Properties* does not bar his claim, we turn to the merits. Slorp alleged four causes of action in his initial complaint: a violation of the FDCPA, 15 U.S.C. § 1692e; a violation of the CSPA, Ohio Rev. Code §§ 1345.02 and 1345.03; falsification in violation of Ohio Rev. Code § 2921.13; and civil conspiracy to commit falsification. We take each claim in turn.

-10-

Case 3:14-cv-01836-MO  Document 60  Filed 06/18/15  Page 18 of 36
Case: 13-3402  Document: 61-2  Filed: 09/29/2014  Page: 11  (12 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

## A.

The district court held that Slorp's FDCPA claim was time-barred because he failed to file suit within the one-year statute of limitations. Slorp acknowledges that an FDCPA action generally must be brought "within one year from the date on which the violation occurs," 15 U.S.C. § 1692k(d), but asks us to apply the continuing-violation doctrine to rescue his claim. Slorp also maintains that Bank of America, LSR, and Hill committed a second, unprecluded violation of the FDCPA when Hill submitted an affidavit to the district court affirming that she was authorized to execute the assignment. We agree with the district court.

## 1.

The continuing-violation doctrine provides that violations "which occur beyond the limitations period are actionable where a plaintiff challenges not just one incident of unlawful conduct but an unlawful practice that continues into the limitations period." *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992) (internal quotation marks and alterations omitted). This court historically recognized two distinct categories of continuing violations, serial and systemic, each of which constituted a narrowly limited exception to the general rule that the limitations clock begins to run at the time of the act that gives rise to the claim. *See LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995). In *National Railroad Passenger Corp. v. Morgan*, however, the Supreme Court effectively eliminated the serial continuing-violation doctrine when it held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. 101, 113 (2002). We have since held that "plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

are sufficiently related to those occurring within the limitations period." *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003).

Although we continue to recognize systemic continuing violations, Slorp's invocation of the continuing-violation doctrine in the FDCPA context is problematic. Courts have been "extremely reluctant" to extend the continuing-violation doctrine beyond the context of Title VII, *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007) (internal quotation marks omitted), and we have never applied the continuing-violation doctrine to an FDCPA claim.

At least one court of appeals has stated in *dicta* that a defendant's collection activities might amount to a continuing violation of the FDCPA. *See Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 n.3 (10th Cir. 2010). But that case included FDCPA claims related to an allegedly baseless foreclosure action, and the court concluded that the deceptive acts alleged in the complaint, including the foreclosure action, were discrete acts rather than continuing violations. *Id.* at 497. No court of appeals has held that debt-collection litigation (or a misleading statement made in connection with that litigation) is a continuing violation of the FDCPA. *See Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 131 (3d Cir. 2009) (per curiam) (holding that ongoing debt-collection litigation does not constitute a continuing violation of the FDCPA); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (stating that the FDCPA's statute of limitations begins to run when the debt-collection suit is filed rather than when the trial court issues its judgment).[4]

---

[4]Most district court decisions have held that the continued prosecution of a collection suit is not a continuing violation under the FDCPA. *See, e.g.*, *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 46–47 (D. Mass. 2012); *Ball v. Ocwen Loan Servicing, LLC*, No. 1: 12-CV-0604, 2012 WL 1745479, at *5 (N.D. Ohio May 16, 2012); *Wilhelm v. Credico, Inc.*, 455 F. Supp. 2d 1006, 1009 (D.N.D. 2006); *Egbarin v. Lewis, Lewis & Ferraro LLC*, No.

