# DEFENDANT'S EXHIBIT A

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
     CHRISTOPHER T. SWIFT and      )   No. 12 B 35690
 4   MARCIA A. SWIFT,              )
                                   )   Chicago, Illinois
 5                                 )   April 28, 2015
              Debtors.            )   2:00 p.m.
 6

 7                  TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE DONALD R. CASSLING
 8

 9     APPEARANCES:

10

11  For the Debtors:        Mr. Christopher Swift, pro se;
12                          Ms. Marcia Swift, pro se;

13  For the creditor:       Mr. Bryan Hughes;
14                          Mr. Douglas Oliver;

15  Chapter 13 trustee:     Mr. Glenn Stearns.

16

17

18     Court Reporter:

19

20

21                  MARY C. KELLY, CSR
                United States Courthouse
22        219 South Dearborn Street, Room 661
                 Chicago, Illinois  60604
23

24

25
```

1    after this case is over --

2              THE COURT:  Has there been any

3    indication anywhere that GMAC is going to do that?

4    How are they going to do that if I hold that their

5    claim is valid?  If their claim is valid, nobody

6    else has another claim.

7              MS. SWIFT:  But what if their claim is

8    not valid what happens, when these people we

9    believe participated in the process of their claim

10   not being valid?

11             I know that's -- I know.  Because we

12   believe a couple of things.  Either Andy Beal is

13   not going to stop, and he'll -- he has other

14   homeowners in three different courts at the same

15   time, and this is true, and we can give you

16   judicial notice of those cases if you would like

17   them.

18             THE COURT:  No, I do not want to take

19   judicial notice of those cases.

20             MS. SWIFT:  Okay.  Okay.  But I think

21   it's possible that we might need that.

22             We also have the original mortgage

23   broker that was there when we were trying to do

24   this.

25             And when we filed our attorney general

# DEFENDANT'S EXHIBIT B



## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 4, 2010

MGC Mortgage, Inc.
7195 Dallas Parkway
Plano, TX 75024

      **RE:**   MGC Mortgage, Inc. Foreclosures in Texas

Gentlemen:

Recent troubling developments about the veracity of claims made on documents used by Ally Financial, Inc., in its foreclosure filings have led to an inquiry by our office as to the full harm Texas homeowners have suffered.

We are certain that you must be aware of the issues raised when Ally Financial, Inc., and later JP Morgan Chase and Bank of America, announced that they were suspending foreclosures on certain properties in 23 states. It appears that they had discovered, through testimony of their employees in private litigation, that the employees, referred to as "robosigners," had engaged in practices concerning the execution of affidavits which were used in foreclosure litigation, among which were these:

- Signing thousands of documents per month
- Signing documents without reading them
- Signing affidavits which falsely claim personal knowledge of facts
- Signing affidavits which falsely claim the affiant reviewed the attached documents
- Notarizing documents prior to signing by the signer
- Notarizing documents when the signer was not present before the notary
- Filing affidavits with records attached that do not correctly reflect loan payments, charges and advances

We are aware that MGC Mortgage, Inc. services a significant number of mortgage loans in the State of Texas. It is likely that affidavits and other documents, such as assignments of deeds of trust and appointments of substitute trustees, with the issues described, above may have been used in connection with foreclosures in the State of Texas. Regardless of whether the foreclosure was a nonjudicial one or a judicial one in connection with a home equity loan, home equity line of credit or reverse mortgage, if any of the practices described above were utilized in establishing MGC Mortgage, Inc.'s authority to conduct the sale or obtain a court order for a sale, such use would have been  a violation of Section 17.46(a) of the Texas Deceptive Trade Practices Act; Section 392.304, Texas Debt Collection Act; Section 37.02, Texas Penal Code; Section 12.001, Texas Property Code; Section 406.009, Texas Government Code; Texas Constitution Article 16, Section 50; and/or Rule 736(1), Texas Rules of Civil Procedure, and the document and therefore the foreclosure sale would have been  invalid.

MGC Mortgage
October 4, 2010
Page 2

We are also aware that after the practices described above came to light, Ally Financial, Inc., JP Morgan Chase and Bank of American voluntarily suspended all foreclosures in twenty-three states in which foreclosures are conducted solely through a judicial process, in order to determine which foreclosures may have been tainted by illegitimate affidavits. The State of Texas hereby demands that in the State of Texas, MGC Mortgage, Inc. immediately suspend all foreclosures, all sales of properties previously foreclosed upon, and all evictions of persons residing in previously foreclosed upon properties, until MGC Mortgage, Inc. has done the following:

