FILED28 JAN'16 15:27USDC-ORP

Denise Subramaniam
Self-represented
13865 SW Walker Rd
Beaverton OR 97005
503-764-5300

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| **LNV CORPORATION**<br>    **Plaintiff,**<br>v.<br>    **DENISE SUBRAMANIAM**<br>pro per<br>    **Defendant** | Civil Case No. 3:14-cv-01836<br><br>REVISED NOTICE OF<br>CONSTITUTIONAL QUESTIONS |

## REVISED NOTICE OF CONSTITUTIONAL QUESTIONS

Comes now Defendant, Denise Subramaniam, self represented and Pursuant to Federal Rules 28 U.S.C. § 2403 and 5.1(a)(1) hereby makes notice of constitution questions.

Pursuant to Federal Rule 5.1(a)(1)(B) Defendant and the other Beal victims challenge Rule 12 and Rule 56 of Federal Rules of Civil Procedure and the state counterparts to these rules as being unconstitutional because they have a disparate impact on Defendant and other class members (i.e. Beal victims), most of whom are also members of protected classes including senior citizens, the disabled, single female heads of household or single females, and/or minorities, and who due to the economic disadvantage associated with these classes, and the reason they are considered protected classes, and due to the ever increasing costs of litigation often find themselves with no choice but to represent themselves, knowing they are inept to do so, when faced with situations where they will be wrongfully deprived of their property, their life

quality and their liberty to access their life-long investment in their property; which is also their residence.

Federal Rules 56 and Rule 12 as they are currently written result in a discriminatory disparate impact on non-criminal homeowner pro se litigants fighting wrongful foreclosure actions. A disproportionate number of parties, wealthy financial institutions, and in the case of the Beal class of victims, the Beal international organization with financial resource of more than $19 Billion, opposing this class of pro se litigants are routinely granted summary judgments under Rule 56 and summary dismissals under Rule 12 by both state and federal courts.

Rule 56 and Rule 12 also result in a discriminatory disparate impact on non-criminal pro se litigants involved in other civil rights related litigation, such as employment discrimination, and divorce and child custody litigation, where, like with homeowners in foreclosure related litigation, a significant number of litigants cannot afford legal representation and are left with few choices but to represent themselves pro se.

Defendant has been denied due process and equal protection of the law in violation of the fifth and fourteenth amendments to the United States Constitution due to summary judgment orders granted to LNV Corporation by U.S. District Judge Michael W. Mosman. Defendant is about to be illegally and unconstitutionally deprived of their property and of her right to a jury trial under the seventh amendment to the United States Constitution by Rule 56 FRCP. The derivation of her property will result in a deprivation of her life quality and her liberty. Rule 56 and Rule 12 result in an arbitrary, capricious, abuse of judicial discretion resulting in rulings that are not in accordance with law and/or made without the observance of procedure required by law.

Due to the exceptionally high costs associated with litigation, and the lack of government funding for legal aid services to those in need, and the lack of any effective non-attorney regulatory agency to assure accountability for attorneys and judges who routinely violate their professional codes of conduct, more Americans than ever are unable to obtain meaningful access to our courts and to justice. This problem threatens our very democracy.

Respected commentators and judges have criticized summary judgment as being unconstitutional. Professor Thomas argues that summary judgment is unconstitutional because it did not exist at common law and violates the historical test set forth textually in the Seventh Amendment. See _Suja A. Thomas, Summary Judgment is Unconstitutional, 93 VA.L.REV.139, 139 (2007)_ (arguing that summary judgment conflicts with the common law axiom that the jury decides the facts); _Suja A. Thomas, Why Summary Judgment is Still Unconstitutional: A Reply to Professors Brunet and Nelson, 93 IOWA L.REV. 1667, 1667 (2008)_ (attacking articles seeking to defend the constitutionality of summary judgment). "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved…" _U.S. CONST. Amend. VII_.