Case 3:14-cv-01836-MO    Document 60    Filed 06/18/15    Page 20 of 36
Case: 13-3402    Document: 61-2    Filed: 09/29/2014    Page: 13    (14 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

Application of the continuing-violation doctrine to FDCPA claims would be inconsistent with the principles underlying the Supreme Court's limited endorsement of that doctrine in *Morgan*. In *Morgan* the Court differentiated between discrete acts and continuing violations. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and each of those discrete acts "constitutes a separate actionable unlawful employment practice." 536 U.S. at 114 (internal quotation marks omitted). Only those discrete acts that occurred within the limitations period are actionable; "[a]ll prior discrete discriminatory acts are untimely filed and no longer actionable." *Id.* at 114–15. Claims of hostile work environment, by contrast, "are different in kind from discrete acts. Their very nature involves repeated conduct." *Id* at 115. "It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* Liability attaches to a discrete act as soon as that act occurs, whereas liability for a hostile work environment depends upon "proof of repeated conduct extending over a period of time." *Id.* at 120 n.12. A plaintiff therefore may assert a claim for hostile work environment based on a series of component acts provided that just one of those acts occurred within the filing period. *Id.* at 117. All of the acts that comprise a claim for hostile work environment, "including those that would otherwise fall outside of the filing period," are deemed timely if one of those acts occurred within the limitations window. *Sasse v. U.S. Dep't of Labor*, 409 F.3d 773, 782 (6th Cir. 2005) (citing *Morgan*, 536 U.S. at 117).

The institution and maintenance of the debt-collection suit in this case is much more akin to a discrete act of discrimination than a hostile work environment. As a general matter, when a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the

3:00-CV-1043, 2006 WL 236846, at \*9 (D. Conn. Jan. 31, 2006) (collecting cases); *Calka v. Kucker, Kraus & Bruh, LLP*, No. 98-CV-0990, 1998 WL 437151, at \*3 (S.D.N.Y. Aug. 3, 1998).

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

FDCPA claim—insofar as it is viable—accrues on that date. Although the subsequent prosecution of that suit may exacerbate the damages, the continued accrual of damages does not diminish the fact that the initiation of the suit was a discrete, immediately actionable event.[5]

To be sure, an individual will not always recognize that the debt-collection suit is deceptive or unfair on the date it is filed. Here, for example, Slorp may have learned that the assignment was fraudulent—and that the foreclosure action was illegitimate—after the limitations period expired. But tolling doctrines such as fraudulent concealment and the discovery rule exist to address such situations. The continuing-violation doctrine is concerned with whether the initial act gives rise to an actionable claim rather than whether the tortfeasor concealed that claim. *See Morgan*, 536 U.S. at 120 n. 12.

Accordingly, the district court correctly held that the continuing-violation doctrine cannot rescue Slorp's FDCPA claim from the limitations clock.

**2.**

In Slorp's proposed amended complaint he alleged that the defendants again violated the FDCPA when they opposed Slorp's motion for relief from the judgment. We disagree.

A plaintiff who alleges several FDCPA violations, some of which occurred within the limitations period and some of which occurred outside that window, will be barred from seeking relief for the untimely violations, but that plaintiff may continue to seek relief for those violations that occurred within the limitations period. *See Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 301 (6th Cir. 2008). But the violations that occur within the limitations

---

[5]Courts are divided on whether the relevant date for purposes of the accrual of an FDCPA claim is the date on which the suit is filed or the date on which the defendant is served. *See Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010). Because Bank of America's foreclosure action was filed and served more than one year before Slorp filed suit, we need not resolve that dilemma.

-14-

Case 3:14-cv-01836-MQ  Document 60  Filed 06/18/15  Page 22 of 36
Case: 13-3402  Document: 61-2  Filed: 09/29/2014  Page: 15  (16 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

window must be discrete violations; they cannot be the later effects of an earlier time-barred violation. *Id.* at 302 (citing *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5).

Even if the defendants misrepresented their interests in Slorp's mortgage when they opposed his motion for relief, their opposition to Slorp's motion is not independently actionable because it merely gave "present effect" to deceptive conduct that had occurred outside the limitations window. *See Ledbetter*, 550 U.S. at 628. The defendants' deceptive conduct, as alleged in the complaint, consisted of their initiation of unfair, misleading, and abusive legal process against Slorp and their concurrent docketing of a fraudulent assignment. The defendants did not commit a fresh violation of the FDCPA each time they filed pleadings or memoranda reaffirming the legitimacy of their state-court suit; rather, those were the continuing effects of their initial violation. "[S]uch effects in themselves have no present legal consequences." *See id.* (internal quotation marks omitted). *Ledbetter* held that the plaintiff was not denied equal pay each time she received a paycheck reflecting a discriminatory pay disparity.[6] *Id.* It follows that Slorp was not deceived or abused anew each time the defendants reaffirmed their deceptive statements throughout the litigation. Amendment of the complaint to allege a second violation of the FDCPA therefore would have been futile.