1.    Identify all MGC Mortgage, Inc. employees or agents who "robosigned," as described above, affidavits and other documents which were recorded in the State of Texas;

2.    Identify all foreclosures in the State of Texas in connection with which an affidavit or other document with the characteristics listed above was used as part of the foreclosure process;

3.    Describe the measures taken by MGC Mortgage, Inc. to ensure that affidavits and other documents are executed in compliance with Texas law;

4.    Describe the measures taken by MGC Mortgage, Inc. to comply with the Servicemembers Civil Relief Act in connection with foreclosures;

5.    Identify all other loan servicers and/or MERS for whom the above described employees or agents signed affidavits;

6.    Provide assurances that all MGC Mortgage, Inc. foreclosures of properties in the State of Texas which relied upon affidavits with the characteristics described above will be rectified and the procedures by which they will be rectified;

7.    Provide assurances that all future MGC Mortgage, Inc. foreclosures of properties in the State of Texas will be done with legally correct documentation; and

8.    Identify all MGC Mortgage, Inc. employees or agents who are or who signed as officers of other non-related entities.

Please provide your response on or before October 15, 2010.

Sincerely,

Paul D. Carmona
Chief, Consumer Protection and
Public Health Division



HUNTON & WILLIAMS LLP
FOUNTAIN PLACE
1445 ROSS AVENUE
SUITE 3700
DALLAS, TEXAS 75202-2799

TEL   214 • 979 • 3000
FAX   214 • 880 • 0011

PETER WEINSTOCK
DIRECT DIAL: 214 • 468 • 3395
EMAIL: pweinstock@hunton.com

October 31, 2010

Mr. Paul D. Carmona, Chief
Consumer Protection and Public Health Division
Attorney General of Texas Office
P.O. Box 12548
Austin, Texas 78711-2548

**Re:   MGC Mortgage, Inc. ("MGC")**

Dear Paul:

I am writing this letter on behalf of MGC in response to the October 4, 2010 letter (the "Letter") from the Attorney General of Texas (the "Texas AG") and as a follow up to my October 15, 2010 letter. In our telephone conversation on October 11, 2010, you stated that it would be acceptable to the Texas AG for MGC to respond to the Letter on or before November 1, 2010. We are now providing this letter as the requested response on behalf of MGC.

MGC was established in February 2008 and, in its history, has foreclosed on 159 residential loans in Texas and has 64 residential Texas loan foreclosures in progress. In the two weeks since the date of my last letter, MGC has worked diligently to obtain the files from its subservicers and outside foreclosure counsel. Of the 223 files, MGC has obtained complete files for 184 of them. MGC has not yet received complete documentation on the other 39 files. MGC has reviewed all 184 of its completed files for every foreclosure or foreclosure in process. MGC will advise the Texas AG once it completes its review of the 39 pending files after receipt of the missing documentation.

You should also know that MGC has been proactive in working with Texas homeowners with delinquent or potentially delinquent residential mortgage loans. To do so, earlier this year, MGC engaged Dovenmuehle Mortgage, Inc. ("DMI"), which is one of the leading residential loan servicing companies in the country, to subservice MGC's loans and to assist MGC in executing on its loan modification program.

Furthermore, MGC services residential loans that were acquired from the Federal Deposit Insurance Corporation ("FDIC") as receiver for New South Federal Savings Bank, Irondale,



Mr. Paul D. Carmona
October 31, 2010
Page 2

Alabama ("New South") in December 2009. The New South loans have been serviced (or subserviced) by Cenlar since 2004. Based on review of Cenlar's performance and capabilities, MGC elected to continue working with Cenlar as subservicer.

Set forth below are MGC's responses to the Letter. For your convenience, I have reproduced in bold text below the enumerated requests set forth in the Letter.

**1.     Identify all MGC Mortgage, Inc. employees or agents who "robosigned," as described above, affidavits and other documents which were recorded in the State of Texas.** MGC does not use "robosigners" in its foreclosure process. MGC has reached out to virtually all of the law firms that it employs for such purposes. The vast majority have responded. They have indicated that they also do not engage in robosigning. MGC has been advised by DMI and Cenlar that they do not use such practice either. DMI has also stated that it has spoken with virtually all law firms that it retains for foreclosures, and that such firms do not engage in robosigning.

**2.     Identify all foreclosures in the State of Texas in connection with which an affidavit or other document with the characteristics listed above was used as part of the foreclosure process.** No completed or in-process foreclosures in the State of Texas were identified as being conducted in connection with an affidavit or other document with the foreclosure characteristics listed in the Letter. DMI advised MGC that DMI does not conduct foreclosures with affidavits with such characteristics. Cenlar does not execute documents on behalf of MGC.