Judge Patricia Wald worries that trial judges are too quick to grant summary judgment and that Federal Rule 56 of Civil Procedure "has assumed a much larger role in civil case dispositions than its traditional image portrays… to the point where fundamental judgments about the value of trials and especially trials by jury may be at stake." _Patricia Wald, Summary Judgment at Sixty, 76 TEXAS L. REV. 1897, 1898 (1998)_. Accord, _Richard L. Steagall, The Recent Explosion in Summary Judgments Entered by the Federal Courts Has Eliminated the Jury From Political Power, 33 S.ILL.L.REV. 469, 496-99 (2009)_ (setting forth a litany of problems caused by overuse of summary judgment).

Professor Stephen Burbank describes the original 1938 Federal Rule 56 as a "radical transformation" of earlier versions of a much more confined procedure. *Stephen Burbank, Vanishing Trials and Summary Judgment in Federal Civil Cases: Drifting Toward Bethlehem or Gomorrah?*, 1 J.EMP. LEG. STUD. 591, 591 (2004).

Professor Schneider concludes that courts grant a disproportionate number of defendants' summary judgment requests in cases raising gender discrimination. See *Elizabeth M. Schneider, The Dangers of Summary Judgment: Gender and Federal Civil Litigation*, 59 RUTGERS L.REV. 705, 760 (2008). See also, *Elizabeth M. Scheider, The Changing Shape of Federal Pretrial Practice: The Disparate Impact on Civil Rights and Employment Discrimination Cases*, 158 U.PA.L.REV. 517 (2010).

Professor John Bronsteen delivered the ultimate criticism by strongly urging that summary judgment be eliminated and defending this revolutionary suggestion by asserting that the progress and settlement of civil litigation would be relatively unchanged by his proposal. See *John Bronsteen, Against Summary Judgment*, 75 GEO.WASH.L.REV.522 (2007).

Most of these summary dismissals and summary judgments rendered against homeowner pro se litigants are due to procedural defects in pro se pleadings and due to pro se litigants' inexperience with obtaining evidence through discovery. More often than not, these pro se litigants are deprived of any meaningful opportunity for discovery by over use of Rule 56 and Rule 12 by judges who want to quickly end these pro se foreclosure cases with rulings favoring the foreclosing parties which are based on their own personal biases rather than on any sense of justice. Rule 56 and Rule 12 as written allows judges too broad of a discretion, too often abused, that results in an unconstitutional impact on not just pro se litigants, but on small law firms with

modest budges who litigate in behalf of homeowners against opposing corporate entities with billions and trillions of dollars at their disposal. Rule 56 and Rule 12 deprive far too many non-corporate litigants from a trial by jury on the merits of their cases; another civil right guaranteed by the seventh amendment to the United States Constitution.

"I consider trial by jury the greatest anchor ever yet devised by humankind for holding a government to the principles of its constitution." *Thomas Jefferson, 1792.*

The American jury trial is a constitutional right. One of the primary concerns of the founding fathers was preventing the United States of America from developing an oppressive government. Much of the Bill of Rights was born out of that concern. A primary strength of the jury trial is that it acts as a check to unfettered prosecutorial power. If judges decided every case, it could raise a number of concerns about fairness in the judicial process. Defendant, the other Beal victims, and thousands of other pro se homeowners litigants are in fact experiencing such unconstitutional unfairness in the courts as a result of Rule 56 and Rule 12 which have eroded our judiciary into an oppressive mechanism for imposing the undemocratic will of an elite corporate oligarchy on the masses thorough civil litigation that often results in an unconstitutional deprivation of their life, liberty and property.

The onslaught of foreclosure actions beginning around 2008 brought on by the economic crashes caused by the wrong-doings of Wall Street "too big to fail banks" around mid-2000 has created a dichotomy of opposition reflected in foreclosure litigation where all the power is on one side: the foreclosing party. The excessive wealth and corporate political power on that side of the dichotomy has resulted in an unprecedented deprivation of civil rights through a calculated

and systematic abuse of Rule 56 and Rule 12 to deprive homeowners of any opportunity to have their claims heard and fairly adjudicated.