## B.

The district court dismissed the CSPA claim against LSR—the only defendant named in count two—because there was no "consumer transaction." The CSPA prohibits an unfair, deceptive, or unconscionable act or practice by a supplier "in connection with a consumer

---

[6]Although Congress subsequently enacted a statute superseding *Ledbetter* and resetting the statute of limitations each time an employee receives a paycheck reflecting a discriminatory pay disparity, that statute does not disturb *Ledbetter*'s interpretation of the continuing-violation doctrine more generally. *See Lewis v. City of Chicago*, 560 U.S. 205, 214–15 (2010).

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

transaction." Ohio Rev. Code §§ 1345.02(A), 1345.03(A). The statute defines a consumer transaction as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." § 1345.01(A). The statute expressly excludes from this definition transactions between financial institutions, as defined in section 5725.01, and their customers. § 1345.01(A). The district court applied this exception to preclude Slorp's CSPA claim against LSR.

In his reply brief Slorp concedes that *Anderson v. Barclay's Capital Real Estate*, 989 N.E.2d 997 (Ohio 2013), bars CSPA claims related to the servicing of residential mortgage loans. He also concedes that Bank of America is a mortgage servicer. His sole argument on appeal is that neither *Anderson* nor any other case or statute bars CSPA claims against the law firms that represent mortgage servicers in foreclosure litigation.

We need not determine whether the CSPA countenances claims against law firms engaged in mortgage litigation because the state-court foreclosure action was not a "consumer transaction." The CSPA defines a consumer transaction as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." § 1345.01(A). This definition does not encompass a lawsuit: Lawsuits do not involve the transfer of goods or services for personal purposes. Slorp therefore cannot bring a CSPA claim arising from the state-court foreclosure litigation.

When a debt collection agency files a lawsuit to enforce a debt stemming from a consumer transaction, the consumer may bring suit against the debt collection agency under the CSPA. *Celebrezze v. United Research, Inc.*, 482 N.E.2d 1260, 1262 (Ohio Ct. App. 1984). This

-16-

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

is because "[s]ince the Act provides consumer protection through all phases of the transaction, the seller cannot relieve itself of its duty to act fairly by assigning its claim to an agent or assignee and having that assignee conduct practices prohibited by the Act. Such a narrow construction of [Ohio Rev. Code §] 1345.01(C) would defeat the purpose of the Act." *Id.* Here, LSR brought an allegedly deceptive lawsuit on behalf of Bank of America, a mortgage servicer. The Ohio Supreme Court recently held that the servicing of residential mortgages is not a consumer transaction under the CSPA "because there is no 'transfer of an item of goods, a service, a franchise, or an intangible, to an individual.'" *Anderson*, 989 N.E.2d at 1001 (quoting Ohio Rev. Code § 1345.01(A)). Because the lawsuit was in furtherance of the servicing of a residential mortgage, which is not a consumer transaction, the lawsuit is not an act in furtherance of a consumer transaction as in *Celebrezze* and the lawsuit may not be regulated under the CSPA.

Slorp also contends that LSR is liable under the CSPA because "violating the FDCPA has been determined by an Ohio district court to violate the CSPA, and that decision was made available for public inspection under Ohio Revised Code § 1345.05(A)(3)." For that proposition he cites *Becker v. Montgomery, Lynch*, No. 02-874, 2003 WL 23335929 (N.D. Ohio Feb. 26, 2003). *Becker* stated that "any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice" in violation of the CSPA. *Id.* at *2. That interpretation of the CSPA overlooks substantial disparities in the language of the two statutes, and *Becker* thus paints with too broad a brush. Although conduct that violates the FDCPA often will violate the CSPA as well, neither the courts nor the parties should simply assume that the two statutes are coterminous without examining whether the alleged conduct is expressly prohibited under each statute.