**3.     Describe the measures taken by MGC Mortgage, Inc. to ensure that affidavits and other documents are executed in compliance with Texas law.** MGC has adopted written policies providing for foreclosure of residential properties. MGC also requires that information provided in foreclosure documents be verified for accuracy and that an authorized member of management reviews the documents to be executed before doing so. MGC understands that DMI and Cenlar follow similar processes.

**4.     Describe the measures taken by MGC Mortgage, Inc. to comply with the Servicemembers Civil Relief Act in connection with foreclosures.** MGC has adopted written policies for compliance with the Servicemembers Civil Relief Act ("SCRA"). Upon notification from a borrower seeking SCRA relief, MGC uses reasonable means to validate



Mr. Paul D. Carmona
October 31, 2010
Page 3

the order and determine whether the obligation is a qualifying debt pursuant to the SCRA. Upon validation, the appropriate benefits afforded the borrower are instituted and the loan is coded as a loan subject to the SCRA. Before proceeding with the filing of a foreclosure action, every loan is reviewed for active military status of a borrower. If a borrower is identified as being on active military status or the loan is identified as being subject to the SCRA, the foreclosure is put on hold until expiration of the SCRA benefit or until MGC makes a determination on a case-by-case basis to seek court relief from SCRA provisions. It is MGC's understanding that DMI and Cenlar also have procedures designed to avoid foreclosures in violation of SCRA.

**5.     Identify all other loan servicers and/or MERS for whom the above described employees or agents signed affidavits.** None.

**6.     Provide assurances that all MGC Mortgage, Inc. foreclosures of properties in the State of Texas which relied upon affidavits with the characteristics described above will be rectified and the procedures by which they will be rectified.** As discussed above, no completed or in-process foreclosures in the State of Texas were identified as being conducted in connection with an affidavit or other document with the characteristics listed in the Letter. Accordingly, MGC does not believe that any of its foreclosures need to be rectified as a result of an affidavit or other document with the characteristics listed in the Letter.

**7.     Provide assurances that all future MGC Mortgage, Inc. foreclosures of properties in the State of Texas will be done with legally correct documentation.** As discussed above, MGC has adopted written policies for the execution of legal documents in compliance with Texas law. MGC has systems and procedures designed to provide for the implementation of such policies by DMI and Cenlar.

**8.     Identify all MGC Mortgage, Inc. employees or agents who are or who signed as officers of other non-related entities.** MGC does not service loans for unrelated entities.

Pursuant to the Texas Open Records Act, we hereby request confidential treatment for the information contained in this letter. The information contained herein constitutes privileged and confidential information, proprietary in nature, that is not available to the public from any



Mr. Paul D. Carmona
October 31, 2010
Page 4

other source. Disclosure of this information to the public, including competitors of MGC, would provide such competitors and others with information about the current and future business plans of MGC. From this information, competitors could make inferences about the operations and competitive strategies of MGC, which could potentially result in altering the competitors' own competitive strategies and relationships to the detriment of MGC.

We request that if, notwithstanding the foregoing, the Texas AG's office should determine preliminarily to make available to the public any of the information in this letter, it will inform us prior to any such release.

If you have any questions, please do not hesitate to contact Robert Ackermann at (469) 467-5342 or me at (214) 468-3395.

Sincerely,

Peter G. Weinstock

cc:     Mr. Robert Ackermann

# DEFENDANT'S EXHIBIT C

CAUSE NO. DC-14-04053

| | | |
|---|---|---|
| **LNV CORPORATION,** | § | **IN THE DISTRICT COURT OF** |
| **ITS SUCCESSORS AND ASSIGNS,** | § | |
| **PLAINTIFF** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **SAMUEL G. BREITLING,** | § | **DALLAS COUNTY, TEXAS** |
| **JO ANN BREITLING,** | § | |
| **GMAC MORTGAGE, LLC FKA** | § | |
| **NORWEST MORTGAGE, INC.,** | § | |
| **PINNACLE REALTY ADVISORS, INC.,** | § | |
| **AND PALISADES ACQUISITION V, LLC** | § | |
| **DEFENDANTS** | § | **134TH JUDICIAL DISTRICT** |

## BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned notary, on this day, personally appeared _____**Edward J. Bagdon**_____, a person whose identity is known to me. After I administered an oath to his/her, upon his/her oath, he/she said:

1. "My name is _____**Edward J. Bagdon**_____. I am over the age of 21 years, of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein. I have obtained personal knowledge of events described below through my review of business records during the normal course of business.