D. Brock Hornby a District Judge on the United States District Court for the District of Maine in *SUMMARY JUDGMENT WITHOUT ILLUSIONS* writes on page 7:

"Summary judgment motions change litigation stakes.[17] By filing them, defendants delay recovery and increase Defendant' legal expenses (or Defendant' lawyers' expenses in contingent fee cases).[18] They also increase Defendant' risk because, if Defendant lose, all is over except an expensive, delayed, and uncertain appeal. Therefore, Defendant' case values decrease for settlement purposes.[19]"

The change in litigation stakes described by Judge D. Brock Hornby has created a no-win situation for homeowners litigating to protect their property interest from foreclosure actions intended to deprive them of their property. Many of these foreclosures where homeowners have been fighting for years are based on counterfeit mortgage instruments never examined by experts or the courts for authenticity despite obvious signs on the face of these instruments of forgery, electronic alterations, and falsities. When the pro se homeowner litigants point this out to the courts in their pleadings their objections and their evidence supporting their claims that these instruments are not authentic; most often fall on deaf judicial ears. Counterfeit mortgage instruments erode the foreclosing parties' standing to foreclose, yet far too many judges routinely accept these counterfeits as genuine and grant summary judgments under Rule 56 or Rule 12, particularly when the homeowner litigants are pro se.

An undeniable bias exists within the judiciary against the homeowners in these cases. Data based on 105 foreclose related cases presided over by Judge Jane Boyle, presiding over the case of Beal victims JoAnn and Samuel Breitling in Texas demonstrates this judicial bias. Most of these 105 cases were removed to federal court by the parties opposing homeowners. In more

than half these cases the homeowners were pro se litigants. Not one of these 105 cases went to a jury trial. Only two cases were settled. The rest were dismissed with prejudice against homeowners pursuant to Rule 12 or summary judgment was granted to the opposing party pursuant to Rule 56. Not once has Judge Boyle ruled in favor of a homeowner. Cases involving homeowners with Hispanic names were summarily decided via Rule 12 or Rule 56 more quickly than in other cases; with all such homeowners being deprived of their property without due process, without equal protection of law and without a jury of their peers. The deprivation of their property more certainly had a negative impact on these families' quality of life.

Defendant, the other Beal victims and other homeowner litigants have experienced unconscionable violations of their civil rights, and deprivation of their civil rights under color of law by judges who abuse their discretion and make biased summary decisions because Rules 56 and 12 allow them far too much discretion to do just that. Such a one-sided economic dichotomy that exists in these cases creates a situation where attorneys representing excessively wealthy foreclosing parties abuse the judicial process through repeated summary judgment and dismissal motions under Rules 56 and 12 in a calculated effort to exploit the very change in litigation stakes described by Judge D. Brock Hornb. The financial incentive is in favor of these parties continuing with their fraud because the penalties for being caught are miniscule.

Consumer protection laws cap penalties and fines at $10,000 which for litigants with billions and trillions of dollars at their disposal is a meaningless non-deterrent in light of the billions in undue profits they gain through perfecting foreclosures with counterfeit mortgage instruments. These parties also have the political clout and financial means to improperly influence judges for favorable rulings; and to improperly influence government regulatory

authorities to look the other way. In the case of the Beal organization the evidence of this happening is significant.

This one-sided economic dichotomy, and the self-regulating legal institutions that undermine any meaningful accountability for attorneys and judges, has created a predatory legal quagmire for homeowners. Tens of thousands of homeowners have been exploited by attorneys and law firms, like the Lane Law Firm and J.D. Milks hired by Defendant, who exploit the lack of supply to meet the demand for legal representation of homeowners fighting foreclosure. These inscrutable attorneys advertise themselves as foreclosure experts, when they have little or no experience in this area of litigation. They merely exploit homeowners and bleed them of their financial resources. They file cookie cutter pleadings to placate their clients until the inevitable defeat of their clients' cases due to summary orders under Rule 56 or Rule 12. Their clients' cases never go to trial before a jury.