Case 3:14-cv-01836-MO   Document 60   Filed 06/18/15   Page 25 of 36
Case: 13-3402   Document: 61-2   Filed: 09/29/2014   Page: 18   (19 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

Thus the district court properly dismissed Slorp's CSPA claim.

## C.

Slorp alleged that Hill and LSR violated the Ohio falsification statute, Ohio Rev. Code § 2921.13, when Hill falsely represented that she was authorized to execute the assignment on behalf of MERS. The district court dismissed Slorp's falsification claim because neither Hill nor LSR had been charged with criminal falsification. Section 2921.13 is a criminal statute. It provides that a person is guilty of a misdemeanor if the person knowingly makes a false statement, or knowingly affirms the truth of a prior false statement, in various circumstances, including when the statement is made in an official proceeding, the statement is made to mislead a public official in performing his or her official function, or the statement is sworn before a notary public. Ohio Rev. Code § 2921.13(A). But the statute also establishes a civil remedy: "A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense." *Id.* § 2921.13(G).

Ohio courts have held that criminal charges are a condition precedent to the institution of a civil cause of action under section 2921.13(G). In *Hershey v. Edelman*, for example, the court refused to recognize civil liability under section 2921.13(G) absent criminal charges or criminal proceedings under section 2921.13. 932 N.E.2d 386, 392 (Ohio Ct. App. 2010). That holding is consistent with the statutory language, which provides a civil remedy for losses that result from "the commission of *the* offense." Ohio Rev. Code § 2921.13(G) (emphasis added). Use of the word "offense" makes clear that civil liability is predicated on criminal guilt. The effect of the statute is to provide restitution to victims of the criminal offense; it does not create civil liability absent criminal conviction. Dismissal of Slorp's falsification claim therefore was appropriate.

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

**D.**

Slorp also alleged that the defendants engaged in a civil conspiracy when they agreed to execute the fraudulent assignment and to falsify court documents. Yet Slorp's appellate brief does not directly address his conspiracy claim and implicitly acknowledges that the claim is derivative of his falsification claim—that is, Slorp concedes that the conspiracy count must be dismissed if the falsification count is dismissed. Because we affirm the dismissal of the falsification count, we also affirm the dismissal of this count as a matter of course.

**V.**

We turn to count five, which Slorp unsuccessfully sought to add to his complaint. Slorp requested leave to amend his complaint to allege a civil violation of RICO, 18 U.S.C. §§ 1962, 1964. The district court denied the motion for leave to amend upon concluding that amendment of the complaint would be futile. In the district court's view, Slorp "failed to adequately allege an injury resulting from the Assignment at issue here," and "[c]onsequently, Plaintiff has failed to state a RICO claim upon which relief can be granted."

The denial of a motion for leave to amend the complaint ordinarily is reviewed for abuse of discretion. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 743 (6th Cir. 2002). When denial is on the basis of futility, however, the decision is reviewed *de novo*. *Id.*

The germane provision of RICO makes it unlawful for a person employed by or associated with an enterprise that affects interstate commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). The statute provides a civil remedy that allows an individual to recover treble damages for injuries to that person's business or property sustained by reason of the RICO violation. 18 U.S.C. § 1964(c).

-19-

Case 3:14-cv-01836-MO   Document 60   Filed 06/18/15   Page 27 of 36
Case: 13-3402   Document: 61-2   Filed: 09/29/2014   Page: 20   (21 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

The defendants argue that amendment of the complaint would be futile for three independent reasons: (1) Slorp cannot recover RICO damages because his injuries are attributable to his own default rather than to the defendants' initiation of foreclosure proceedings; (2) Slorp's proposed amended complaint does not identify a pattern of racketeering activity because he does not allege a plausible scheme or artifice to defraud; and (3) Slorp does not allege sufficient facts to support the existence of an enterprise. We take one at a time.