2. I am the _____**Authorized Signer**_____ for LNV CORPORATION. As such, I have access to the records for LNV CORPORATION. LNV CORPORATION maintains these records in the regular course of its business. I am qualified to attest to these records by virtue of my duties and have reviewed the documents sought to be admitted.

3. Attached to this affidavit are forty-five (45) pages of records maintained by LNV CORPORATION.

4. I am familiar with the record-keeping process as it existed when the entry was made. These business records are now kept by LNV CORPORATION in the regular course of its business. These business records were generated pursuant to a course of regularly conducted business activity and such records are created by or from information transmitted by a person with knowledge, at or near the time of the event. The records attached to this affidavit are the original or exact duplicates of the original."

# EXHIBIT "A"

_____

**Edward J. Bagdon** _____, Affiant

Date: _____6/17/14_____

THE STATE OF _____**Illinois**_____ §

COUNTY OF _____**Lake**_____ §

    BEFORE ME, the undersigned notary public, on this day personally appeared _____**Edward J. Bagdon**_____ as _____**Authorized Signer**_____ of LNV CORPORATION, (known to me) (or proved to me on the oath of _____) or (through description of identity card or other document_____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said corporation for the purposes and consideration therein expressed.

    Given under my hand and seal of office this ___17___ day of __June__ _____, 2014.

_____

Notary Public, State of _____**Illinois**_____

Notary's Printed Name **Yesenia Alonzo-Nino**

My commission expires: ___9-18-14___

Seal:

> YESENIA ALONZO-NINO
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> September 18, 2014

DOVENMUEHLE MORTGAGE, INC.

By: Edward Bagdon, Its Assistant Vice President

From 1993 instrument

DOVENMUEHLE MORTGAGE, INC., A Delaware Corporation

By: Edward Bagdon, Its Assistant Vice President

From 1993

DOVENMUEILE MORTGAGE, INC., A Delaware Corporation

By: Edward Bagdon, Its Assistant Vice President

From 1994

AMSOUTH BANK SUCCESSOR BY MERGER FIRST AMERICAN NATIONAL BANK

BY: EDWARD J. BAGDON, Vice President

BY: BRUCE E. BORSOM, Vice President

From 2000

PEOPLES BANK AND TRUST FORMERLY KNOWN AS NEW SOUTH BANK FOR SAVINGS

BY: EDWARD J. BAGDON, Assistant Vice President

BY: WILLIAM B. CORCORAN, Assistant Secretary

From 2000

PEOPLES BANK AND TRUST, FORMERLY
KNOWN AS NEW SOUTH BANK FOR SAVINGS BY
DOVENMUEHLE MORTGAGE, INC., ITS
ATTORNEY-IN-FACT (POA RECORDED ON
9/27/1999, IN BOOK 82, AND PAGE 737.)

BY: _____

    EDWARD J. BAGDON, Assistant Vice President

BY: _____

    WILLIAM B. CORCORAN, Assistant Secretary

From 2000

PEOPLES BANK AND TRUST, FORMERLY
KNOWN AS NEW SOUTH BANK FOR SAVINGS BY
DOVENMUEHLE MORTGAGE, INC., ITS
ATTORNEY-IN-FACT (POA RECORDED ON
9/27/1999, IN BOOK 82, AND PAGE 737.)

BY: _____

    EDWARD J. BAGDON, Assistant Vice President

BY: _____

    WILLIAM B. CORCORAN, Assistant Secretary

From 2000

PEOPLES BANK AND TRUST, FORMERLY
KNOWN AS NEW SOUTH BANK FOR SAVINGS BY
DOVENMUEHLE MORTGAGE, INC. ITS
ATTORNEY IN FACT, (POA RECORDED 9/27/99,
BK 82, PG 737)

BY: _____

    EDWARD J. BAGDON, Assistant Vice President

BY: _____

    WILLIAM B. CORCORAN, Assistant Secretary

From 2000

Dovenmuehle Mortgage, Inc. as attorney- in Fact for
The Peoples Bank and Trust Company for DeSoto
county, recorded 09/24/99 in book 82, page 737.

On February 09, 2001

By :
_____
    Edward J. Bagdon Asst. Vice
    President
STATE OF Illinois
COUNTY OF Cook

DOVENMUEHLE MORTGAGE, INC., AS ATTORNEY-IN-FACT FOR
THE PEOPLES BANK AND TRUST COMPANY FOR DESOTO
COUNTY, MS  RECORDED 09/27/99, BOOK 82, PAGE 737.

On December 12, 2001

By :
_____
    Edward J. Bagdon Asst. Vice
    President
STATE OF Illinois
COUNTY OF Cook

Peoples Bank and Trust, formerly known as New South
Bank for Savings by Dovenmuehle Mortgage, Inc. its
Attorney in Fact Neshoba County Recorded 09/27/1999
Book A-237 Page

On December 01, 2000

By :
_____
    Edward J. Bagdon, Asst. Vice
    President
STATE OF Illinois
COUNTY OF Cook

DOVENMUEHLE MORTGAGE, INC., AS ATTORNEY-IN-FACT FOR
THE PEOPLES BANK AND TRUST COMPANY FOR DESOTO
COUNTY, MS  RECORDED 09/27/99, BOOK 82, PAGE 737.

On February 28, 2002

By :
_____
    Edward J. Bagdon Asst. Vice
    President
STATE OF Illinois
COUNTY OF Cook

Sworn to and subscribed on _____ before me, Greg
Public in and for the County of Cook, State of Illinois.

THE PEOPLES BANK AND TRUST COMPANY, S/B/M NEW SOUTH
BANK, S.B., F/K/A NEW SOUTH BANK FOR SAVINGS,
F.S.B., BY DOVENMUEHLE MORTGAGE, INC., AS
ATTORNEY-IN-FACT FOR DESOTO COUNTY, MS, PURSUANT TO
A POWER OF ATTORNEY RECORDED ON 09/27/99, IN BOOK
82, PAGE 737

On June 06, 2002

By :
_____
    Edward J. Bagdon Asst. Vice
    President
STATE OF Illinois
COUNTY OF Cook

Sworn to and subscribed on _____ before me, Greg
Public in and for the County of Cook, State of Illinoi

AMSOUTH BANK

On February 07, 2002

By :
_____
    Edward J. Bagdon Vice President
STATE OF Illinois
COUNTY OF Cook

CAROLINA FIRST BANK