Even when attorneys have passion for the plight of homeowners and a sincere desire to achieve justice for their clients, their efforts are often thwarted by the one-sided economic and legal dichotomy that tips heavily in the favor of excessively wealthy corporate parties litigating foreclosure actions against their clients' property. These foreclosing parties know their success comes through a denial of discovery and in engaging in egregious legal tactics to prevent the truth from being exposed. Rule 56 and Rule 12 are the best legal tools at the disposal of such corrupt attorneys. Their legal strategies are just as Judge D. Brock Hornby described: to delay recovery and increase homeowners' legal expenses. These corporate attorneys capitalize on the change in litigation stakes created by Rule 56 and Rule 12 to increase homeowners' risk which in turn increases the risks for homeowners' attorneys: making it financially un-lucrative for ethical attorneys to represent homeowners; and decreasing the supply of legal assistance for

homeowners, and at the same time creating a situation where mass numbers of homeowners have little choice but to represent themselves as pro se litigants, where they become sitting ducks to be expoited by corrupt officers of the court and corrupt judges.

The jury trial is a vital part of America's system of checks and balances. Appointed judges might be beholden to politics and the people who appointed them. Elected judges could be swayed by public opinion in a given case. Jurors, on the other hand, are not appointed and instead serve on a jury as part of their civic duties.

A jury trial, guaranteed by the United States Constitution, is the first major check on the discretion of judges. A judge, holding office over the course of multiple cases, and selected by appointment or election, is susceptible to undue influence. A jury, chosen by sortition, or lot, for a single case, just before the case, is less likely to be corrupted, and having multiple jurors render verdicts collectively provides a check by each on the others. What they might lack in knowledge of the law is offset by their connection to the non-legal environment in which most people subject to the law must operate.

Most complaints of abuse of judicial discretion, and calls to limit such abuse with more laws, concern questions of policy or equity, but there is another broad category, which concerns constitutional questions of due process and civil rights which are raised by Defendant herein.

Quoting for *Judge William G. Young* <u>Speech at Judicial Luncheon The Florida Bar's Annual Convention in Orlando</u> *June 28, 2007*:

> "(T)he American jury system is dying. It is dying faster in the federal courts than in the state courts. It is dying faster on the civil side than that on the criminal side, but it is dying. It will never go entirely, but it is already marginalized.  It will never go entirely, but it is already marginalized. It is not at the center of our political discourse. How is this possible, with our Constitution and every one of the 50 state

constitutions guaranteeing the right to trial by jury? The general answer is that we do not care."

Defendant is members of a class of Beal victims, and they are members of a broader class of pro se homeowners litigants routinely deprived of meaningful due process, and who have been unconstitutionally and unlawfully deprived of their property and of their life quality and their liberty to make choices we all cherish as a result. Their constitutional rights to due process and equal protection of law have been violated through the unchecked judicial abuse of the unconstitutional Rules 56 and 12 of FRCP.

Respectfully Submitted,

_____
Denise Subramaniam

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record, pro-se parties and the United States Attorney General and the Attorney General of the State of Oregon via the Court's CM/ECF system, email, and/or regular mail, and/or certified mail with return receipt requested.

U.S. Department of Justice
Loretta Lynch,
U. S. Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
202-514-2000


Gabrielle D. Richards | Perkins Coie LLP
1120 NW Couch Street
10th Floor
Portland, Oregon 97209-4128
D. +1.503.727.2255
F. +1.503.346.2255
grichards@perkinscoie.com


Respectfully Submitted,

_____
Denise Subramaniam