**A.**

In Slorp's proposed amended complaint he alleges numerous injuries sustained as a result of the defendants' RICO violations: Slorp had to defend himself against the improper foreclosure action, faces "potential multiple liability from others who may claim an interest in the mortgage or note," possesses a "cloud[ed]" title to his home because the fraudulent assignment continues to be recorded with the Franklin County Recorder, and had to deal with a wrongful foreclosure action. Most of these damages are speculative, uncertain, and undefined. *Cf. Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (stating that loss of security and peace of mind are not recoverable injuries under RICO). Slorp faces no imminent threat of potential double liability because Bank of America voluntarily dismissed its state-court foreclosure action and has shown no intent to revisit that decision. Slorp also identifies no monetary costs associated with the clouded title. But the attorney's fees he paid in connection with the foreclosure action are real and quantifiable damages, and our analysis therefore focuses on whether those fees were injuries to Slorp's business or property incurred by reason of the defendants' alleged RICO violation. *See* 18 U.S.C. § 1964(c).

The first component of this inquiry concentrates on the term "business or property." In *Jackson v. Sedgwick Claims Management Services, Inc.*, the *en banc* court held that a RICO

Case 3:14-cv-01836-MO    Document 60    Filed 06/18/15    Page 28 of 36
Case: 13-3402    Document: 61-2    Filed: 09/29/2014    Page: 21    (22 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

victim cannot recover damages for personal injuries flowing from a RICO violation. 731 F.3d

556, 564–70 (6th Cir. 2013) (en banc). Whether damages caused by the victim's specific injury

are recoverable under § 1964(c) depends on "the origin of the underlying injury." *Id.* at 565.

While "personal injuries and pecuniary losses flowing from those personal injuries fail to confer

relief under § 1964(c)," *id.* at 565–66, injuries to property and at least some pecuniary losses

flowing from those property injuries *do* confer relief under § 1964(c).

The question, then, is whether Slorp's complaint alleges personal injuries or injuries to

property. According to the proposed RICO count, the defendants used various schemes to

mislead both Slorp and the state court and thus attempted fraudulently to deprive Slorp of his

home through an illegitimate foreclosure sale. Those schemes revolved around a fraudulent

mortgage assignment and a related foreclosure action. Thus, if we look to "the origin of the

underlying injury" to determine whether it relates to property, Slorp has alleged quintessential

property injuries: The object of the alleged scheme to defraud was to obtain title to Slorp's home

(*i.e.*, real property) through foreclosure.

Of course, the specific injury for which Slorp seeks to recover is not an injury to his

home—he did not lose title as a result of the foreclosure action and therefore cannot obtain

damages on that claim. Rather, his alleged injury was the attorney's fees he incurred in

connection with that foreclosure action. Under *Jackson*, however, that is beside the point.

*Jackson* held that the pecuniary losses flowing from those personal injuries were not recoverable

because "an award of benefits under a workers' compensation system and any dispute over those

benefits are inextricably intertwined with a personal injury giving rise to the benefits." 731 F.3d

at 566. Thus it is the source of the injury that matters, and accordingly pecuniary losses flowing

from a property injury are recoverable under § 1964(c) if they are similarly intertwined with that

property injury. *Cf. Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (stating that a RICO plaintiff can recover only if "he has been injured in his business or property by the conduct constituting the violation"); *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 397 (6th Cir. 1999) (permitting RICO plaintiff to recover damages resulting from plaintiff's purchase of an interest in a campground). Slorp suffered an injury to his home as a result of the defendants' alleged scheme: The defendants initiated foreclosure proceedings and obtained a judgment awarding them the right to take possession of Slorp's house. That direct property injury is not quantifiable because the state court ultimately vacated the judgment and permitted Slorp to retain his house, and unquantifiable injuries are not recoverable. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 614 (6th Cir. 2004). But the attorney's fees he incurred were pecuniary losses intertwined with the property injury and therefore are recoverable under § 1964(c).