On January 31, 2003

By :
Edward J. Bagdon Vice President
STATE OF Illinois
COUNTY OF Cook

DOVENMUEHLE MORTGAGE, INC., AS ATTORNEY-IN-FACT FOR
THE PEOPLES BANK AND TRUST COMPANY DESOTO COUNTY,
MS, RECORDED ON 9/27/99, BOOK 82, PAGE 737

On May 30, 2003

By :
Edward J. Bagdon Asst. Vice
President
STATE OF Illinois
COUNTY OF Cook

IN WITNESS WHEREOF , the undersigned , by the of.
duly Executed as a free act and deed the

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(MERS)

On December 05, 2003

By :
Edward J. Bagdon Certifying Officer

STATE OF Illinois
COUNTY OF Cook

CAROLINA FIRST BANK

On January 31, 2003

By :
Edward J. Bagdon Vice. President
STATE OF Illinois
COUNTY OF Cook

ALLEGACY FEDERAL CREDIT UNION, F/K/A
REYNOLDS CAROLINA FEDERAL CREDIT
UNION
By :

Edward J. Bagdon Vice President

al this 22nd day of January ,
otary Public in and for the County of Cook,
ppeared Edward J. Bagdon Vice President of

PEOPLE'S BANK AND TRUST COMPANY, F/K/A NEW SOUTH
BANK FOR SAVINGS, BY DOVENMUEHLE MORTGAGE, INC., ITS
ATTORNEY-IN-FACT, AS RECORDED FOR DESOTO COUNTY, MS,
RECORDED 9/27/1999, BOOK 82, PAGE 737.

On June 01, 2004

By :
Edward J. Bagdon Asst. Vice
President
STATE OF Illinois
COUNTY OF Cook

DOVENMUEHLE MORTGAGE, INC., AS ATTORNEY-IN-FACT F
THE PEOPLES BANK AND TRUST COMPANY DESOTO COUNTY,
MS, RECORDED ON 9/27/99, BOOK 82, PAGE 737.

On March 19, 2004

By : _____
Edward J Bagdon Vice President

STATE OF Illinois
COUNTY OF Cook

Sworn to and subscribed on 3/19/2004, before me,
Notary Public in and for the County of Cook, Sta

---

ALLEGACY FEDERAL CREDIT UNION, F/K/A
REYNOLDS CAROLINA FEDERAL CREDIT
By : UNION

_____
Edward J. Bagdon Vice President

this 13th day of May 2004,
Notary Public in and for the County of Cook,
eared Edward J. Bagdon Vice President of

---

ZIONS FIRST NATIONAL BANK

On March 03, 2004

By : _____
Edward J. Bagdon Vice President

STATE OF Illinois
COUNTY OF Cook

---

IRST BANK, RECORDED 11/20/2001 IN BOOK

CAROLINA FIRST BANK

By : _____
Edward J. Bagdon Vice President

BOOK :    PAGE :   INSTRUMENT NO. : 161037

STATE : Idaho    COUNTY : TETON

ZIONS FIRST NATIONAL BANK, NA

On March 21, 2005

By : _____
     Edward J. Bagdon Vice President

---

executed by their duly authorized officers.

ZIONS FIRST NATIONAL BANK, NA        167322

On March 21, 2005

By : _____
      Edward J. Bagdon Vice President

STATE OF Illinois
COUNTY OF Cook

---

IN WITNESS WHEREOF, Allied Home Mortgage Corporation has caused this instrumer
to be executed by its duly authorized officers the 13th day of September, 2005

ALLIED HOME MORTGAGE CORPORATION

BY: _____
    Edward J. Bagdon, Vice President

---

IN WITNESS WHEREOF , the undersigned by the
duly Executed as a free act and deed th
MATRIX FINANCIAL SERVICES CORPORATION

On January 18, 2006

By : _____
     Edward J. Bagdon Vice President
STATE OF Illinois
COUNTY OF Cook

---

DOVENMUEHLE MORTGAGE COMPANY, L.P.,
BY DOVENMUEHLE MORTGAGE, INC. ITS
By : GENERAL PARTNER 1501 WOODFIELD RD
     SUITE 400E, SCHAUMBURG, IL. 60173

     Edward J. Bagdon Vice President

1031b005 Yesenia  Alonzo-Nino, a Notary
ook, State of Illinois, personally appeared
: DOVENMUEHLE MORTGAGE COMPANY, L.P., BY

Signed this 23 day of March, 2006.

MATRIX FINANCIAL SERVICES CORPORATION

By _____
Typed name: Edward J. Bagdon
Position: Vice President

STATE OF ILLINOIS, COOK COUNTY, SS:

ALLEGACY FEDERAL CREDIT UNION

By : _____
Edward J. Bagdon Vice President

ᴉ __6|21|07__ , Geraldine  Bolosky, a Notary
ake, State of Illinois, personally appeared
f ALLEGACY FEDERAL CREDIT UNION, personally

TIB - THE INDEPENDENT BANKERSBANK

On August 27, 2007

By : _____
Edward J. Bagdon Vice President

IN WITNESS WHEREOF , the undersigned , by the off
Executed  as  a  free  act  and deed  the  forego

AMEGY MORTGAGE COMPANY, L.L.C.

On September, 18, 2007

By : _____
Edward J. Bagdon Vice President

STATE OF Illinois
COUNTY OF Lake

Mortgage Electronic Registration Systems, Inc. as
nominee for the beneficial owner
Mortgage Access Corp. d/b/a Weichert Financial
Services

On May 21, 2008

By : _____
Edward J. Bagdon Vice President

STATE OF Illinois
COUNTY OF Lake

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS SOLE
NOMINEE FOR THE BENEFICIAL OWNER AMERICAN NATIONAL BANK
DBA LEADER FINANCIAL SERVICES

On August 11, 2008

By :
_____
Edward J. Bagdon Authorized Signer

STATE OF Illinois
COUNTY OF Lake

rtificate of Satisfaction be recorded and
ent be canceled of record.

ALLEGACY FEDERAL CREDIT UNION

By :
_____
Edward J. Bagdon Vice President

ABOVE SAID MORTGAGE WAS RE-RECORDED ON 11/08/2007 UNDER DOC#2007064753 00138
BK 2794 PG 2969.

ALLEGACY FEDERAL CREDIT UNION

( CORPORATE )
(   SEAL   )

By :
_____
Edward J. Bagdon Vice President

STATE OF Illinois
COUNTY OF Lake

Personally appeared before me on 9/2/08, GERALDINE BOLOSKY, a Notary
Public in and for the County of Lake, State of Illinois, personally appeared
Edward J. Bagdon Vice President of ALLEGACY FEDERAL CREDIT UNION, personally

ALLEGACY FEDERAL CREDIT UNION

By :
_____
Edward J. Bagdon Vice President

on 4/13/2009, Yesenia Alonzo-Nino, a Notary
f Lake, State of Illinois, personally appeared
t of ALLEGACY FEDERAL CREDIT UNION, personally