This inquiry flows into the second component of § 1964(c) damages analysis, which asks whether the injuries were sustained "by reason of" the alleged RICO violation. The phrase "by reason of" incorporates a statutory-standing requirement into § 1964(c), prohibiting a private RICO plaintiff from recovering for derivative or passed-on injuries. *See Id.* at 613–14. This statutory-standing requirement is not at issue here because there is no dispute about whether Slorp is the proper party to assert these claims. But in *Holmes v. Securities Investor Protection Corp.*, the Supreme Court held that the phrase "by reason of" also incorporates a proximate-cause requirement into § 1964(c). 503 U.S. 258, 268 (1992). "[W]hile a RICO plaintiff and defendant may have a *direct* and not a *derivative* relationship, the causal link between the injury and the conduct may still be too weak to constitute proximate cause—because it is insubstantial, unforeseeable, speculative, or illogical, or because of intervening causes." *Trollinger*, 370 F.3d at 614.

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

The defendants argue that "it was his mortgage default . . . which caused Slorp to have to defend the foreclosure action, not anything contained within the Assignment." But the factual premise of this argument contradicts the factual allegations in Slorp's complaint and overlooks our obligation to assume the veracity of those allegations. Slorp alleges that the assignment was fraudulent and that the defendants had no right to foreclose on his house. If the defendants were not authorized to initiate the foreclosure proceedings, Slorp's injuries were caused by their fraud rather than his own alleged default.

According to the complaint, Hill was an authorized agent of neither MERS nor Countrywide, and she therefore lacked the authority to assign the mortgage to Bank of America. Assuming that to be true, as we must, Bank of America wrongfully initiated foreclosure proceedings against Slorp, and his damages were proximately caused by the defendants' institution of fraudulent foreclosure proceedings that led Slorp to incur attorney's fees. The allegedly fraudulent assignment allowed the defendants to perpetrate and conceal the fraud by precluding the state court from ascertaining whether the defendants were the proper parties to initiate the foreclosure proceedings. On those facts it was the defendants' alleged misrepresentations rather than Slorp's default that led to his injuries. Had the proper mortgagee, whoever that is, elected to initiate its own foreclosure proceedings against Slorp, he would have faced double liability, and the defendants' fraudulent assignment would have led to the anomalous and unlawful result of two separate mortgagees—one real and one fraudulent— foreclosing on Slorp's house. The fact that the legitimate mortgagee has not initiated foreclosure proceedings only reinforces the conclusion that the defendants' allegedly fraudulent foreclosure led to Slorp's injuries.

-23-

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

To be sure, Slorp's injuries will vanish if the defendants prove that Bank of America was the legitimate mortgagee. But this case came to the district court on a motion to dismiss, and in that posture the court was required to accept the veracity of Slorp's factual allegations. Slorp alleges injuries to his property that were proximately caused by the defendants' allegedly baseless initiation of foreclosure proceedings and the fraudulent assignment of his mortgage. He is thus entitled to recover damages for those injuries unless he fails to satisfy his evidentiary burden, either on summary judgment or at trial.

### B.

A successful RICO plaintiff must establish that the defendants engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(c); *see also In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484 (6th Cir. 2013). LSR and Hill contend that Slorp has not identified a pattern of racketeering activity because he has not alleged a plausible scheme or artifice to defraud.

To establish a pattern of racketeering activity, the plaintiff must allege at least two related acts of racketeering activity that amount to or pose a threat of continued criminal activity. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008). The RICO statute enumerates dozens of crimes that constitute racketeering activity. *See* 18 U.S.C. § 1961(1). Among these crimes are mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343—the two predicate crimes that Slorp alleged in his proposed amended complaint. Mail and wire fraud consist of (1) a scheme or artifice to defraud; (2) use of the mails or interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006); *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003). "A scheme to defraud is any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations,

-24-

Case 3:14-cv-01836-MQ  Document 60  Filed 06/18/15  Page 32 of 36
Case: 13-3402  Document: 61-2  Filed: 09/29/2014  Page: 25        (26 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

or promises." *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010) (internal quotation marks and alterations omitted).