ALLEGACY FEDERAL CREDIT UNION, F/K/A
REYNOLDS CAROLINA FEDERAL CREDIT
UNION 1 CORPORATE DRIVE SUITE 360
LAKE ZURICH IL 60047

By :
_____
Edward J. Bagdon Vice President

on 04/21/2010. Yavnoshan, a Notary Public
State of Illinois, personally appeared Edward

AIG FEDERAL SAVINGS BANK 1 CORPORATE DRIVE, STE 360,
LAKE ZURICH, IL 60047

On January 09, 201

By :
_____
Edward J. Bagdon Vice President

/ instrument be canceled of record.

ALLEGACY FEDERAL CREDIT UNION

By :
_____
Edward J. Bagdon Vice President

on 7|10|10 Candi  Kasten, a Notary Public
State of Illinois, personally appeared Edward
:GACY FEDERAL CREDIT UNION, personally known to

t this Certificate of Satisfaction be recorded
ty instrument be canceled of record.

ALLEGACY FEDERAL CREDIT UNION

By :
_____
Edward J. Bagdon Vice President

on 7|10|10, Candi  Kasten, a Notary Public
State of Illinois, personally appeared Edward
LEGACY FEDERAL CREDIT UNION, personally known to

ALLEGACY FEDERAL CREDIT UNION

By :
_____
Edward J. Bagdon Vice President

on 4|10|200 Elena Greenberg, a Notary
f Kane, State of Illinois, personally appeared
t of ALLEGACY FEDERAL CREDIT UNION, personally

Property Address :  2225 AVENUE K CO. BLUFFS, IA 51501

IN WITNESS WHEREOF , the undersigned , by the officer duly authorized , has duly
Executed  as  a  free  act  and deed  the  foregoing  instrument.

UNITED WESTERN BANK F/K/A MATRIX CAPITAL BANK

On July 12, 202

By :
_____
Edward J. Bagdon Vice President

STATE OF Illinois
COUNTY OF Lake

Sworn to and subscribed on 07/sep/2010 before me, O. Yavnoshan, a Notary Public in
and for the County of Lake, State of Illinois, personally appeared Edward J. Bagdon

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS SOLE NOMINEE FOR
By :  THE BENEFICIAL OWNER NEW DAY
FINANCIAL, LLC.

Edward J. Bagdon Vice President

on 01-11-201, Yesenia Alonzo-Nino, a Notary
~~Lake, State of Illinois, personally appeared~~

FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY DOVENMUEHLE
MORTGAGE, INC., A DELAWARE CORPORATION, AS ITS ATTORNEY
IN FACT, PURSUANT TO A POWER OF ATTORNEY TO BE RECORDED
CONCURRENTLY WITH THE RELEASE IN DESOTO COUNTY STATE OF
MISSISSIPPI

On March 16, 2011

By :

Edward C. Bagdon Vice President

IN WITNESS WHEREOF , the undersigned , by the officer duly authorized , has hereby
Executed as a free act and deed the foregoing instrument.

MUTUAL OF OMAHA BANK

On January 11, 2011

By :
Edward J. Bagdon Authorized Signer

STATE OF Illinois
COUNTY OF Lake

Sworn to and subscribed on 1|11|201 , before me, Yesenia Alonzo-Nino, a Notary
Public in and for the County of Lake, State of Illinois, Edward J. Bagdon Authorized
Signer of MUTUAL OF OMAHA BANK personally appeared, personally known to me (or proved

MUTUAL OF OMAHA BANK

On May 08, 2012

By :
Edward J. Bagdon Authorized Signer

STATE OF Illinois
COUNTY OF Kane

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS SOLE NOMINEE FOR
By :  THE BENEFICIAL OWNER NEW DAY
FINANCIAL, LLC.

Edward J. Bagdon Vice President

(CORPORATE SEAL)

STATE OF Illinois
COUNTY OF Lake

Personally appeared before me on 01-11-201, Yesenia Alonzo-Nino, a Notary
Public in and for the County of Lake, State of Illinois, personally appeared
Edward J. Bagdon Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS SOLE NOMINEE FOR THE BENEFICIAL OWNER NEW DAY FINANCIAL, LLC.,  . .

IN WITNESS WHEREOF , the undersigned , by the officer duly
Executed as a free act and deed the foregoing inst

MUTUAL OF OMAHA BANK

On March 21, 2012

By : _____
Edward J. Bagdon Authorized Signer

STATE OF Illinois
COUNTY OF Kane
· 1

MUTUAL OF OMAHA BANK

On May 08, 2012

By : _____
Edward J. Bagdon Authorized Signer

STATE OF Illinois
COUNTY OF Kane

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR THE BENEFICIAL OWNER LNV CORPORATION

On July 30, 2012

By : _____
Edward J. Bagdon Asst. Secretary

ALLEGACY FEDERAL CREDIT UNION

By : _____
Edward J. Bagdon Vice President

_6/1/13_ , Laura Dugger, a Notary Public
e of Illinois, personally appeared Edward

rolina, in Book 1830, page 1007, was
ited that this Certificate of Satisfaction be
security instrument be canceled of record.

ALLEGACY FEDERAL CREDIT UNION

By : _____
Edward J. Bagdon Vice President

, _7-1-13_ , Laura Dugger, a Notary Public
ite of Illinois, personally appeared Edward
ACY FEDERAL CREDIT UNION, personally known to

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., whose address is P.O.
By : BOX 2026, FLINT, MI 48501-2026

_____
Edward J. Bagdon Asst. Secretary

_10-10-13_ , Laura Dugger, a Notary Public
e of Illinois, personally appeared Edward

( CORPORATE )
( SEAL )

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., whose address is P.O.
By : BOX 2026, FLINT, MI 48501-2026

_____
Edward J. Bagdon Asst. Secretary

STATE OF Illinois
COUNTY OF Lake

ON _2/24/14_ , before me, ANTOINETTE M. DOLECKI, a Notary Public in and for
the County of Lake, State of Illinois, personally appeared Edward J. Bagdon

# DEFENDANT'S EXHIBIT D

http://www.tmz.com/2015/03/17/pamela-anderson-rick-salomon-poker-andy-beal-nevada-annulment-california-divorce-money/

# Rick Salomon Made $40 Mil Last Year ... Playing Poker with ONE GUY!!!

**3/17/2015 12:40 AM PDT BY TMZ STAFF**

EXCLUSIVE