LSR first argues that Slorp's allegations are insufficient because he cannot show that he relied on the defendants' alleged misrepresentations. But "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008). LSR's first argument stumbles right out of the gate.

LSR also contends that "Slorp must allege sufficient plausible facts to indicate that LSR and Ms. Hill made a material misrepresentation of fact *to Slorp* that was calculated or intended *to deceive Slorp*." Slorp has done just that. Slorp's complaint alleges that LSR and Hill filed a state-court complaint against him misrepresenting that his mortgage had been assigned to Bank of America. He further alleges that LSR executed a fraudulent assignment and served it on Slorp in connection with the foreclosure action. According to Slorp, these material misrepresentations were intended to deceive both Slorp and the state court. Slorp therefore has alleged precisely what LSR demands of him.

## C.

LSR also argues that Slorp has not alleged sufficient facts to support the existence of an enterprise. "The RICO statute makes it unlawful for 'any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re ClassicStar*, 727 F.3d at 490 (quoting 18 U.S.C. § 1962(c)) (alterations in original). An enterprise "includes any individual,

-25-

Case 3:14-cv-01836-MO Document 60 Filed 06/18/15 Page 33 of 36
Case: 13-3402 Document: 61-2 Filed: 09/29/2014 Page: 26 (27 of 29)

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

An "association-in-fact enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The association-in-fact enterprise must be separate and distinct from the pattern of racketeering activity in which it engages, but the enterprise could have been formed solely for the purpose of engaging in the racketeering activity. *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793–94 (6th Cir. 2012). The enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The enterprise need not have a hierarchical structure or chain of command, members of the group need not have fixed roles, the group need not have a name, and the enterprise may engage in "spurts of activity punctuated by periods of quiescence." *Id.* at 948.

Slorp has adequately alleged the existence of an enterprise that satisfies these basic criteria. He alleged that the defendants conspired to draft and execute a false assignment and to use the assignment in foreclosure proceedings to seize Slorp's property. He further alleged that the defendants used the mails and wires several times in furtherance of this scheme, and he alleged that the same defendants have engaged in similar malfeasance in other foreclosure proceedings, all with the aim of obtaining title to several properties that are not rightfully theirs. The alleged association-in-fact enterprise thus had a purpose and sufficient longevity, and its members had lasting relationships with one another. The defendants may introduce evidence to rebut any of these allegations, including the existence of an enterprise that was separate and

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

distinct from the racketeering activity, but the allegations in Slorp's complaint are sufficient to survive a motion to dismiss.[7]

Accordingly, the district court erred when it determined that amendment of Slorp's complaint to include a RICO count would be futile.

## VI.

We affirm the dismissal of Slorp's FDCPA, CSPA, falsification, and civil conspiracy claims. But we reverse the district court's denial of the motion for leave to amend the complaint and remand this action to the district court to permit Slorp to pursue the RICO claim.

---

[7]LSR's brief relies in large part on *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2000), but that case has been abrogated by both *Bridge* and *Boyle*.

No. 13-3402, *Slorp v. Lerner, Sampson & Rothfuss*

SUTTON, J., concurring. I join all of the majority opinion but part V. As to that, I agree with the majority that the district court's decision denying Slorp leave to add a civil RICO claim should be reversed. As the majority explains, the district court erred by concluding that Slorp suffered no cognizable injury, and that mistaken conclusion was the reason it denied leave to amend as futile. Rather than proceed to address the potential viability of other RICO claims in this setting, I would leave it at that, and let the district court address those claims in the first instance.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was

served upon all counsel of record, pro-se parties and the United States Attorney General and the

Attorney General of the State of Oregon via the Court's CM/ECF system, email, and/or regular

mail, and/or certified mail with return receipt requested.

U.S. Department of Justice
Loretta Lynch,
U. S. Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
202-514-2000

Gabrielle D. Richards | Perkins Coie LLP
1120 NW Couch Street
10th Floor
Portland, Oregon 97209-4128
D. +1.503.727.2255
F. +1.503.346.2255
grichards@perkinscoie.com

Respectfully Submitted,

Denise Subramaniam