**Pam Anderson** says **Rick Salomon** may not be screwing her anymore, but he's definitely screwing the tax man ... because he's dodging a tax bill on $40 million in poker winnings in 2014 alone.

TMZ broke the story ... Rick has **filed for an annulment** from Pam in Nevada. She wants a California divorce, not an annulment, because it could entitle her to half his poker earnings.

Pam claims in new legal docs -- obtained by TMZ -- Rick won $40 MIL from ONE GUY -- **Andy Beal**, a billionaire real estate mogul who plays high stakes poker. In one weekend, Beal gambled at the Bellagio in Vegas and was up $13 mil at one point and down more than $16 mil later.

Pam says in the docs, Rick is lying in his annulment papers by saying he's a resident of Nevada, where there is no state income tax. Pam says they have lived in Malibu, California, where the state tax rate is a whopping 13%.

Pam says Rick actually used some of his earnings last year to buy a $4 million Nevada pad by paying cash, and then had his assistant use Rick's credit card in Nevada to make small purchases, making it look like Rick was living there.

Rick's people say Pam is on a mission to ruin Rick because she's not happy about the proposed divorce settlement.

http://www.pokernews.com/news/2015/01/todd-brunson-purportedly-takes-andy-beal-for-5-million-20417.htm

# Todd Brunson Purportedly Takes Andy Beal for $5 Million in Bobby's Room

January 24, 2015

*Chad Holloway*

He's back! **Andy Beal** was spotted late Friday night and early Saturday morning playing heads-up limit hold'em with blinds of $50,000/$100,000 in **Bobby's Room** at **Bellagio** against **Todd Brunson**. According to poker pro **Kyle Loman**, who was live tweeting the match while playing in a different game outside the high-stakes room, each bought in for $5 million, and when all was said and done, Brunson held all the chips.

Few amateur players have shook the poker world quite like Beal, a Texas billionaire who made his fortune through real estate and banking. In 2001 and 2004, Beal grew fond of playing high-stakes heads-up limit hold'em, which he played against a group of poker players nicknamed **"The Corporation"** in a legendary game documented in **Michael Craig's** classic book, *The Professor, the Banker, and the Suicide King: Inside the Richest Poker Game of All Time*.

As Craig described it, Beal won and lost millions in the game as he circulated through players such as **Ted Forrest**, **Jen Harman**, **Phil Ivey**, and both Todd and **Doyle Brunson**. Despite winning a massive $11.7 million pot on May 13, 2004, Beal ended up quitting the game with a loss, only to return in Feb. 2006 for more action. He quickly lost $3.3 million, went on a three-day $13.6 million upswing, and then lost $16.6 million to Ivey in a separate three-day match. It was at that point Beal claimed he was done with poker.

Since then there have been rumors that Beal has dabbled in limit hold'em, his favorite game, which, earlier this month, scientists claimed they solved. Those rumors were unsubstantiated, but on Friday, Jan. 23, Beal's most recent return was confirmed thanks to the rise of social media and Loman's reports.

"Andy Beal playing HU 50K/100K with Todd Brunson in Bobby's Room. I'm about to lose my mind," Loman reported in the first of a series of tweets. "All pink 25K chips now. Todd with six million and Beal with four million+. If they started with five, which is what I thought I saw, Todd up a milly.



An image of the game from Loman's Twitter account

Loman did snap a quick picture (see right), one that shows "Texas Dolly" sweating his son, and you can see that to the right.

Here are some other updates Loman tweeted throughout the night:

- "There was almost 20 people in the room at the start of the game. Down to pretty much just Doyle watching now.

- "Doyle went to bed it appears. The battle continues though"

- "Todd continuing to win. Got about 8 million to Beal's 2."

- "Beal with a solid heater. Todd: 5.5 Beal 4.5"

- "Todd Building towers. Looks about the same. His demeanor is the same as always. Sitting backward in the chair, his emotions unchanged."

- "Todd: 7 Beal: 3. There's only 3 people in Bobby's Room now. Todd, Beal, and the dealer."

- "Brunson crushing now. Has 8.5m+ to Beal's less than 1.5m"

- "Todd just felted Beal. They fist bumped and he left the room. They're done for tonight. Todd wins 5 million. More updates tomorrow hopefully."

So according to Loman, Brunson relieved Beal of $5 million. Brunson himself tweeted the following after the match had ended: "We came to a nice steak house without a reservation. Big line. They asked if we were celebrating anything. I said yes I won 5 mil yesterday."

Whether or not Beal will return remains to be seen, but if his past behavior is any indication, he'll return for another shot at besting Brunson, or whoever is willing to sit down and play him for such monster stakes.



http://frontburner.dmagazine.com/2011/07/08/andy-beal-reportedly-loses-50-million-playing-poker/

# Andy Beal Reportedly Loses $50 Million Playing Poker

By Tim Rogers - Posted in Local News. Jul 08, 2011 at 9:17 am

The *New York Post* says that the richest man in Dallas, Andy Beal, has lost $50 million in recent months playing high-stakes poker. Apparently Tobey Maguire was in on the action, too. A spokesman for Beal told the *Post* that the figure wasn't accurate but didn't get more specific than that. Loyal readers will remember when our Dan Michalski played cards with Beal at the Lodge for slightly lower stakes.

http://pagesix.com/2011/07/07/moguls-texas-size-poker-loss/

# Mogul's Texas-size poker loss

By PageSix.com Staff
July 7, 2011 | 4:00am

Billionaire high-stakes poker fan **Andrew Beal** "lost up to $50 million" in recent months in a series of games where players put up a $1 million buy-in, a source tells us.

The Texas-based mogul, who made his fortune in banking and real estate, suffered a series of huge losses in at least three games, according to the source, who also said the games involved "Spider-Man" star **Tobey Maguire** and billionaire private equity investor **Alec Gores**.

While Beal, the richest man in Dallas worth $6.6 billion, strongly denies losing so much cash, he's famed for his love of high-stakes poker and is said to have once won more in a single day than any other known player —

$11.7 million at the Bellagio in Vegas, in 2004. In 2006, he famously lost $16.6 million in days.

A source told Page Six Beal participated in three games this year — one around the Super Bowl, one four months ago and another a few weeks ago. "All the players had a $1 million buy-in," the source said. "Each time Beal lost big time, with a total loss of around $50 million."

The source said Maguire and some pro players were involved, and the games were legal because the house didn't take a cut.

Dad-of-six Beal's quest for the highest-stakes poker match ever is described in the 2005 book "The Professor, the Banker, and the Suicide King: Inside the Richest Poker Game of All Time," by **Michael Craig**. It ends when Beal loses $16 million.

A spokesman for Beal told us by e-mail: "The amounts stated in your e-mail to us concerning Mr. Beal are inaccurate. Beyond that, Mr. Beal has no further comment." When we then asked for the correct details of his losses, the rep refused to elaborate.

Maguire was recently slapped with a lawsuit after being linked to an A-list gambling ring. But he denied any wrongdoing when he collected $300,000 from poker matches that were organized in Beverly Hills by a convicted investment scammer. Reps for Maguire and Gores didn't get back to us.

**UPDATE:** Michael Sitrick, spokesman for Alec Gores added, "The loss wasn't anywhere near $50 million. At times he (Beal) won and at times he lost."

# DEFENDANT'S EXHIBIT E

**LAW OFFICES OF**
**KEVIN W. LUBY, P.C.**

7360 SW Hunziker St., Suite 206
Tigard, Oregon, 97223

Kevin W. Luby                    503-620-3342                    Pamela L. Sullivan, Paralegal
James C. Hilborn, Of Counsel     503-620-3356 (fax)             Jan Larson, Legal Assistant
Elizabeth Lemoine, Of Counsel    www.lubylaw.org               Christi Smith, Secretary

This document contains confidential information which is intended only for the individual recipient named. Unless you are such named recipient or the authorized agent thereof, you are prohibited from reading, copying, distributing or otherwise disseminating this information. If you received this communication in error, please contact the sender immediately and destroy or return the communication. Thank you.

| | | |
|---|---|---|
| Date | : | October 25, 2006 |
| To | : | Donald Gallardo |
| Company | : | Litton Loan Servicing |
| Facsimile No | : | 1-713-218-3519 |
| Total pages | : | _10_ (including cover) |
| Original | : | not mailed |
| Re: | | *Denise Subramaniam re Loan Number 180999663* |
| | | Our File No. SUBRAM.301 |

Dear Mr. Gallardo:

This fax is to confirm our conversation of today in which you informed me that your company has refused to postpone or otherwise continue the trustee's sale, scheduled for next Thursday, November 2, 2006, due in part to your requirements that my client send additional proof to substantiate bank statements provided to you showing proof of payments for EMC Mortgage's failure to credit these payments to my client's account.

Your other reason for the refusal is apparently due to the fact that my client received notice of the foreclosure in June, 2006 and had "plenty of time" to address these issues. Please be advised that we can and will substantiate the our client has been addressing these issues for more than a year. In addition, when we proposed a settlement with your company on August 30, 2006, Mr Benny Hibler informed me that your company had no "incentive" to settle, as the equity our client possessed in the residence was "more than adequate" to satisfy the amount you sought in the sale.

The amounts alleged as owed in the trustee's notice of sale are incorrect. To the extent that you have forced our client to file suit to prevent the sale, rather than agree to postpone the sale, we will seek attorney fees and costs associated with such a suit.

Sincerely,

Elizabeth Lemoine
elizlemoine@yahoo.com

C Timothy Spencer Oregon Dept. of Consumer and Business Services          Faxed only to 503-947-7862
  Denise Subramaniam via Email